IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| COUNTY OF MONMOUTH, NEW JERSEY, on behalf of itself and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>FLORIDA CANCER SPECIALISTS, P.L.; and DR. WILLIAM N. HARWIN,<br><br>　　　　　Defendants. | No. 2:18-CV-00201-SPC-MRM |

**DEFENDANTS FLORIDA CANCER SPECIALISTS, P.L.'S AND DR. WILLIAM HARWIN'S MOTION AND MEMORANDUM IN SUPPORT OF <u>MOTION TO DISMISS AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .........................................................................................................iii

INTRODUCTION .................................................................................................................... 1

FACTUAL ALLEGATIONS ....................................................................................................... 2

        A.    The Parties ...................................................................................................... 2

        B.    Plaintiff's Allegations .................................................................................... 3

ARGUMENT ........................................................................................................................... 4

I.      PLAINTIFF FAILS TO SUFFICIENTLY PLEAD A PLAUSIBLE RELEVANT
       MARKET............................................................................................................... 5

        A.    Plaintiff's Sole Allegation of a Relevant Geographic Market is Purely
             Conclusory, Requiring Dismissal of All of Plaintiff's Claims. ............................ 7

        B.    Plaintiff Fails to Plausibly Plead a Relevant Product Market................................ 8

II.     PLAINTIFF'S CLAIMS ARE TIME-BARRED, AND NO TOLLING
       DOCTRINE APPLIES............................................................................................ 11

        A.    Plaintiff's Claims Are Barred by the Statute of Limitations................................ 12

        B.    No Tolling Doctrine Applies to Rescue Plaintiff's Untimely Claims. ................. 13

               1.    Plaintiff Pleads No Facts Demonstrating Either Fraud or
                    Concealment by the Defendants As Required to Avoid Dismissal. ......... 13

               2.    Plaintiff Pleads No Overt Acts Within the Limitations Period to
                    Establish a Continuing Violation or Conspiracy. .................................... 15

III.   PLAINTIFF DOES NOT PLAUSIBLY PLEAD AN ANTICOMPETITIVE
       AGREEMENT OR CONCERTED ACTION. .................................................................. 17

IV.   PLAINTIFF CANNOT STATE A CLAIM FOR CONSPIRACY TO
       MONOPOLIZE THE ONCOLOGY SERVICES MARKET.......................................... 23

CONCLUSION........................................................................................................................ 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen-Myland, Inc. v. IBM*,
   33 F.3d 194 (3d Cir. 1994)................................................................................................11

*In re Aluminum Warehousing Antitrust Litig.*,
   No. 13-md-2481 (KBF), 2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014)................................23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................4, 17, 19, 20, 21

*Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*,
   707 F. App'x 576 (11th Cir. 2017) .......................................................................................7

*Bonner v. City of Prichard*,
   661 F.2d 1206 (11th Cir. 1981) (en banc) .................................................................16

*Brooks v. Blue Cross and Blue Shield of Florida, Inc.*,
   116 F.3d 1364 (11th Cir. 1997) ..............................................................................14

*Citron v. Wachovia Mortg. Corp.*,
   922 F. Supp. 2d 1309 (M.D. Fla. 2013)..................................................................17

*City of Moundridge v. Exxon Mobil Corp.*,
   471 F. Supp. 2d 20 (D.D.C. 2007)..........................................................................23

*Clark Mem'ls. of Ala., Inc. v. Sci Ala. Funeral Servs. LLC*,
   991 F. Supp. 2d 1151 (N.D. Ala. 2014)...............................................................8, 17

*Conmar Corp. v. Mitsui & Co. (USA), Inc.*,
   858 F.2d 499 (9th Cir. 1988) ................................................................................13

*Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*,
   341 F. App'x 487 (11th Cir. 2009) .........................................................................13

*Davila v. Delta Air Lines, Inc.*,
   326 F.3d 1183 (11th Cir. 2003) ...............................................................................5

*Duty Free Ams., Inc. v. Estee Lauder Cos.*,
   797 F.3d 1248 (11th Cir. 2015) ...........................................................................5, 6

*Eaton v. Keith*,
     154 F. App'x 844 (11th Cir. 2005) ........................................................................................14

*In re Elevator Antitrust Litig.*,
     502 F.3d 47 (2nd Cir. 2007)..................................................................................................19

*Glades Pharm., LLC v. Murphy*,
     No. 1:06-CV-0940-TWT, 2006 WL 3694625 (N.D. Ga. Dec. 12, 2006)............................6, 8

*Gonsalvez v. Celebrity Cruises Inc.*,
     750 F.3d 1195 (11th Cir. 2013) .............................................................................................11

*In re Graphics Processing Units Antitrust Litig.*,
     527 F. Supp. 2d 1011 (N.D. Cal. 2007) ................................................................................21

*Heerwagen v. Clear Channel Commc'ns*,
     435 F.3d 219 (2d Cir. 2006) *overruled on other grounds by Teamsters Local
     445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196 (2d Cir.
     2008) ........................................................................................................................................5

*Hill v. Texaco, Inc.*,
     825 F.2d 333 (11th Cir. 1987) ...............................................................................................14

*Imperial Point Colonnades Condo., Inc. Mangurian*,
     549 F.2d 1029 (5th Cir.1977) ................................................................................................17

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
     626 F.3d 1327 (11th Cir. 2010) .................................................................................5, 6, 10, 11

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
     466 U.S. 2 (1984).....................................................................................................................10

*Klehr v. A. O. Smith Corp.*,
     521 U.S. 179 (1997)....................................................................................................13, 15, 17

*L.A. Draper & Son v. Wheelabrator-Frye, Inc.*,
     735 F.2d 414 (11th Cir. 1984) .................................................................................................6

*Little Rock Cardiology Clinic PA v. Baptist Health*,
     573 F. Supp. 2d 1125 (E.D. Ark. 2008), *aff'd,* 591 F.3d 591 (8th Cir. 2009) .........................9

*Little Rock Cardiology Clinic PA v. Baptist Health*,
     591 F.3d 591 (8th Cir. 2009) ...................................................................................................8

*Meyer v. Green*,
     710 F.3d 1189 (11th Cir. 2013) ..............................................................................................21

iv

*Midwest Gas Servs., Inc. v. Indiana Gas Co., Inc.*,
  317 F.3d 703 (7th Cir. 2003) ...................................................................................23

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984)...................................................................................................18

*Pace Indus., Inc. v. Three Phoenix Co.*,
  813 F.2d 234 (9th Cir. 1987) ...................................................................................16

*Pedraza v. United Guar. Corp.*,
  114 F. Supp. 2d 1347 (S.D. Ga. 2000)....................................................................14

*In re Photochromic Lens Antitrust Litig.*,
  No. 8:10-MD-2173-T-27EAJ, 2011 WL 4914997 (M.D. Fla. Oct. 14, 2011) ........................17

*Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*,
  517 F.2d 117 (5th Cir. 1975) ...................................................................................16

*Precision CPAP, Inc. v. Jackson Hosp.*,
  No. 2:05cv1096-MHT (WO), 2010 WL 797170 (M.D. Ala. Mar. 8, 2010) ...........................23

*Rutledge v. Boston Woven Hose & Rubber Co.*,
  576 F.2d 248 (9th Cir. 1978) ...................................................................................14

*Sampson v. Washington Mut. Bank*,
  453 F. App'x 863 (11th Cir. 2011) ...........................................................................17

