**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

|  |  |
|---|---|
| COUNTY OF MONMOUTH, NEW JERSEY, on behalf of itself and all others similarly situated,<br><br>         Plaintiff,<br><br>vs.<br><br>FLORIDA CANCER SPECIALISTS, P.L.; and DR. WILLIAM N. HARWIN,<br><br>         Defendants. | Case No. 2:18-cv-201-SDM-MRM |

**PLAINTIFF'S AND PROPOSED CLASS COUNSEL'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND FOR CERTIFICATION
<u>OF SETTLEMENT CLASS, AND INCORPORATED MEMORANDUM OF LAW</u>**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................ 2

II.    STATEMENT OF FACTS .................................................................. 3

     A.     Procedural History ................................................................. 3

     B.     The Mediation ........................................................................ 3

     C.     Summary of the Settlement Terms ......................................... 4

          1.     Background ................................................................. 4

          2.     The Proposed Settlement Class .................................. 5

          3.     Monetary Relief for the Benefit of the Class ............. 5

          4.     Class Release ............................................................. 6

          5.     Settlement Termination ............................................... 7

          6.     Class Representative Service Award ............................ 8

          7.     Attorneys' Fees and Costs ........................................... 8

          8.     The Notice Program .................................................... 8

III.   ARGUMENT ...................................................................................... 9

     A.     The Legal Standard for Preliminary Approval ........................ 9

     B.     This Settlement Satisfies the Criteria for Preliminary Approval ............. 12

          1.     This Settlement Is the Product of Good-Faith, Informed, and Arm's-Length Negotiations ................................................... 12

          2.     The Facts Support a Preliminary Determination That the Settlement Is Fair, Adequate and Reasonable ............................ 15

                (a)     Likelihood of success at trial .......................... 15

                (b)     Range of possible recovery and the point on or below the range of recovery at which a settlement is fair ................................................................ 16

                (c)     Complexity, expense, and duration of litigation ............. 16

## TABLE OF CONTENTS
(continued)

**Page**

|  |  |  |  |
|---|---|---|---|
|  | (d) | Stage of the proceedings | 17 |
| C. |  | Certification of the Settlement Class Is Appropriate | 17 |
|  | 1. | Numerosity | 18 |
|  | 2. | Commonality | 19 |
|  | 3. | Typicality | 20 |
|  | 4. | Adequacy of Representation | 20 |
|  | 5. | Predominance | 21 |
|  | 6. | Superiority | 22 |
| D. |  | After Proposed Class Counsel Provides Notice, the Court Should Schedule a Final Approval Hearing | 22 |
| IV. | CONCLUSION |  | 23 |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................17, 22

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*,
   211 F.R.D. 457 (S.D. Fla. 2002)...................................................................................9

*Bastian v. United Servs. Auto Ass'n*,
   No. 3:13-cv-1454, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017).........................11

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ..............................13, 16

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ...................................................................................9, 11

*Borcea v. Carnival Corp.*,
   238 F.R.D. 664 (S.D. Fla. 2006)...................................................................................18

*Busby v. JRHBW Realty, Inc.*,
   513 F.3d 1314 (11th Cir. 2008) ...................................................................................20

*Castillo v. N & R Servs. of Cent. Fla., Inc.*,
   No. 8:07-cv-1804-T-26EAJ, 2008 U.S. Dist. LEXIS 36882 (M.D. Fla. May 1,
   2008) ................................................................................................................19

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ...............................................................................9, 12, 15

*Cox v. Am. Cast Iron Pipe Co.*,
   784 F.2d 1546 (11th Cir. 1986) ...................................................................................19

*Diakos v. HSS Sys., LLC*,
   137 F. Supp. 3d 1300 (S.D. Fla. 2015) ...........................................................................13

*Faught v. Am. Home Shield Corp.*,
   668 F.3d 1233 (11th Cir. 2011) ...................................................................................11

*Hefler v. Wells Fargo & Co.*,
   No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045 (N.D. Cal. Dec. 17,
   2018) .............................................................................................................10, 16

*Holman v. Student Loan Xpress, Inc.*,
   No. 8:08-cv-305-T-23MAP, 2009 WL 4015573 (M.D. Fla. Nov. 9, 2009)..........................17

*Hughes v. Baird & Warner, Inc.*,
 No. 76 C 3929, 1980 U.S. Dist. LEXIS 13885 (N.D. Ill. Aug. 20, 1980) ...............................21

*In re: 21st Century Oncology Holdings, Inc., et al.*,
 No. 17-22770 (RDD) (Bankr. S.D.N.Y. Jan. 11, 2018)..............................................................2

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
 No. 1:06-md-01775 (E.D.N.Y.) ................................................................................................13

*In re Auto. Parts Antitrust Litig.*,
 No. 2:13-cv-00803 (E.D. Mich.)...............................................................................................13

*In re Commercial Tissue Prods.*,
 183 F.R.D. 589 (N.D. Fla. 1998) ..............................................................................................21

*In re Disposable Contact Lens Antitrust Litig.*,
 No. 3:15-md-02626-HES-JRK (M.D. Fla. July 10, 2018)....................................................6, 14

*In re Disposable Contact Lens Antitrust Litig.*,
 No. 3:15-md-2626-J-20JRK, 2018 U.S. Dist. LEXIS 212329 (M.D. Fla. Dec.
 4, 2018) ...............................................................................................................................14, 19