*United States of America ex rel. Sharon Dill and Christina Sievert v. Florida
  Cancer Specialists, P.L., et al.*,
  Case 2:16-cv-00087-SDM (M.D. Fla. filed Feb. 2, 2016)........................................3 4, 12, 13

*Sidibe v. Sutter Health*,
  4 F. Supp. 3d 1160, 1175 (N.D. Cal. 2013) ..............................................................7

*Sidibe v. Sutter Health*,
  667 F. App'x 641 (9th Cir. 2016) ..............................................................................8

*Standfacts Credit Servs., Inc. v. Experian Info. Sols., Inc.*,
  405 F. Supp. 2d 1141 (C.D. Cal. 2005) ...................................................................24

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
  782 F. Supp. 2d 1059 (E.D. Cal. 2011)....................................................................19

*Sun Dun, Inc. v. Coca-Cola Co.*,
  740 F. Supp. 381 (D. Md. 1990)...............................................................................23

*Superior Offshore Int'l v. Bristow Grp.*,
  738 F. Supp. 2d 505 (D. Del. 2010).........................................................................21

*Tanaka v. Univ. of S. Cal.*,
    252 F.3d 1059 (9th Cir. 2001) ...............................................................................5

*Toranto v. Jaffurs*,
    No. 16cv1709-JAH (NLS), 2018 WL 1410736 (S.D. Cal. Mar. 21, 2018).............................5

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966)...............................................................................11

*Williamson Oil Co. v. Phillip Morris USA*,
    346 F.3d 1287 (11th Cir. 2003) .......................................................................20, 21

*T. Harris Young & Associates, Inc. v. Marquette Elec., Inc.*,
    931 F.2d 816 (11th Cir. 1991) .............................................................................6

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971)...............................................................................12, 17

**Statutes**

15 U.S.C. § 15b.....................................................................................................12

Section 4B of the Clayton Act ...........................................................................12

False Claims Act .............................................................................................1, 3

Sherman Act........................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).....................................................................................1, 2

Fed. R.Civ. P. 9(b) ..........................................................................................1, 15

Grand View Research, *Radiation Oncology Market Analysis By Product (External
    Beam Radiation Therapy, Brachytherapy, Systemic Beam Radiation Therapy),
    By Application, By Technology, By Region, And Segment Forecasts, 2014 –
    2025*, GRAND VIEW RESEARCH (Apr. 2017), *available at*
    https://www.grandviewresearch.com/industry-analysis/radiation-oncology-
    market (last accessed Apr. 29, 2018) ...................................................................9

*W. Yang, J. Williams, et al., Projected Supply o Demand for Oncology and
    Radiation Oncologists Through 2025: An Aging, Better-Insured
    Population Will Result in Shortage, J. Oncol. Pract., available at
    http://ascopubs.org/doi/full/10.1200/jop.2013.001319 (last accessed
    Apr. 29, 2018)* ...................................................................................9

The American Society of Clinical Oncology, *The State of Cancer Care in America, 2017:A Report by the American Society of Clinical Oncology,* J. ONCOL. PRACT., *available at* http://ascopubs.org/doi/full/10.1200/JOP.2016.020743 (last accessed Apr. 29, 2018) ...............................................................................................9

ABA Antitrust Health Care Handbook, Ch. III, Sec. B-1 (2010)....................................................6

Pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure, Defendants Florida Cancer Specialists, P.L. ("FCS") and Dr. William Harwin (collectively, "FCS Defendants") move to dismiss the County of Monmouth, New Jersey's Amended Complaint (Dkt. 27 "Complaint").

## INTRODUCTION

In its Complaint, Plaintiff alleges various antitrust claims against Defendants FCS and Dr. Harwin and their alleged co-conspirators, 21st Century Oncology, LLC ("21st Century") and Dr. Daniel Dosoretz ("Dr. Dosoretz"), arising out of a purported agreement to allocate the market for oncology services in Southwest Florida.  However, none is sufficient to state a claim, as Plaintiff fails to plausibly allege a critical element of its antitrust claims – the relevant geographic and product markets in which it alleges competition has been restrained.  Indeed, Plaintiff's Complaint assumes a relevant geographic market of "Southwest Florida" and a relevant product market of "Oncology Services" (lumping together two entirely distinct oncology service lines that no physician, consumer, self-insured payor, or commercial insurer looking to build a provider network would view as substitutes) without any allegations plausibly suggesting that these markets are, in fact, viable from an antitrust perspective.  Further, the Complaint's allegations of anticompetitive conduct are stale – not to mention recycled from a False Claims Act action filed more than two years ago that was voluntarily dismissed – and well beyond the applicable four-year statute of limitations for federal antitrust claims.  For this reason as well, Plaintiff's claims must be dismissed.

Aside from these serious statute of limitations and relevant market issues, Plaintiff's claims are also deficient because Plaintiff does not adequately allege an agreement for purposes of its Section 1 and Section 2 claims.  Plaintiff's allegations of anticompetitive conduct are quite thin.  Beyond conclusory statements, Plaintiff provides almost no explanation of how

1

Defendants' conduct is more consistent with a violation of the antitrust laws than unilateral conduct consistent with legitimate business strategy. Lastly, Plaintiff's conspiracy to monopolize claim is premised on a theory of "shared monopoly" between FCS and 21st Century, a theory which has been rejected at the pleadings stage by the vast majority of courts to consider the issue and should likewise be rejected here.

## FACTUAL ALLEGATIONS[1]

### A.    The Parties

Defendant FCS is a medical oncology/hematology practice based in Fort Myers, Florida. Compl. ¶ 15. FCS President and managing physician is Dr. William N. Harwin. *Id*. ¶ 16. FCS is the largest independent medical oncology/hematology practice in the United States, and it also provides some radiation oncology services. *Id*. ¶¶ 15, 29. Medical oncology refers to the diagnosis and treatment of cancer with medicine, including chemotherapy, hormonal therapy, biological therapy, and targeted therapy. *Id*. ¶ 3. Radiation oncology refers to the treatment of cancer with therapeutic radiation. *Id*. ¶ 3. Plaintiff alleges that FCS does not provide radiation oncology services in Southwest Florida, from Tampa to Marco Island. *Id*. ¶ 15.

Though no longer named as a defendant in the amended complaint due to a bankruptcy discharge, 21st Century, an alleged co-conspirator with FCS and Dr. Harwin, is a cancer care provider in Florida that provides, among other things, medical and radiation oncology services, though the majority of its physicians are radiation oncologists. Compl. ¶¶ 18-20, 28. 21st Century's former Chief Executive Officer was Dr. Daniel Dosoretz. *Id*. ¶ 21. According to Plaintiff, 21st Century does not provide medical oncology services in Southwest Florida from Tampa to Marco Island. *Id*. ¶ 18.

---

[1] As Rule 12(b)(6) requires, Plaintiff's factual allegations will be taken as true solely for purposes of Defendants' motion to dismiss.

Plaintiff in this case is the County of Monmouth, New Jersey, a public entity that operates a self-funded health insurance plan for its employees and retirees. Compl. ¶ 14. Plaintiff alleges that it directly paid for all or a portion of the cost of its insureds' Oncology Services provided by Defendants in Southwest Florida during the Class Period. *Id*. Plaintiff purports to sue on behalf of a putative class of "all persons and entities in the United States who paid for all or a portion of the cost of Oncology Services in Southwest Florida directly to 21st Century or FCS, or any current or former subsidiary or affiliate of either 21st Century or FCS, or any co-conspirator, during the period from and including 2010 until the effects of Defendants' unlawful conduct ceases." *Id*. ¶ 71.