*In re Foundry Resins Antitrust Litig.*,
 242 F.R.D. 393 (S.D. Ohio 2007) .............................................................................................21

*In re Payment Card Interchange Fee & Merch. Discount Litig. ("Interchange")*,
 No. 1:05-md-1720 (E.D.N.Y.) ............................................................................................13, 14

*In re Seitel, Inc. Sec. Litig.*,
 245 F.R.D. 263 (S.D. Tex. 2007)...............................................................................................13

*In re U.S. Oil & Gas Litig.*,
 967 F.2d 489 (11th Cir. 1992) ....................................................................................................9

*Kilgo v. Bowman Transp., Inc.*,
 789 F.2d 859 (11th Cir. 1986) ..................................................................................................18

*Klay v. Humana, Inc.*,
 382 F.3d 1241 (11th Cir. 2004) ................................................................................................22

*Kornberg v. Carnival Cruise Lines, Inc.*,
 741 F.2d 1332 (11th Cir. 1984) ................................................................................................19

*Lipuma v. Am. Express Co.*,
 406 F. Supp. 2d 1298 (S.D. Fla. 2005) .........................................................................12, 15, 16, 17

*Lyons v. Ga.-Pacific Corp. Salaried Employees Ret. Plan*,
 221 F.3d 1235 (11th Cir. 2000) ................................................................................................20

*Murray v. Auslander*,
  244 F.3d 807 (11th Cir. 2001) .................................................................................................20

*Pop's Pancakes, Inc. v. NuCo2*,
  251 F.R.D. 677 (S.D. Fla. 2008) ..............................................................................................20

*Ressler v. Jacobson*,
  822 F. Supp. 1551 (M.D. Fla. 1992) .........................................................................................16

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
  601 F.3d 1159 (11th Cir. 2010) ................................................................................................21

*Smith v. Wm. Wrigley Jr. Co.*,
  No. 09-cv-60646, 2010 U.S. Dist. LEXIS 67832 (S.D. Fla. June 15, 2010) ...........................11

*Spinelli v. Cap. One Bank*,
  2009 U.S. Dist. LEXIS 20214 (M.D. Fla. Mar. 14, 2009).................................................20, 22

*Spinelli v. Cap. One Bank*,
  265 F.R.D. 598 (M.D. Fla. 2009).......................................................................................20, 22

*Strube v. Am. Equity Inv. Life Ins. Co.*,
  226 F.R.D. 688 (M.D. Fla. 2005)..............................................................................................19

*Torres v. Bank of Am. (In re Checking Account)*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) .....................................................................................16

*Turner v. Gen. Elec. Co.*,
  No. 2:05-CV-186-FTM-99DNF8, 2006 U.S. Dist. LEXIS 65144 (M.D. Fla.
  Sept. 13, 2006) .........................................................................................................................13

*Veal v. Crown Auto Dealerships, Inc.*,
  236 F.R.D. 572 (M.D. Fla. 2006)..............................................................................................20

*Warren v. City of Tampa*,
  693 F. Supp. 1051 (M.D. Fla. 1988)..........................................................................................14

*Williams v. Mohawk Indus., Inc.*,
  568 F.3d 1350 (11th Cir. 2009) ................................................................................................19

*Wilson v. EverBank*,
  2016 U.S. Dist. LEXIS 15751 (M.D. Fla. Feb. 3, 2016) ...........................................................14

**Statutes**

California Civil Code § 1542..............................................................................................................6

False Claims Act ...............................................................................................................................6

Florida Deceptive and Unfair Trade Practices Act ........................................................6

Sherman Act §§ 1 and 2, 15 U.S.C. §§ 1, 2 ...........................................................2, 3

**Rules**

Fed. R. Civ. P. 23 ......................................................................................... *passim*

Fed. R. Evid. 408 .......................................................................................................14

**Other Authorities**

John M. Barkett, "The 2018 Amendments to the Federal Class Action Rule,"
    https://www.americanbar.org/content/dam/aba/administrative/litigation/materi
    als/2017-2018/2018-sac/written-materials/miami-class-actions-amendments-
    to-the-federal-class.pdf ...................................................................................10

MANUAL FOR COMPLEX LITIGATION § 30.42 (3d ed. 1995)....................................11, 12

NEWBERG ON CLASS ACTIONS (4th ed. 2002) ....................................................9, 11, 13

Plaintiff and proposed class counsel Robins Kaplan LLP ("Proposed Class Counsel") respectfully move unopposed for Preliminary Approval of the Settlement Agreement attached hereto as Exhibit A ("Settlement" or "Agreement"), which will resolve all claims against Florida Cancer Specialists & Research Institute, LLC, f/k/a Florida Cancer Specialists, P.L., and Dr. William N. Harwin (collectively, "FCS" or "Defendants").[1] The Court should grant Preliminary Approval because this Settlement provides substantial and meaningful relief for the Settlement Class, as defined in paragraph 8 of the Agreement, and because the terms of the Settlement are well within the range of reasonableness and consistent with applicable case law. Indeed, the Settlement, under which FCS will pay up to seven million, one hundred eighty-seven thousand, five hundred dollars ($7,187,500.00) in cash to create a Settlement Fund, is an excellent result for the Settlement Class. *See generally* Declaration of Eamon O'Kelly, attached hereto as Exhibit B ("Decl."). The Settlement satisfies all Eleventh Circuit criteria for Preliminary Approval.