### B.   Plaintiff's Allegations

The thrust of Plaintiff's Complaint is an alleged agreement between FCS and 21st Century whereby 21st Century would exclusively refer its "Medical Oncology" patients in Southwest Florida to FCS and, in return, FCS would refer its "Radiation Oncology" patients in Southwest Florida exclusively to 21st Century. Compl. ¶ 32-33. Plaintiff does not purport to know anything about this. Instead, this allegation is copied from a False Claims Act action brought in 2016 by two former FCS employees who left FCS in 2015, Sharon Dill and Christina Sievert, in *United States of America ex rel. Sharon Dill and Christina Sievert v. Florida Cancer Specialists, P.L., et al*., Case 2:16-cv-00087-SDM (M.D. Fla. filed Feb. 2, 2016) (the "*Dill-Sievert* action"). *Id*. ¶¶ 30-31. The United States declined to intervene in the *Dill-Sievert* action, and the action was voluntarily dismissed in October 2017. Case 2:16-cv-00087-SDM, Dkt. Nos. 23, 43.

According to Dill's and Sievert's action, as cited in the Complaint, Dill and Sievert allegedly observed that FCS staff members were instructed to send any cancer patients who needed Radiation Oncology in Southwest Florida to 21st Century. *Id*. ¶ 33. In return, Dill and Sievert allegedly observed that 21st Century referred all of their Medical Oncology patients in

3

Southwest Florida to FCS. *Id.* Plaintiff alleges that Dr. Harwin "colluded and conspired" with Dr. Dosoretz to formulate and carry out this alleged agreement, which ensured that 21st Century and FCS would not compete in the market for Oncology Services in Southwest Florida. *Id.* ¶ 32.

Plaintiff alleges that in 2011 a new provider, Premiere Oncology, opened in Southwest Florida, providing Medical Oncology, Radiation Oncology, and urology services. Compl. ¶ 34. Plaintiff alleges (as copied from the *Dill-Sievert* action) that Premiere Oncology was forced to sell its business; however, to prevent the sale of Premiere Oncology from generating new competition, Plaintiff alleges that FCS and 21st Century entered into an agreement whereby 21st Century would purchase Premiere Oncology's Radiation Oncology practice and FCS would purchase Premiere Oncology's Medical Oncology practice. *Id.*

As a result of this alleged agreement, Plaintiff asserts that it has been paying supracompetitive prices for Oncology Services in Southwest Florida during the Class Period and that FCS and 21st Century have illegally acquired and maintained monopoly power in the "Oncology Services" market in Southwest Florida. Compl. ¶¶ 5, 37. Plaintiff also asserts that FCS and 21st Century illegally acquired and maintained monopoly power in the alleged submarkets for "Medical Oncology" services (FCS) and "Radiation Oncology" services (21st Century) in Southwest Florida. *Id.* ¶ 5.

## ARGUMENT

On a motion to dismiss, the Court should accept well-pleaded factual allegations as true, but a complaint should be dismissed when its allegations fail to state a cognizable claim that is "plausible" on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "plausibility" standard asks for more than a sheer possibility that defendant has acted unlawfully, and requires the plaintiff to plead *facts* which would make a claim plausible and not just conceivable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). "Conclusory allegations,

4

unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Plaintiff's Complaint does not come close to satisfying these pleading requirements as applied in the antitrust dismissal precedent discussed below.

## I.   PLAINTIFF FAILS TO SUFFICIENTLY PLEAD A PLAUSIBLE RELEVANT MARKET.

Plaintiff's Sherman Act claims fail to state a claim because Plaintiff has not properly defined a relevant antitrust market, which is an essential element for pleading both its Section 1 and Section 2 claims. For antitrust purposes, the relevant market has two components: the plaintiff must define both the geographic market and the product market. *Duty Free Ams., Inc. v. Estee Lauder Cos.,* 797 F.3d 1248, 1263-64 (11th Cir. 2015); *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010). Antitrust plaintiffs making allegations about relevant markets "must present enough information in their complaint to plausibly suggest the contours of the relevant geographic and product markets." *Jacobs*, 626 F.3d at 1336 (granting motion to dismiss Sherman Act claims for failure to properly allege relevant markets); *see also Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063-64 (9th Cir. 2001) (failure to appropriately define a relevant product market is a proper ground for dismissing a Sherman Act claim).[2]

---

[2] For Section 1 claims subject to rule of reason analysis, a plaintiff is required to plead and prove a relevant market for purposes of showing actual or potential harm to competition in that market. *Jacobs,* 626 F.3d at 1336. Likewise, under Section 2 of the Sherman Act, defining the relevant market is essential to proving monopolization, attempted monopolization or a conspiracy to monopolize. *Duty Free*, 797 F.3d at 1263-64; *see also Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 229 (2d Cir. 2006) *overruled on other grounds by Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201 (2d Cir. 2008) ("A plaintiff claiming monopolization is obligated to establish the relevant market because the power to control prices or exclude competition only makes sense with reference to a particular market"). Here, Plaintiff alleges anticompetitive effects on competition in the relevant market in setting forth its Section 1 claim, therefore assuming the applicability of the rule of reason to that claim. *See, e.g.,* Compl. ¶ 90. Accordingly, it must allege a relevant market to have its Section 1 claim survive dismissal. To the extent Plaintiff asserts its Section 1 claim is subject to a *per se* analysis, it has not plausibly alleged as much in its Complaint. Simply reciting the conclusory boilerplate phrase "[t]he alleged contract, combination, or conspiracy is a *per se* violation," as Plaintiff does in paragraph 92 of the Complaint, does not allow Plaintiff to avoid the necessity of adequately pleading a relevant market. *See, e.g., Toranto v. Jaffurs*, No. 16cv1709-JAH (NLS), 2018 WL 1410736, at *6 (S.D. Cal. Mar. 21, 2018) (requiring plaintiff to plead relevant

The relevant geographic market is "the area of effective competition in which a product or its reasonably interchangeable substitutes are traded." *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 423 (11th Cir. 1984) (quotation omitted).  Courts consider whether outside providers of a good or service are precluded from entering the market, *id*., and whether consumers cannot realistically turn to outside the geographic area.  *Duty Free*, 797 F.3d at 1263 (citing *T. Harris Young & Associates, Inc. v. Marquette Elec., Inc*., 931 F.2d 816, 823 (11th Cir. 1991)). In non-health care contexts, "economic and physical barriers to expansion [such] as transportation costs, delivery limitations and customer convenience and preference" are relevant to this determination. *L.A. Draper & Son*, 735 F.2d at 423 (quotation omitted).  "Defining the relevant product market involves identifying producers that provide customers of a defendant firm (or firms) with alternative sources for the defendant's product or services."  *Jacobs*, 626 F.3d at 1337.   The market is "composed of products that have reasonable interchangeability." *Id*. In health care, a relevant market is composed of providers or services that a payor composing a network to sell to patients or employers views as reasonably interchangeable. *See* ABA Antitrust Health Care Handbook, Ch. III, Sec. B-1 (2010).

Here, Plaintiff's Complaint is devoid of any factual allegations "plausibly suggesting" the composition of either the geographic or product markets.  Rather, Plaintiff makes the conclusory assertion that the relevant geographic market is "Southwest Florida" and the relevant product market is "Oncology Services," with no facts or elaboration, which does not state a claim. Compl. ¶ 12.