Accordingly, Plaintiff and Proposed Class Counsel respectfully request that the Court take the following initial steps in the settlement approval process: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint the Named Plaintiff as Class Representative; (4) appoint as Class Counsel Robins Kaplan LLP; (5) stay the Action against FCS pending Final Approval of the Settlement; (6) approve the form for disseminating notice to the proposed Settlement Class members attached hereto as Exhibit C; and (7) enter the [Proposed] Order Preliminarily Approving Class Settlement and Certifying Settlement Class attached hereto as Exhibit D.

---

[1] All capitalized defined terms used herein have the same meanings ascribed in the Agreement.

1

I.    **INTRODUCTION**

On March 26, 2018, Plaintiff filed suit against FCS as well as 21st Century Oncology LLC and Dr. Daniel Dosoretz (collectively, "21st Century"). ECF No. 1. 21st Century had filed for protection under Chapter 11 of the bankruptcy law on May 25, 2017, however, and its liability was discharged on January 11, 2018. *See* Order, *In re: 21st Century Oncology Holdings, Inc., et al.*, No. 17-22770 (RDD), ECF No. 915 (Bankr. S.D.N.Y. Jan. 11, 2018). On April 10, 2018, Plaintiff filed an Amended Complaint naming only the FCS parties as Defendants, and designating 21st Century as an alleged co-conspirator. Am. Compl., ECF No. 27. Both complaints alleged essentially the same set of facts: that FCS and 21st Century had conspired, in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, to allocate the market for Oncology Services within five counties collectively referred to in the complaints as "Southwest Florida," and to monopolize the respective submarkets for Radiation Oncology Services and Medical Oncology Services.

Pursuant to this Court's Order referring the Action to mediation and appointing Peter J. Grilli as mediator, mediation sessions were held on November 14, 2018, and January 4 and 14, 2019, following which the parties agreed in principle to resolve the Action. Decl. ¶¶ 10-12. On January 25, 2019, the parties executed the Settlement Agreement.

Reflecting the reasonableness and fairness of the Settlement is the magnitude of the Settlement Fund. Settlement Class Counsel negotiated a $7,187,500 cash payment, which represents approximately 43.8 percent to 56.7 percent of Plaintiff's estimate of the Settlement Class's damages attributable to FCS. *Id.* ¶ 10.

Plaintiff and Proposed Class Counsel now seek Preliminary Approval so they can notify Settlement Class Members of the terms of the Settlement, and provide them with an opportunity to opt out of or object to the Settlement. For the reasons set forth herein, Plaintiff and Proposed Class Counsel respectfully request that the Court grant Preliminary Approval.

II.    **STATEMENT OF FACTS**

A.    **Procedural History**

Plaintiff alleges that FCS and co-conspirator 21st Century allocated the Oncology Services market in Southwest Florida, by, among other things, (a) entering into an agreement whereby FCS would refer Radiation Oncology patients exclusively to 21st Century, and 21st Century would refer Medical Oncology patients exclusively to FCS, and (b) agreeing that FCS would acquire the Medical Oncology business, and 21st Century the Radiation Oncology business, of a third competitor, thereby allowing FCS and 21st Century to monopolize the Southwest Florida Medical Oncology and Radiation Oncology Services submarkets, respectively. Am. Compl. ¶¶ 4, 32-34. Plaintiff alleged that FCS's actions violated Sections 1 and 2 of the Sherman Act, and sought monetary and injunctive relief. Am. Compl. ¶ 7.

FCS moved to dismiss the Amended Complaint on May 24, 2018. *See* ECF No. 47. Plaintiff filed its opposition on June 25, 2018 (*see* ECF No. 57), and briefing was completed on July 10, 2018. *See* ECF No. 72. On July 3, 2018, the District Court entered a stipulated Case Management and Scheduling Order (the "CMO," ECF No. 69). Discovery was stayed while the motion to dismiss was pending, "except that the parties agree[d] to exchange information relating to damages during the temporary stay, to be used solely for settlement purposes." Joint Case Management Report at 2, ECF No. 42.

B.    **The Mediation**

On August 21, 2018, the Court ordered the parties to mediate their dispute and appointed Mr. Grilli as mediator. *See* ECF No. 74.

One week later, on August 28, 2018, the parties exchanged initial data sets to enable them to begin their respective estimates of FCS's potential damage exposure. Decl. ¶ 8. Both sides engaged economic consultants to assist them in their analysis, and during October and early

3

November, FCS provided substantial additional data at Plaintiff's request. *Id.* An initial mediation session with Mr. Grilli was held on November 14, 2018, and although it did not result in settlement, sufficient progress was made that the parties agreed to continue with the mediation process. *Id.*

In November and December, FCS provided further transactional data requested by Plaintiff, and the parties continued their discussions regarding interpretation of the complex data. *Id.* ¶ 9. Before the mediation session scheduled for January 4, 2019, Plaintiff's consultants produced an estimate of the amount of damages attributable to FCS during the approximately eight-year class period as being between $12.7 million and $16.4 million. Using an alternative damage methodology (and assuming that Plaintiff could prove liability at trial, which FCS disputes), FCS estimated the proposed class's damages to be no more than $2.9 million. *Id.*

Following hard-fought mediation sessions on January 4 and January 14, 2019, on January 25 the parties entered into the Settlement Agreement for which Plaintiff and Proposed Class Counsel now seek the Court's preliminary approval. *Id.* ¶¶ 10-12.