---

market, and finding that complaint did not plausibly allege that Section 1 claim was subject to *per se* rule). Regardless, courts faced with such ambiguous pleading tactics have looked directly to the relevant market analysis to determine if such claims survive dismissal at the pleadings stage, as this Court should do here. *See, e.g., Glades Pharm., LLC v. Murphy,* No. 1:06-CV-0940-TWT, 2006 WL 3694625, at *3-4 (N.D. Ga. Dec. 12, 2006) (granting motion to dismiss Section 1 Sherman Act claim on grounds of failure to plead a relevant market without opining on applicability of *per se* versus rule of reason analysis, where complaint's Section 1 allegations were not sufficiently detailed on nature of the agreement at issue or antitrust theory applicable thereto).

**A.       Plaintiff's Sole Allegation of a Relevant Geographic Market is Purely Conclusory, Requiring Dismissal of All of Plaintiff's Claims.**

The Complaint contains no information about the relevant geographic market for Oncology Services other than the purely conclusory allegation that the market is "Southwest Florida, which consists of the following five counties: Manatee County, Sarasota County, Charlotte County, Lee County, and Collier County."   Compl. ¶¶ 12-13.   That is the sum and substance of Plaintiff's definitional allegations of a relevant geographic market, which does not come close to stating a viable antitrust claim.

Indeed, Plaintiff provides no allegations whatsoever "plausibly suggesting" why the boundaries of this geographic market start and stop at these five counties' borders.   For instance, Plaintiff includes no allegations suggesting why Manatee County (with Bradenton as its major metro area), which lies just south of Hillsborough County (and contains the Tampa metro area), is not in the same market as this close neighbor, but is in the same geographic market as Collier County, which contains Naples and lies four counties south.   Without allegations plausibly suggesting why payors looking to compose a network of providers to sell to patients in Bradenton would not realistically turn to Tampa (45 miles away) for Radiation Oncology or Medical Oncology providers but would turn to Naples (129 miles away) for those same services (and other allegations of this nature), Plaintiff has not met its burden of pleading a relevant geographic market.   This requires dismissal of all claims.   *See, e.g., Sidibe v. Sutter Health,* 4 F. Supp. 3d 1160, 1175 (N.D. Cal. 2013) (dismissing complaint where plaintiff failed to plead relevant geographic market for inpatient hospital services as it did not provide any factual allegations to support drawing lines at specific county borders);[3] *Black Diamond Land Mgmt.*

---

[3] In the *Sidibe* proceedings, while the Ninth Circuit reversed an order of the district court granting a motion to dismiss the plaintiff's third amended complaint, the decision cited herein is the district court's order granting a motion to dismiss the second amended complaint in those same proceedings – a decision that was not challenged on

7

*LLC v. Twin Pines Coal Inc.*, 707 F. App'x 576, 584 n.5 (11th Cir. 2017) (holding that plaintiff failed to plead a violation of the Sherman Act where it provided no delineation of the relevant geographical or product markets); *Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 598-99 (8th Cir. 2009) (granting motion to dismiss for failure to plead relevant geographic cardiology services market where allegations arbitrarily delineated market boundaries to the cities of Little Rock and North Little Rock without plausible supporting allegations).[4]

### B.    Plaintiff Fails to Plausibly Plead a Relevant Product Market.

Plaintiff's asserted relevant product market likewise fails to state a claim because Plaintiff improperly lumped two clinically distinct service lines into a single product market without any plausible allegations articulating why such services are interchangeable. For its Section 1 conspiracy in restraint of trade and Section 2 conspiracy to monopolize claims (Counts I and II), Plaintiff defines the relevant product market as one for "Oncology Services" (Compl. ¶ 12), which refers to "medical diagnosis and treatment of cancer using medicine ('Medical Oncology') or radiation ('Radiation Oncology')." Compl. ¶ 3.

Oncology Services is *not* a product market, but instead a collection of complementary but entirely distinct and non-fungible services. This is confirmed by Plaintiff's own allegations that Medical Oncology "refers to the diagnoses and treatment of cancer with medicine, including chemotherapy, hormonal therapy, biological therapy, and targeted therapy," while Radiation Oncology "refers to the treatment of cancer with therapeutic radiation." *Id.* ¶ 3. These various

---

appeal to the Ninth Circuit. *See Sidibe v. Sutter Health*, 667 F. App'x 641 (9th Cir. 2016). The geographic market allegations found sufficient by the Ninth Circuit to survive a motion to dismiss in the third amended complaint contained far greater detail than that alleged in the second amended complaint in that case (or the entirely conclusory and sole geographic market allegation here). *Id*. at 642-43.

[4] *See also Clark Mem'ls. of Ala., Inc. v. Sci Ala. Funeral Servs. LLC*, 991 F. Supp. 2d 1151, 1162 (N.D. Ala. 2014) (granting motion to dismiss antitrust claims where court could not infer that plaintiff pleaded a plausible geographic market without some facts regarding consumer behavior); *Glades Pharm.,* 2006 WL 3694625, at *3-4 (granting motion to dismiss federal antitrust claims where complaint contained no factual allegations describing the relevant geographic market).

services cannot be part of a single product market definition because they are not acceptable substitutes for each other. The complete lack of any allegations in the Complaint regarding the interchangeability of these two services affirms this point. Indeed, Plaintiff's own articles (incorrectly cited as supportive of its general "Oncology Services Market" allegations) treat Radiation Oncology as distinct from Medical Oncology. *See generally* Compl. ¶¶ 24-29.[5] As just one example, an article cited for the notion that the steady rise in cancer cases each year provides lucrative opportunities in the market for Oncology Services, is actually an article about the "global radiation oncology market," not Medical Oncology.[6] This article further notes that chemotherapy (a Medical Oncology service, Compl. ¶ 3) can be used in combination with – *i.e.*, not as an alternative to – radiation therapy. *Id.* While some patients may ultimately receive both, no rational patient would say, my doctor prescribed chemotherapy, but I think I'll go get radiation therapy instead. Likewise, no commercial insurer or payor would include in its provider network Medical Oncology service providers without Radiation Oncology service providers, or vice versa, because these two services are complementary, not substitutes for one another. *See Little Rock Cardiology Clinic PA v. Baptist Health*, 573 F. Supp. 2d 1125, 1144 (E.D. Ark. 2008) (granting motion to dismiss and holding that cardiology services are not in the

---

[5] *See, e.g.,* W. Yang, J. Williams, *et al.*, *Projected Supply of and Demand for Oncology and Radiation Oncologists Through 2025: An Aging, Better-Insured Population Will Result in Shortage*, J. Oncol. Pract., *available at* http://ascopubs.org/doi/full/10.1200/jop.2013.001319 (last accessed Apr. 29, 2018) (treating Radiation Oncology as separate from Medical Oncology for purposes of analyzing supply and demand curves in the markets for Radiation and Medical Oncology); The American Society of Clinical Oncology, *The State of Cancer Care in America, 2017:A Report by the American Society of Clinical Oncology,* J. ONCOL. PRACT., *available at* http://ascopubs.org/doi/full/10.1200/JOP.2016.020743 (last accessed Apr. 29, 2018) (recognizing that oncology providers are comprised of a number of specialties, including hematology, medical oncology, gynecologic oncology, pediatric hematology/oncology, surgical oncology, and radiation oncology, and that the type of oncologic services a patient might receive will depend on the type and stage of the cancer).