### C.    Summary of the Settlement Terms

#### 1.    *Background*

Plaintiff and Proposed Class Counsel believe that the claims asserted in the Amended Complaint are meritorious and that Plaintiff would prevail if this matter proceeded to trial. However, the prospect of continued litigation poses a substantial risk to Plaintiff and the class, and pursuing the claims would be expensive and time-consuming. FCS has denied any liability and has moved to dismiss the Amended Complaint on various grounds; although Plaintiff has asserted strong arguments in opposition to the motion, the outcome cannot be taken for granted. If the Action is permitted to proceed to discovery, Plaintiff and counsel will incur substantial expenses and costs, including accrued legal fees and, given the complex nature of antitrust litigation, costly expert discovery. A contested class certification motion and a summary judgment motion also

4

would implicate considerable costs and risks, to say nothing of the costs associated with a jury trial and possibly post-trial appellate review. Therefore, given the costs and uncertainty of the ultimate outcome, Plaintiff has concluded that a settlement with FCS according to the terms set forth in the Settlement Agreement is fair, reasonable and adequate, and in the best interest of Plaintiff and the Settlement Class Members. Agreement at 2; Decl. ¶ 16.

FCS believes that it is not liable for the claims asserted, has defenses to Plaintiff's class action claims, and expressly denies all charges of wrongdoing or liability. Nevertheless, FCS has decided to enter into the Settlement Agreement in order to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation; to obtain the releases, orders and judgment contemplated by the Agreement; and to put to rest with finality all claims that Plaintiff and the Settlement Class Members have or could have asserted against FCS. *See* Agreement at 2.

### 2.      *The Proposed Settlement Class*

The proposed Settlement Class is a damages class under Rule 23(b)(3) of the Federal Rule of Civil Procedure. The Settlement Class is defined as:

> [A]ll persons or entities that paid for all or a portion of the cost of Oncology Services in Southwest Florida to 21st Century or FCS, or any current or former subsidiary or affiliate of 21st Century or FCS, or any co-conspirator, during the period from and including January 1, 2010 until the date of final approval of this Agreement. Excluded from the Settlement Class are Defendants, the officers, directors and employees of any Defendant, the parent companies, subsidiaries and affiliates of any Defendant, the legal representatives and heirs or assigns of any Defendant, any federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Agreement ¶ 8. *Cf.* Am. Compl. ¶ 71.

### 3.      *Monetary Relief for the Benefit of the Class*

The Settlement Agreement requires FCS to deposit $3,593,750 into an escrow account within ten business days following Preliminary Approval. Agreement ¶ 26. That deposit will create the Settlement Fund. Within ten business days following entry of a Final Judgment Order, FCS

will be required to deposit the remaining $3,593,750 into the same escrow account. *Id.* ¶ 27. The Settlement Fund will be invested in U.S. Treasury obligations or U.S. Treasury money market funds, the proceeds to be reinvested as they mature in similar instruments at their then-current market rates. *Id.* ¶ 31. The portion of the Settlement Fund that the parties have agreed may be used to pay expenses associated with providing notice to the Settlement Class may be deposited in a federally insured interest-bearing account at a bank designated by Proposed Class Counsel. *Id.*

Plaintiff and Proposed Class Counsel intend to designate Huntington National Bank ("Huntington") as Escrow Agent. Huntington has considerable experience serving as an Escrow Agent, including for class settlements in this district. *See* Order at 5, *In re Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-02626-HES-JRK, ECF No. 841 (M.D. Fla. July 10, 2018) (in granting preliminary approval, court approved designation of Huntington as Escrow Agent). Proposed Class Counsel have utilized Huntington as an escrow agent in several previous class settlements, and have been very satisfied with the bank's performance of its duties.

### 4. *Class Release*

Any Settlement Class Members who do not timely opt out will release FCS from claims relating to the subject matter of the Action, including federal and Florida antitrust claims, False Claims Act claims, claims under the Florida Deceptive and Unfair Trade Practices Act, and claims for unfair competition, unfair practices, price discrimination, and whistleblower protection, among others. Agreement ¶ 20. Settlement Class Members also waive their rights under Section 1542 of the California Civil Code, which typically precludes a general release of "claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by [the creditor] must have materially affected his settlement with the debtor." *Id.* ¶ 24. The release does not extend to "individual claims arising in the ordinary course of business for any alleged

medical malpractice or breach of contract related to FCS's Oncology Services." *Id.* ¶ 20. The detailed release language may be found in Section D of the Agreement.

### 5. *Settlement Termination*

Within seven calendar days following the end of the Settlement Class Members' opt-out period established by the Court, Proposed Class Counsel will provide FCS with a written list of opt-outs from the Settlement Class. *Id.* ¶ 40. The parties "will ascertain the total dollar amount of payments to FCS and 21st Century for Oncology Services in Southwest Florida during the relevant class period by the Opt-Out Purchasers (the 'Exclusion Amount') . . . . To the extent 21st Century collections data are not reasonably available to the Parties, the Exclusion Amount shall be determined solely by FCS's collections data." *Id.* FCS may withdraw from the Agreement if the Exclusion Amount is equal to or greater than a sum specified in a Confidential Side Letter between the parties. *Id.*