[6] Grand View Research, *Radiation Oncology Market Analysis By Product (External Beam Radiation Therapy, Brachytherapy, Systemic Beam Radiation Therapy), By Application, By Technology, By Region, And Segment Forecasts, 2014 – 2025*, GRAND VIEW RESEARCH (Apr. 2017), *available at* https://www.grandviewresearch.com/industry-analysis/radiation-oncology-market (last accessed Apr. 29, 2018).

same market as other hospital services because these are complements, not substitutes for one another), *aff'd,* 591 F.3d 591 (8th Cir. 2009).

Beyond these contradictory allegations, the Complaint also says nothing about whether physicians, patients, or payors can switch between Medical Oncology treatment and Radiation Oncology treatment in response to a price increase in the other service or whether a physician, patient, or payor would be more likely to purchase one versus the other or view these services as substitutes. Without such allegations, there is no plausible contour to Plaintiff's relevant product market, and Plaintiff's claims should be dismissed. *See Jacobs*, 626 F.3d at 1338 (where complaint contained no allegations of cross-elasticity of demand or other indications of price sensitivity or customer preferences, no plausible relevant market had been alleged); *cf. Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 23 (1984) (holding that anesthesiological services and hospital services are in separate relevant markets because consumers differentiate between them).[7]

Further undermining the plausibility of the Oncology Services market definition are the Complaint's allegations (again, without facts or elaboration) that Radiation Oncology and Medical Oncology also constitute "narrower submarket[s]," Compl. ¶¶ 42-43, and Plaintiff's claim in Count III (for monopolization, attempted monopolization and conspiracy to monopolize) asserting a relevant product market for "Medical Oncology services" only. Compl. ¶ 13. These conclusory statements about submarkets merely beg the question of what, exactly, makes Medical Oncology services or Radiation Oncology services comprise a submarket (or for

---

[7] Plaintiff includes conclusory paragraphs about the "highly inelastic" demand for Oncology Services that it undoubtedly will point to in order to try to buttress its deficient product market allegations. *See* Compl. ¶¶ 66-70. However, these allegations are faulty because they merely assume that Oncology Services constitute a relevant market without addressing the underlying problem – *i.e.*, why Radiation Oncology and Medical Oncology would ever be viewed by consumers as adequate alternatives for one another such that they make up the Oncology Services market.

that matter, how they can be lumped together to form a broader Oncology Services market).[8] The Complaint does not even attempt to answer this question.

As with its allegations of an Oncology Services market, Plaintiff provides no factual allegations substantiating its narrower "submarkets." For instance, there are no allegations regarding the cross-elasticity of demand or other indications of price sensitivity that would indicate whether physicians, patients, or payors treat Medical Oncology services differently than they do other services, like Radiation Oncology or Oncology Services in general. Moreover, the Complaint gives no indication of physician, patient, or payor preferences for Medical Oncology services versus Radiation Oncology services. Without factual allegations answering these types of questions, which Eleventh Circuit precedent makes clear are crucial to understanding whether a separate market exists, Plaintiff is left without a plausibly alleged product market or submarket. *See Jacobs*, 626 F.3d at 1338-39 (granting motion to dismiss where unsupported assertions of relevant product markets and submarkets failed to state a claim under the Sherman Act).[9] At bottom, precedent requires dismissal of Plaintiff's Complaint for failure to adequately plead facts defining the relevant product market.

## II.    PLAINTIFF'S CLAIMS ARE TIME-BARRED, AND NO TOLLING DOCTRINE APPLIES.

The Complaint should also be dismissed in its entirety because it is apparent on its face that Plaintiff's claims are time-barred and no tolling doctrine can resuscitate its stale claims. *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013) (affirming district

---

[8] In fact, because identical criteria typically are used to define both markets and submarkets, some courts have questioned whether the markets at issue are genuine submarkets and markets or simply markets defined too broadly or narrowly. *See, e.g., Allen-Myland, Inc. v. IBM*, 33 F.3d 194, 208 n.16 (3d Cir. 1994).

[9] Nor does Plaintiff plausibly allege a "cluster market" comprised of radiation oncology and medical oncology, as nowhere in the Complaint does it allege that these two distinct services are linked by a common use or what "commercial realities" are present such that these two services could plausibly be shielded from competitive forces in such a way that clustering them together is appropriate for antitrust purposes. *See United States v. Grinnell Corp.*, 384 U.S. 563, 571-73 (1966).

11

court's grant of motion to dismiss based on the statute of limitations, which is appropriate "if it is apparent from the face of the complaint that the claim is time-barred").

### A. Plaintiff's Claims Are Barred by the Statute of Limitations.

Section 4B of the Clayton Act provides a four-year statute of limitations for private antitrust actions for damages from alleged Sherman Act violations. 15 U.S.C. § 15b. A cause of action accrues and the statute of limitations begins to run when a defendant commits an act that injures a plaintiff's business. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971).

Though Plaintiff is vague about the beginning of the alleged agreement between the FCS Defendants and 21st Century, Plaintiff effectively alleges that it began "at least as early" as 2010 as it seeks to represent a class for the time period "2010 until the effects of [defendants'] unlawful conduct ceases." Compl. ¶¶ 2, 95. This is confirmed by Plaintiff's heavy reliance on the allegations made in the *Dill-Sievert* action, which was filed more than two years ago by former employees who left FCS in 2015. *Id.* ¶¶ 30-34. The complaint in that case alleged that the purported market allocation agreement between the FCS Defendants and 21st Century was in place during these former employees' employment (one of whom was employed since 2003), and specifically alleged that an agreement was in effect at the time a new competitor entered the Southwest Florida market in 2011 and allegedly struggled due to the impact of the agreement. *Dill-Sievert*, Dkt. 12, ¶¶ 122, 134-35, 144. Because the Complaint makes clear that Plaintiff's claims accrued in 2010, Compl. ¶¶ 2, 95, the applicable four-year statute of limitations – absent any tolling – would have expired in 2014, almost four years before Plaintiff filed its Complaint in the present case.

**B.      No Tolling Doctrine Applies to Rescue Plaintiff's Untimely Claims.**

Because Plaintiff alleges an agreement beginning in 2010, the timeliness of Plaintiff's claims relies entirely on whether it has adequately pled that the statute of limitations was tolled. Where, as here, a plaintiff fails to plead sufficient facts to establish tolling, dismissal is appropriate. *Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*, 341 F. App'x 487, 496 (11th Cir. 2009) (affirming dismissal of claim based on statute of limitations where plaintiff did not plead sufficient facts to establish that any tolling doctrine applied). Recognizing that its claims are time-barred, Plaintiff resorts to two inapplicable tolling theories in its Complaint: fraudulent concealment and continuing conspiracy. However, neither doctrine can save Plaintiff's claims.

### 1.      Plaintiff Pleads No Facts Demonstrating Either Fraud or Concealment by the Defendants As Required to Avoid Dismissal.

Attempting to rely on tolling from the doctrine of fraudulent concealment, Plaintiff claims that FCS and 21st Century kept their conduct "secret," and Plaintiff "did not know and could not have known of the existence of the anticompetitive conduct" until June 29, 2017, the date when 21st Century disclosed the *Dill-Sievert* action as part of a federal bankruptcy proceeding. Compl. ¶¶ 36-37. These allegations are deficient.