If the Exclusion Amount is reached and FCS wishes to exercise its withdrawal option, it must provide written notice to Proposed Class Counsel within 14 calendar days "after receipt of the list of Opt-Out Purchasers" or within ten calendar days "after ascertaining with Plaintiffs the Exclusion Amount, whichever is later." *Id.* The Agreement also lays out procedures for Plaintiff to challenge FCS's entitlement to withdraw based on the Exclusion Amount and for the Court to resolve any dispute regarding the Exclusion Amount or FCS's right to withdraw. *See id.*

If the Exclusion Amount is reached but FCS elects *not* to exercise this withdrawal option, then "the Settlement Amount shall be reduced by the same percentage as the percentage of the combined amounts of payments FCS and 21st Century collected as to all eligible Settlement Class Members for Oncology Services in Southwest Florida for dates of service from January 1, 2010 through the date of final approval of the Agreement represented by that Opt Out Purchaser," unless

7

the total amount of the reduction is *de minimis*.[2] *Id.* ¶ 28. The parties shall calculate an Opt Out Purchaser's payments using FCS's transactional data and any "reasonably available" 21st Century transactional data. *Id.*

Either Party may terminate the Settlement if the Settlement is rejected or materially modified by the Court or by an appellate court. *Id.* ¶ 38.

### 6.   *Class Representative Service Award*

At a later date, Proposed Class Counsel will apply to the Court for, and FCS will take no position on, a reasonable Service Award for Class Representatives, subject to court approval. *See id.* ¶ 35(d).

### 7.   *Attorneys' Fees and Costs*

At a later date, Proposed Class Counsel will apply to the Court for, and FCS will take no position on, attorneys' fees that represent a reasonable percentage of the Settlement Fund, plus reimbursement of litigation costs and expenses. *See id.* ¶¶ 35(c), 36, 37.

### 8.   *The Notice Program*

Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement. For a class proposed under Rule 23(b)(3), whether litigated or by virtue of a settlement, Rule 23(c)(2)(B) enumerates specific requirements.

The Agreement provides that if this Court preliminarily approves the Settlement, Proposed Class Counsel will obtain from FCS a list of health insurers, patients, and other entities that paid FCS for Oncology Services in Southwest Florida since 2010. Decl. ¶ 13. Proposed Class Counsel has already sought similar information from 21st Century, which has agreed in principle to provide

---

[2] Notice will be given to the extent reasonably practicable, recognizing that it may not be practicable to be continuously mailing out notices up to the exact date of final approval.

it. *Id*. The Agreement provides that, within 18 calendar days of receiving responsive payor information from FCS and/or 21st Century, Proposed Class Counsel will mail notices to Settlement Class Members, and will post notice in a suitable publication(s) in Southwest Florida and on a web site under counsel's supervision, in order to ensure the maximum reasonable notice to members of the Settlement Class. Agreement ¶ 16. The proposed form of notice is attached hereto as Exhibit C.

The Agreement also permits Proposed Class Counsel to spend "up to $75,000 (or more upon agreement of the Parties or Court order)" administering notice to the Settlement Class. *See id.* ¶¶ 16, 26, 30.

III.    **ARGUMENT**

A.    **The Legal Standard for Preliminary Approval**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g*., *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) (citing cases).

9

Effective December 2018, Rule 23(e) has been amended to codify the factors that affect whether a court should approve a class action settlement, including for a class that has not yet been certified.[3] Specifically, in the context of preliminary approval, the amendments direct interim class counsel to provide the court with information sufficient to enable the court to determine that the settlement is fair, reasonable and adequate; that certification for purposes of settlement is warranted; and that notice is justified because the court will likely grant final approval to the settlement.[4] Rather than displacing existing judicial approaches to class settlement approval, these amendments largely mirror current practice under applicable law. All such factors weigh in favor of preliminary approval here.

Before authorizing Proposed Class Counsel to disseminate notice of the Settlement Agreement to the Settlement Class, Plaintiff and Proposed Class Counsel must demonstrate "that the Court will likely be able to (i) approve the [Settlement Agreement] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the [Settlement Agreement]." Fed. R. Civ. P. 23(e)(1)(B). Under Rule 23(e)(2), a Court may only approve a settlement based on a finding that the proposed settlement is "fair, reasonable and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:

---

[3] *See, e.g.*, Advisory Committee Notes at 28 ("The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate. Courts have generated lists of factors to shed light on this concern . . . . The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."); *see also Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *13-14 (N.D. Cal. Dec. 17, 2018) (quoting the Advisory Committee Notes to the 2018 amendments and stating that "the Court applies the framework set forth in Rule 23, while continuing to draw guidance from the [jurisdiction's] factors and relevant precedent").

[4] *See* John M. Barkett, "The 2018 Amendments to the Federal Class Action Rule," available at https://www.americanbar.org/content/dam/aba/administrative/litigation/materials/2017-2018/2018-sac/written-materials/miami-class-actions-amendments-to-the-federal-class.pdf.

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

Similarly, Eleventh Circuit courts traditionally consider factors such as the class's likelihood of success at trial; the range of possible recovery at which a settlement is fair, adequate, and reasonable; the anticipated complexity, expense, and duration of the litigation; and the stage of proceedings at which the settlement was achieved. *Bastian v. United Servs. Auto Ass'n*, No. 3:13-cv-1454, 2017 U.S. Dist. LEXIS 180757, at *17 (M.D. Fla. Nov. 1, 2017) (citing *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011), and *Bennett*, 737 F.2d at 986).