For fraudulent concealment to apply, a plaintiff must plead that the defendant used fraudulent means to successfully conceal the conduct complained of, and that plaintiff failed, despite the exercise of due diligence on its part, to discover the facts that form the basis of its claim. *See Klehr v. A. O. Smith Corp.*, 521 U.S. 179, 195 (1997). A plaintiff must do more than show that it was ignorant of its cause of action; rather, a plaintiff must show that a defendant "fraudulently concealed the existence of the cause of action such that plaintiff, acting as a reasonable person, did not know of its existence." *Conmar Corp. v. Mitsui & Co. (USA), Inc.*,

13

858 F.2d 499, 502 (9th Cir. 1988). To that end, the Eleventh Circuit requires a plaintiff to plead "affirmative actions by the defendant constituting concealment." *Hill v. Texaco, Inc.*, 825 F.2d 333, 335 (11th Cir. 1987) (affirming grant of motion to dismiss, citing *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248 (9th Cir. 1978)); *Eaton v. Keith*, 154 F. App'x 844, 848 (11th Cir. 2005) (noting that "[f]raudulent concealment must consist of affirmative acts or representations which are calculated to, and in fact do, prevent the discovery of the cause of action") (internal quotes and citations omitted). Moreover, this "includes alleging the specific conduct of the defendant that entitles the plaintiff to toll the statute against that defendant." *Pedraza v. United Guar. Corp.*, 114 F. Supp. 2d 1347, 1356 (S.D. Ga. 2000) (citing *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997)).

Here, the Complaint is completely devoid of any allegations that the FCS Defendants fraudulently concealed the alleged agreement from Plaintiff or other members of the putative class. Indeed, the closest Plaintiff comes to any allegation related to the FCS Defendants' concealment is that "Defendants' agreements were kept secret until at least June 29, 2017." Compl. ¶ 36. Apart from this bare assertion, the only other mention of concealment is Plaintiff's idle wondering "[w]hether the Defendants and their co-conspirators fraudulently concealed the existence of their anticompetitive conduct from the Plaintiff and the members of the Class." *Id.* ¶ 73(i). These allegations amount to nothing more than an allegation of non-disclosure and therefore fall far short of pleading fraudulent concealment. Indeed, Plaintiff alleges no affirmative acts of concealment at all, much less specific acts taken by the FCS Defendants. Neither does Plaintiff assert that the FCS Defendants used fraud to conceal their conduct, much less what the specific fraudulent means could have been, nor any facts establishing the details of the purported fraudulent concealment. *See Pedraza*, 114 F. Supp. 2d at 1356 ("[A] plaintiff

14

must satisfy Federal Rule of Civil Procedure 9(b)'s requirement to plead with particularity in her complaint the facts giving rise to a claim of fraudulent concealment before a federal court will toll the statute of limitations . . . To satisfy Rule 9(b), the plaintiff's complaint must "set forth the time, place and manner" in which any act of fraud occurred"). This renders the fraudulent concealment allegations deficient as a matter of law.

Although the Court need go no further given the deficiency above, Plaintiff also failed to plead that it neither knew nor, in the exercise of due diligence, could reasonably have known of the offense to successfully advance a theory of fraudulent concealment. *Klehr*, 521 U.S. at 184 ("reasonable diligence does matter, and a plaintiff who is not reasonably diligent may not assert fraudulent concealment"). Plaintiff makes no allegations that it diligently investigated its claims despite it being a sophisticated government entity that "manages operations of sixty county departments comprised of more than 2,700 employees," and "operates a self-funded health insurance plan for its employees and retirees." Compl. ¶ 14.

In fact, considering Plaintiff's size and sophistication, it undoubtedly paid for services provided by FCS and 21st Century beyond Southwest Florida. As the payor for these services during the class period, Plaintiff would have had ample opportunity over the course of several years to exercise due diligence and assemble similar statistics to those it now cites from 2015 to support its claims of supracompetitive pricing. *Id.* ¶¶ 50-51. Plaintiff's unexplained failure to do so or to undertake any other such diligence further demonstrates that fraudulent concealment cannot rescue its claims.

## 2. Plaintiff Pleads No Overt Acts Within the Limitations Period to Establish a Continuing Violation or Conspiracy.

Plaintiff also purports to allege a continuing conspiracy despite its failure to plead any overt acts in furtherance of the conspiracy. Plaintiff makes only one vague and conclusory

15

statement of unspecified ongoing conduct by FCS and 21st Century, which is inadequately pled and does not constitute a continuing violation. Compl. ¶ 86 ("During the Class Period, Defendants and their co-conspirators entered into a *continuing* agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for Oncology Services") (emphasis added). This is the full extent of Plaintiff's allegations of a continuing agreement.

However, Eleventh Circuit law is clear that the statute of limitations applies unless there are separate overt acts pleaded that cause injury during the limitations period. *See Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d 117, 128 (5th Cir. 1975)[10] (holding that "[i]t remains clear nonetheless that a newly accruing claim for damages must be based on some injurious act actually occurring during the limitations period, not merely the abatable but unabated inertial consequences of some pre-limitations action."); *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987) (to allege a continuing violation, "an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act"). "[T]wo elements characterize an overt act which will restart the statute of limitations: 1) it must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) it must inflict new and accumulating injury on the plaintiff." *Id.* at 238.

Here, Plaintiff fails to plead any overt acts in furtherance of a conspiracy during the limitations period of March 26, 2014 to March 26, 2018, the day Plaintiff filed this suit. The latest "events" alleged in the Complaint took place in 2010, when the agreement allegedly began, and in or around 2011, when the alleged agreement to acquire Premiere Oncology's practices took place. Beyond that, Plaintiff does not allege a single fact showing that the FCS Defendants

---

[10] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

16

and 21st Century continued to meet, communicate, fine-tune, or otherwise maintain their alleged agreement, nor any new and overt act whatsoever that would constitute a continuing violation – apart from the naked allegation that the agreement was "continuing."  Nor can Plaintiff allege a continuing violation based merely on nondisclosure by the Defendants of the facts it now pleads in its Complaint, as "nondisclosure is not a continuing violation for purposes of the statute of limitations and does not by itself toll the running of the limitations period." *Citron v. Wachovia Mortg. Corp.*, 922 F. Supp. 2d 1309, 1322-23 (M.D. Fla. 2013) (citing *Sampson v. Washington Mut. Bank*, 453 F. App'x 863, 865 (11th Cir. 2011)).  Plaintiff's allegations do not show a continuing violation or conspiracy, and therefore this tolling doctrine cannot save Plaintiff's claims.[11]

## III.   PLAINTIFF DOES NOT PLAUSIBLY PLEAD AN ANTICOMPETITIVE AGREEMENT OR CONCERTED ACTION.

Plaintiff's claims are independently deficient because Plaintiff does not adequately allege an agreement for purposes of its Section 1 and Section 2 claims.[12]  To state a claim under Section 1 of the Sherman Act, a plaintiff must allege facts supporting a plausible inference that defendants conspired and provide a description of the "specific time, place or persons involved in the alleged conspiracies." *Twombly*, 550 U.S. at 556-57, 565 n.10.  To plead the existence of

---

[11] At a minimum, the Court should limit the time period at issue in this case to March 26, 2014 (four years prior to filing the Complaint) to March 26, 2018, as Plaintiff cannot "use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *In re Photochromic Lens Antitrust Litig.*, No. 8:10-MD-2173-T-27EAJ, 2011 WL 4914997, at *2 (M.D. Fla. Oct. 14, 2011) (citing *Klehr*, 521 U.S. at 190; *Zenith*, 401 U.S. at 340 ("We must now determine whether Zenith could have recovered [future] damages if it had brought suit for them in 1954, for if it could not, it would follow ... that it must be permitted to recover them now."); *see also Imperial Point Colonnades Condo., Inc. Mangurian*, 549 F.2d 1029, 1035 (5th Cir.1977) ("where a defendant commits an act injurious to plaintiff outside the limitations period, and damages continue to result from that act within the limitations period, no new cause of action accrues for damages occurring within the limitations period because no act committed by the defendant within that period caused harm").