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness." 4 NEWBERG ON CLASS ACTIONS § 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 U.S. Dist. LEXIS 67832, at *7 (S.D. Fla. June 15, 2010). Settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See* MANUAL FOR COMPLEX LITIGATION § 30.42 (3d ed. 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

11

Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *See id.* § 13.14.

### B.      **This Settlement Satisfies the Criteria for Preliminary Approval**

Each of the relevant factors weighs heavily in favor of Preliminary Approval of this Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed, and arm's-length negotiations by competent counsel. Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is appropriate.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. As stated above, Plaintiff and Proposed Class Counsel believe that the claims asserted are meritorious, but FCS denies any liability and has shown a willingness to litigate vigorously. Plaintiff and Proposed Class Counsel concluded that the benefits of the Settlement outweigh the risks and uncertainties attendant to continued litigation that include, but are not limited to, the risks, time and expenses associated with completing discovery, trial, and final appellate review. *See* discussion at 4-5, *supra*.

### 1.      *This Settlement Is the Product of Good-Faith, Informed, and Arm's-Length Negotiations*

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton*, 559 F.2d at 1330; *see also Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel"). The

policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF8, 2006 U.S. Dist. LEXIS 65144, at *5 (M.D. Fla. Sept. 13, 2006) ("Settlement 'has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice.') (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also* 4 NEWBERG ON CLASS ACTIONS § 11.41.

"Absent specific proof to the contrary, the adequacy of class counsel is presumed." *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1309 (S.D. Fla. 2015) (quoting *In re Seitel, Inc. Sec. Litig.*, 245 F.R.D. 263 (S.D. Tex. 2007)). The Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. *See* Decl. ¶¶ 3-12.

Furthermore, Proposed Class Counsel are experienced in the litigation, certification, trial, and settlement of complex class actions, particularly antitrust cases. Decl. ¶ 3. Robins Kaplan has recovered enormous settlements and verdicts on behalf of its clients in many of the nation's most notable antitrust actions. Decl. ¶¶ 3-5. For example, the firm served as co-lead counsel on behalf of a class of antitrust plaintiffs in the decade-long *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 1:06-md-01775 (E.D.N.Y.), where the plaintiffs' cumulative recoveries surpassed $1.2 billion, and in the equally gargantuan *In re Auto. Parts Antitrust Litig.*, No. 2:13-cv-00803 (E.D. Mich.), where partial settlements to date have now surpassed $1 billion. Decl. ¶ 3. Robins Kaplan is also co-lead counsel on behalf of a class of over 10 million merchants in *In re Payment Card*

*Interchange Fee & Merch. Discount Litig. ("Interchange")*, No. 1:05-md-1720 (E.D.N.Y.), in which the district court recently gave preliminary approval to a record $6.25 billion settlement. *See Interchange*, 2019 U.S. Dist. LEXIS 13481 (E.D.N.Y. Jan. 28, 2019)). In addition, the firm is co-lead counsel in an antitrust class action pending in this District, in which both a settlement class and litigating class have been certified. *See* Order, *In re Disposable Contact Lens Antitrust Litig.*, ECF No. 841 (certifying settlement class); *In re Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-2626-J-20JRK, 2018 U.S. Dist. LEXIS 212329 (M.D. Fla. Dec. 4, 2018) (certifying litigation class). Decl. ¶ 4.

Where Proposed Class Counsel has "considerable experience in this type of litigation," courts give "great weight" to its recommendation. *Wilson v. EverBank*, 2016 U.S. Dist. LEXIS 15751, at *42 (M.D. Fla. Feb. 3, 2016) (quoting *Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988)). *See also Disposable Contact Lens*, 2018 U.S. Dist. LEXIS 212329, at *308-09 ("[T]he Court independently determines that Plaintiffs' counsel are skilled and adequate in all respects."). In the hard-fought, arm's-length negotiations that led to this Settlement, Proposed Class Counsel benefited from years of antitrust class action experience and a familiarity with the facts of the Action. Counsel conducted a thorough pre-suit investigation and analysis of Plaintiff's claims, engaged in extensive information exchanges with FCS pursuant to Federal Rule of Evidence 408 and its state-law equivalents, and worked with its own economic consultants in order to develop a thorough and objective understanding of FCS's potential damage exposure in the Action. *See* Decl. ¶¶ 6-9.

14

**2.      *The Facts Support a Preliminary Determination That the Settlement Is Fair, Adequate and Reasonable***

As noted, this Court may conduct a preliminary review of the Rule 23(e) factors to determine whether the Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy, and reasonableness of the Settlement are warranted.

**(a)      Likelihood of success at trial**

Plaintiff and Proposed Class Counsel are confident in the strength of their case, but also pragmatic in their awareness of the defenses available to FCS and the risks inherent in litigation. As noted above, FCS's motion to dismiss is still pending before this Court. FCS raised a number of potential grounds for dismissal, including statute-of-limitations arguments and arguments about the sufficiency and plausibility of Plaintiff's allegations as to the relevant market and the existence of an anticompetitive agreement between FCS and 21st Century. *See* ECF Nos. 47, 72. Moreover, as discussed, *see* 4-5, *supra*, assuming that the lawsuit survives FCS's dismissal motion, Plaintiff will have to overcome obstacles at class certification and likely at summary judgment in order to get to trial. In addition, although Plaintiff is confident that it will have a strong case for FCS to answer at trial, it also recognizes that the outcome of a jury trial is inherently uncertain. Under the circumstances, Proposed Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. Decl. ¶ 16.