[12] The anticompetitive conduct underlying Plaintiff's Section 2 claims is the same as that alleged for its Section 1 claim: the alleged agreement to send all radiation oncology patients in Southwest Florida to 21st Century and all medical oncology patients to FCS. Thus, if Plaintiff has failed to allege an agreement for its Section 1 claim, this is fatal to the Section 2 claims as well. *See Clark Mem'ls*, 991 F. Supp. 2d at 1162 (dismissing complaint for failure to plausibly plead Section 1 tying claim and Section 2 monopolization and attempted monopolization claims based on the same conduct).

such an unlawful agreement, a plaintiff must allege either (1) "direct evidence" of an unlawful agreement, or (2) sufficient parallel conduct and "circumstantial evidence that reasonably tends to prove that the [defendants] had a conscious commitment to a common scheme." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984). Plaintiff fails to satisfy these pleading requirements.

First, other than a conclusory allegation of an agreement, the Complaint contains absolutely nothing that, if proven, would qualify as "direct evidence" of a conspiracy. Plaintiff's theory that FCS and 21st Century unlawfully allocated the Medical Oncology and Radiation Oncology product markets beginning in 2010, which somehow caused prices to rise, is based on allegations that former FCS employees Dill and Sievert had knowledge of a "gentlemen's agreement" as to referrals, whereby 21st Century exclusively referred its Medical Oncology patients to FCS and in return FCS referred its Radiation Oncology patients to 21st Century. Compl. ¶¶ 32-34. Plaintiff alleges that Dr. Harwin and Dr. Dosoretz colluded "to formulate and carry out" the agreement and that FCS staff members were instructed to send cancer patients needing Radiation Oncology in Southwest Florida to 21st Century. *Id.* ¶ 32. Plaintiff also asserts that an agreement was formed sometime in or around 2011 whereby 21st Century purchased the Radiation Oncology practice of a competitor in Southwest Florida while FCS purchased the Medical Oncology practice of that same competitor. *Id.* ¶ 34.

These are the only "factual" allegations shedding light on the purported market allocation agreement between FCS and 21st Century. Yet, these allegations are nothing more than a cut-and-paste job from the *Dill-Sievert* action, an action that was voluntarily dismissed in October 2017. Moreover, the Complaint includes only conclusory assertions of conspiracy as it fails to allege when or how any purported agreement or conspiracy was formed (other than the vague

18

assertion that the alleged "gentlemen's agreement" appears to have begun "at least as early" as 2010) and that an agreement to allocate a competitor's practices took place in or around 2011. Compl. ¶¶ 2, 34, 95. As the Supreme Court ruled in *Twombly*, such "a conclusory allegation of agreement" does not state an antitrust claim. 550 U.S. at 557. Likewise absent from Plaintiff's Complaint are any allegations as to *where* the alleged agreement was made, or *how* any such agreement was negotiated, reached or maintained. For example, Plaintiff does not allege that any particular meeting was held or that any documents were exchanged, or that any specific communications involving FCS, Dr. Harwin, 21st Century or Dr. Dosoretz even took place. Conclusory assertions of a "gentlemen's agreement" not to compete in specific markets are not sufficient. *In re Elevator Antitrust Litig.*, 502 F.3d 47, 51 (2nd Cir. 2007) (conclusory allegations of market allocation conspiracy did not survive motion to dismiss where allegations of how conspiracy was effectuated were "in entirely general terms without any specification of any particular activities by any particular defendant"); *Stanislaus Food Prods. Co. v. USS-POSCO Indus.,* 782 F. Supp. 2d 1059, 1075 (E.D. Cal. 2011) (finding allegations of market allocation agreement conclusory where plaintiffs alleged an agreement starting in 2006 by which one defendant agreed not to compete outside one relevant market and provided no further specifics). Stripped of the "gentlemen's agreement" label, the alleged conduct resembles the consciously parallel decisions not to compete alleged in *Twombly*, which the Supreme Court found to be "so natural" and inadequate to support a plausible inference of an unlawful agreement. *Twombly*, 550 U.S. at 566 ("[I]f alleging parallel decisions to resist competition were enough to imply an antitrust conspiracy, pleading a § 1 violation against almost any group of competing businesses would be a sure thing."). Without more factual detail, Plaintiff's allegations do not state a claim for relief based on an unlawful market allocation agreement.

19

Because it does not allege any direct evidence of conspiracy, Plaintiff must set forth allegations showing that FCS and 21st Century acted in parallel[13] and allege sufficient circumstantial evidence – or "plus factors" – suggesting that the parallel conduct resulted from an unlawful agreement rather than lawful independent behavior. *Twombly*, 550 U.S. at 556-57; *Williamson*, 346 F.3d at 1300-01. Plaintiff's allegations fail this test too. At best, Plaintiff alleges only parallel conduct in that FCS referred its radiation oncology patients to 21st Century, while 21st Century referred its medical oncology patients to FCS, which if assumed to be true for purposes of this motion, is perfectly legitimate pro-competitive behavior. *See, e.g.,* Compl. ¶ 33. Beyond this, Plaintiff's allegations of plus factors fall well short of alleging a plausible conspiracy. These allegations include the following:

- Defendants had "opportunities" to conspire with 21st Century as members of the same trade organizations and attendees at the same industry conferences as well as the proximity of their respective headquarters. Compl. ¶¶ 62-65.

- The U.S. Department of Justice began an investigation into unidentified anticompetitive conduct by FCS and 21st Century. Compl. ¶ 35.

- Defendants' conduct went against their economic self-interests. Compl. ¶¶ 53-58.

- Other market factors and characteristics made the oncology services market "conducive to anticompetitive conduct." Compl. ¶¶ 38-48, 59-61, 66-70.

None of these, whether considered separately or together, suffice to plead an agreement compliant with *Twombly*, for the reasons set forth below.