Assuming that a Plaintiff class prevailed at trial, any recovery could be delayed for years by an appeal. *See Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). This Settlement provides substantial relief to Settlement Class Members, without needless delays.

**(b)     Range of possible recovery and the point on or below the range of recovery at which a settlement is fair**

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

"Although not articulated as a separate factor in Rule 23(e), '[t]he relief that the settlement is expected to provide to class members is a central concern.'" *Hefler*, 2018 U.S. Dist. LEXIS 213045, at *24 (quoting Fed. R. Civ. P. 23(e)(2)(C)-(D) Advisory Committee Note to 2018 Amendment). Eleventh Circuit courts are "guided by the important maxim that the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1350 (S.D. Fla. 2011) (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988)). "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323. The overriding consideration is whether the settlement at issue "provides substantial value to the Settlement Class, and is [] within the range of reasonableness." *Torres*, 830 F. Supp. 2d at 1350.

The $7,187,500 cash settlement will provide an excellent recovery for the proposed class, given the complexity of the litigation and the risks inherent in antitrust class action litigation. As noted, the cash payment represents approximately 43.8 percent to 56.7 percent of Plaintiff's estimate of the Settlement Class's damages attributable to FCS. Decl. ¶ 10.

**(c)     Complexity, expense, and duration of litigation**

For the reasons outlined above, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner. In

16

addition to the short-term uncertainties posed by Defendants' motion to dismiss, litigated class certification briefing alone would require costly and complex economic analysis by competing experts following voluminous discovery. These considerations militate heavily in favor of the Settlement. *See Behrens*, 118 F.R.D. at 542 (noting likely "battle of experts" at trial regarding damages, which would pose "great difficulty" for plaintiffs); *Ressler v. Jacobson*, 822 F. Supp. 1551, 1553-54 (M.D. Fla. 1992) (noting that battle of the experts in securities fraud class action militated in favor of approving class settlement).

### (d)      Stage of the proceedings

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.

Although discovery was stayed pursuant to the CMO, the parties were permitted to and did "exchange information relating to damages during the temporary stay, to be used solely for settlement purposes." (Joint Case Management Report at 2.) The parties exchanged considerable quantities of data between August 2018 and January 2019, and each of them retained economic consultants to produce preliminary damage estimates. Decl. ¶¶ 8-9. As a result of these information exchanges, economic analyses, and its own extensive experience litigating and settling complex antitrust cases, Proposed Class Counsel was exceptionally well positioned to evaluate Plaintiff's claims and prospects for litigation success. *See* Decl. ¶¶ 3-9, 16. Moreover, by settling at this stage of the litigation, the proposed class will be spared the burdens and expense of discovery, contested class certification motions, summary judgment and perhaps *Daubert* motions, and trial.

### C.      Certification of the Settlement Class Is Appropriate

For settlement purposes, Plaintiff and Proposed Class Counsel respectfully request that the Court certify the Settlement Class defined in paragraph 8 of the Agreement. "Confronted with a

17

request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-T-23MAP, 2009 WL 4015573 at *2 (M.D. Fla. Nov. 9, 2009) ("A class may be certified 'solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue.'") (quoting *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006)).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1.   *Numerosity*

The numerosity requirement of Rule 23(a)(1) is easily satisfied here. FCS's transactional data shows that FCS received payment for Oncology Services provided to 15,931 patients in Southwest Florida between March 2010 and March 2018. Decl. ¶ 14. (The Settlement Class is defined as the period from January 1, 2010 until the date of final approval of the Settlement, *see* Agreement ¶ 8.) Although Plaintiff has not yet received comparable data from 21st Century, it is believed that 21st Century received payment for Oncology Services rendered to thousands of patients in Southwest Florida during the same period. Decl. ¶ 15. The precise number of potential class members is not yet known: in many instances, a patient's health insurance plan paid for

18

Oncology Services in full; it other instances, the insurer paid part and the patient paid part; and in a few situations, the patient himself or herself paid in full. But in any event, the total number of "persons or entities that paid for all or a portion of the cost of Oncology Services in Southwest Florida to 21st Century or FCS" during the class period (Agreement ¶ 8) is in the thousands, more than enough to satisfy the numerosity requirement. *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members); *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 695 (M.D. Fla. 2005) ("The Eleventh Circuit has stated that, generally, more than forty (40) putative class members is sufficient to make joinder of all members impracticable.") (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

### 2.    *Commonality*

"[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks omitted). Here, the commonality requirement is readily satisfied because there are critical questions of law and fact common to the Settlement Class that center on Defendants' alleged anticompetitive conduct. *See* Am. Compl. ¶ 73, Fed. R. Civ. P. 23(a)(2). "[T]he claims of the proposed putative class members all arise out of the same alleged illegal conduct by Defendants, based upon related antitrust theories of conspiracy in restraint of trade." *Disposable Contact Lens*, 2018 U.S. Dist. LEXIS 212329, at *321-22. The key to commonality is that the issues be susceptible to class-wide proof, with the claims of the individual class members having a sufficient nexus to those of the named plaintiffs. *See Castillo v. N & R Servs. of Cent. Fla., Inc.*, No. 8:07-cv-1804-T-26EAJ, 2008 U.S. Dist. LEXIS 36882, at *8 (M.D. Fla. May 1, 2008). The existence of commonality among class members is particularly obvious here, since all Settlement Class Members (per the Agreement's class

19

definition) paid for Oncology Services in Southwest Florida, and so the central issue of whether Defendants conspired to affect prices in that particular market is by definition susceptible to class-wide proof.