***Opportunities to Collude***. Plaintiff devotes four paragraphs in its Complaint to alleging that FCS and 21st Century were members and attendees of the same trade associations and

---

[13] "Conscious parallelism" is not itself unlawful, and indeed expected in concentrated industries – in other words, the product of a rational independent calculus by firms in concentrated markets, that realize "that the market structure in which they operate will most easily yield profits by means other than price competition." *Williamson Oil Co. v. Phillip Morris USA*, 346 F.3d 1287, 1299 (11th Cir. 2003). Thus, courts in this circuit require a plaintiff to allege and prove "plus factors" that "remove their evidence from the realm of equipoise and render that evidence more probative of a conspiracy than of conscious parallelism." *Id*. at 1301.

industry conferences and that they have headquarters within 2.5 miles of each other. These allegations, however, do nothing to bolster the claim that FCS and 21st Century were involved in an antitrust conspiracy. Indeed, courts uniformly recognize that the mere "opportunity to collude" or membership and involvement in trade associations are insufficient to permit an inference of conspiracy. *See, e.g., Williamson*, 346 F.3d at 1319 (mere opportunity to conspire is not sufficient to permit an inference of conspiracy); *Twombly*, 550 U.S. at 567 n.12 (confirming that a plaintiff cannot survive a motion to dismiss with allegations of the mere "opportunity" to collude); *In re Graphics Processing Units Antitrust Litig.* ("*GPU"*), 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) ("Attendance at industry trade shows and events is presumed legitimate and is not a basis from which to infer a conspiracy, without more."). Significantly, nowhere does the Complaint connect any alleged industry functions and meetings to the alleged market allocation conspiracy. For example, Plaintiff does not allege any discussion of Medical Oncology or Radiation Oncology prices or market conditions at any particular meeting or function or even identify any specific meetings that the FCS Defendants, 21st Century, or Dr. Dosoretz attended. Without more, mere participation in the same trade or industry events is not sufficient to survive Defendants' motion to dismiss.

*Government Investigation.* Plaintiff's allegation in paragraph 35 of its Complaint that the Department of Justice has investigated anticompetitive conduct by FCS and 21st Century is equally unavailing. Any such investigation, as a matter of law, "carries no weight in pleading an antitrust conspiracy claim." *GPU*, 527 F. Supp. 2d at 1024; *Superior Offshore Int'l v. Bristow Grp.*, 738 F. Supp. 2d 505, 508 (D. Del. 2010) (granting motion to dismiss and concluding that bare allegations of a government investigation did not "bolster" plaintiff's conspiracy theory); *cf. Meyer v. Green*, 710 F.3d 1189, 1201-02 (11th Cir. 2013) (affirming grant of motion to dismiss

21

securities class action because pendency of government investigation, without an actual finding of wrongdoing, does not support a claim).

*Actions Against Self-Interest*.  Plaintiff also places heavy emphasis on the notion that FCS lack of growth into the Radiation Oncology market in Southwest Florida, coupled with 21st Century's lack of growth into the Medical Oncology market in Southwest Florida, can only be explained by collusion, not by rational, independent decisions based on each entity's economic self-interest.  *See* Compl. ¶¶ 57-58.  In Plaintiff's view, the only rational action these competitors could take would have been for FCS to compete in the Radiation Oncology market in Southwest Florida and for 21st Century to do the same in the Medical Oncology market.  However, these allegations are squarely at odds with Plaintiff's other allegations that the Oncology Services market faces high barriers to entry, Compl. ¶¶ 59-61, which provide a perfectly legitimate explanation for why FCS may have chosen not to participate in the Radiation Oncology services market in this region in Florida.[14]  Accordingly, these allegations do not make any alleged conspiracy more plausible.

*Market Characteristics.*  Lastly, Plaintiff describes characteristics of the Oncology Services market in Southwest Florida, which it contends increases the likelihood of conspiracy in this market.  For instance, the Oncology Services market is highly concentrated and has high barriers to entry because of high start-up costs.  Compl. ¶¶ 39-48, 60-61.  What Plaintiff ignores, however, is that these same market features also make the market susceptible to independent and perfectly lawful "conscious parallelism."  Accordingly, these allegations should be afforded no weight in ruling on the motion to dismiss.

---

[14] These allegations also contradict Plaintiff's own demonstrative in Paragraph 54 of the Complaint, which shows that in certain "blue" counties, FCS and 21st Century offer *either* radiation *or* medical oncology services (not both). Yet, rather than allege the market allocation agreement extends to these counties too, Plaintiff cites them as an example of "direct competition" between FCS and 21st Century, undercutting its claim that a company's decision not to enter a specific market can only be the result of an unlawful agreement.

22

**IV.    PLAINTIFF CANNOT STATE A CLAIM FOR CONSPIRACY TO MONOPOLIZE THE ONCOLOGY SERVICES MARKET.**

In Count II of the Complaint, Plaintiff alleges a conspiracy to monopolize the Oncology Services market of Southwest Florida, which appears to be merely a reformulation of its Sherman Act Section 1 claim of conspiracy, and thus it fails for the same reasons.  Count II is also deficient because it does not allege that the FCS Defendants and 21st Century conspired to confer monopoly power on any single entity; instead Plaintiff asserts that Defendants and their co-conspirators *collectively* sought to dominate the Oncology Services market, which does not state a claim.  Compl. ¶¶ 95-96; *see also id*. ¶ 41 ("21st Century and FCS control nearly 90% of the market for Oncology Services in Southwest Florida" though each alone only controls 45% and 43% respectively); ¶ 49 (alleging that "Defendants' scheme" was "to collusively manipulate and control the Oncology Services market in Southwest Florida *with* 21st Century") (emphasis added).

Numerous courts have repeatedly rejected the viability of a Section 2 conspiracy claim based on a shared monopoly theory such as this.  *Precision CPAP, Inc. v. Jackson Hosp.,* No. 2:05cv1096-MHT (WO), 2010 WL 797170, at *14-15 (M.D. Ala. Mar. 8, 2010) (granting motion to dismiss and holding conspiracy to monopolize claim cannot be premised on shared monopoly theory); *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2014 WL 4277510, at *36-37 (S.D.N.Y. Aug. 29, 2014); *see also Sun Dun, Inc. v. Coca-Cola Co.,* 740 F. Supp. 381, 391-92 (D. Md. 1990) ("Congress' concept of 'monopoly' did not include 'shared monopolies' or 'oligopolies' at all, but rather the complete domination of a market by a single economic entity."); *Midwest Gas Servs., Inc. v. Indiana Gas Co., Inc.*, 317 F.3d 703, 713 (7th Cir. 2003) ("a § 2 claim can only accuse one firm of being a monopolist"); *City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 42 (D.D.C. 2007) (shared monopoly argument

23

insufficient to state a claim); *Standfacts Credit Servs., Inc. v. Experian Info. Sols., Inc.*, 405 F. Supp. 2d 1141, 1152 (C.D. Cal. 2005) (same). Accordingly, Plaintiff's conspiracy to monopolize claim based on an alleged agreement to monopolize fails to state claim.

## CONCLUSION

For all the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety.

Dated:  May 24, 2018

    */s/ Emily F. O'Leary*
Michael P. Matthews
Florida Bar No. 63988
FOLEY & LARDNER LLP
100 North Tampa Street, Suite 2700
Tampa, Florida 33602-5810
Telephone: 813-225-4131
mmatthews@foley.com

H. Holden Brooks
Wisconsin Bar No. 1071254
Kate E. Gehl
Wisconsin Bar No. 1081421
Elizabeth A. N. Haas
Wisconsin Bar No. 1059028
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
Telephone: 414-297-5711
hbrooks@foley.com
kgehl@foley.com
ehaas@foley.com

Emily Friend O'Leary
Florida Bar No. 73042
Foley Lardner, LLP
1 Independent Dr., Suite 1300
Jacksonville, FL 2202
Telephone: 904-359-8750
eoleary@foley.com

*Attorneys for Defendant Florida Cancer*
*Specialists, P.L. and Dr. William N. Harwin*

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 24, 2018, a true and correct copy of the foregoing was filed via the CM/ECF system, which will provide electronic notice to all counsel of record.

/s/      *Emily F. O'Leary*
Attorney