### 3. *Typicality*

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Federal Rule of Civil Procedure 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"); *Spinelli v. Cap. One Bank*, 2009 U.S. Dist. LEXIS 20214, at *5-6 (M.D. Fla. Mar. 14, 2009) (typicality satisfied when class representative's claims have sufficient nexus with those of the class at large, and where the representative possesses the same interest and suffers the same injury as the class members). Plaintiff is typical of absent Settlement Class Members because it was subjected to the same alleged anticompetitive practices by the same conspiracy, it claims to have suffered from the same alleged injuries, it paid for Oncology Services in Southwest Florida, and it will equally benefit from the relief provided by the Settlement.

### 4. *Adequacy of Representation*

Plaintiff also satisfies the adequacy-of-representation requirement. Adequacy under Federal Rule of Civil Procedure 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the class,[5] and (2) whether the proposed class counsel has the

---

[5] "The adequacy of representation requirement encompasses two separate inquires: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the

20

competence to undertake this litigation.[6] *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 579 (M.D. Fla. 2006). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Ga.-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Here, Plaintiff paid FCS and 21st Century for Oncology Services provided to covered members of Plaintiff's employee group health plan, through a third-party administrator, Insurance Administrator of America, Inc. ("IAA"). IAA assigned to Plaintiff its rights, title and interest in any claims arising out of those payments. Thus, Plaintiff's interests are coextensive with, not antagonistic to, the interests of the members of the Settlement Class, because Plaintiff and absent Settlement Class Members each have an interest in the relief offered by the Settlement, and absent Settlement Class Members have no diverging interests. Further, Plaintiff is represented by qualified and competent counsel with extensive experience and expertise prosecuting complex antitrust class actions. *See* discussion at 13-14, *supra*; Decl. ¶¶ 3-6.

## 5.   *Predominance*

The predominance requirement of Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiff satisfies the predominance requirement because liability questions common to all Settlement Class Members

---

representatives will adequately prosecute the action." *Spinelli v. Cap. One Bank*, 265 F.R.D. 598, 601 (M.D. Fla. 2009) (quoting *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008)).

[6] "The adequacy requirement of Rule 23(a) involves questions of . . . whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation." *Spinelli*, 265 F.R.D. at 602 (quoting *Pop's Pancakes, Inc. v. NuCo2*, 251 F.R.D. 677, 683 (S.D. Fla. 2008)).

substantially outweigh any possible issues that are individual to each Settlement Class Member. In antitrust conspiracy cases such as this one, courts consistently find that common issues of the existence and scope of the conspiracy predominate over individual issues. *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 408 (S.D. Ohio 2007); *see also In re Commercial Tissue Prods.*, 183 F.R.D. 589, 595 (N.D. Fla. 1998) ("A price-fixing antitrust conspiracy model is generally regarded as well suited for class treatment.") (citation omitted).

This follows from the central nature of a conspiracy in such cases. *Hughes v. Baird & Warner, Inc.*, No. 76 C 3929, 1980 U.S. Dist. LEXIS 13885, at *7 (N.D. Ill. Aug. 20, 1980) ("Clearly, the existence of a conspiracy is the common issue in this case. That issue predominates over issues affecting only individual sellers."); *see also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

### 6. *Superiority*

Furthermore, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *Spinelli*, 265 F.R.D. at 602 (noting superiority met where plaintiff shows the benefit of a class action instead of clogging the federal courts with innumerable individual suits litigating the same issues repeatedly, and citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir. 2004)). As in *Spinelli*, the Court should conclude "a reasonable cost/benefit analysis would not justify" individual actions for each member of the Settlement Class. 265 F.R.D. at 604 (citations omitted).

### D.   **After Proposed Class Counsel Provides Notice, the Court Should Schedule a Final Approval Hearing**

Proposed Class Counsel will request that the Court schedule a Final Approval Hearing approximately 90 days following Preliminary Approval. Plaintiff and Proposed Class Counsel will

file their motion for Final Approval and Fee Application and request for a Service Award no later than 30 days prior to the Final Approval Hearing.

## IV.   <u>CONCLUSION</u>

Based on the foregoing, Plaintiff and Proposed Class Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint the Named Plaintiff as Class Representative; (4) appoint as Class Counsel and Settlement Class Counsel Robins Kaplan LLP; (5) stay the Action against Defendants pending Final Approval of the Settlement; (6) approve the form for disseminating notice to the proposed Settlement Class members attached hereto; and (7) enter the [Proposed] Order Preliminarily Approving Class Settlement and Certifying Settlement Class.

### <u>Local Rule 3.01(g) Certification</u>

Undersigned counsel certifies that he has conferred with Defendants' counsel Michael Matthews of Foley & Lardner LLP, who informed undersigned counsel that, without adopting any statements made herein, Defendants do not oppose this motion.

Dated: February 22, 2019

Respectfully submitted,

/s/ Eamon O'Kelly_____
Hollis Salzman
Kellie Lerner
Eamon O'Kelly
Nathaniel Ament-Stone
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
(212) 980-7400

23

Lawrence A. Farese
ROBINS KAPLAN LLP
711 Fifth Avenue South, Suite 201
Naples, FL 34102
(239) 430-7070

*Proposed Class Counsel*