UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

COUNTY OF MONMOUTH,
NEW JERSEY

    Plaintiff,

v.                                        CASE NO. 2:18-cv-201-FtM-23MRM

FLORIDA CANCER SPECIALISTS,
P.L., et al.,

    Defendants.
_____/

## **ORDER**

The County of Monmouth, New Jersey, on behalf of a proposed class, sues (Doc. 27) Florida Cancer Specialists and William N. Harwin, FCS's president, under Sections One and Two of the Sherman Act, 15 U.S.C. §§ 1–2. The parties agree to a settlement. In accord with Rule 23, Federal Rules of Civil Procedure, the County moves (1) for preliminary approval of the settlement, (2) for certification of the class for the purpose of settlement, (3) for appointment as class representative, (4) for appointment of Eamon O'Kelly of Robins Kaplan LLP as class counsel,[1] and (5) for approval of a notice to the settlement class members. (Doc. 80)

---

[1] The motion requests appointment of Robins Kaplan, LLP as class counsel. (Doc. 80 at 8) But only a lawyer, not a law firm, appears in court for a client. *Sandyland Produce, LLC v. Tar Heel Farms, Inc.*, 2007 WL 1080005, *1 n.1 (M.D. Fla. Apr. 9, 2007) (Glazebrook, M.J.) ("The Local Rules contemplate that attorneys, not law firms[,] appear as counsel for parties."); *Infohand Company, Ltd. v. Sprint Spectrum, L.P.*, 2005 WL 1862408, *1 (D. Kan. Aug. 3, 2005) (Waxse, M.J.) ("[L]aw firms do not . . . appear[] on behalf of parties. Only individual attorneys may enter . . . their appearance."). Because Eamon O'Kelly signs the motion (Doc. 80 at 30) and submits a declaration (Doc. 80-2), the motion is construed as requesting appointment of Eamon O'Kelly as class counsel.

**BACKGROUND**

The County alleges that FCS and 21st Century Oncology, a competitor, agreed not to compete in "Southwest Florida" and to refer patients to each other exclusively. Allegedly, FCS agreed to offer in Southwest Florida only "medical oncology services" and to refer Southwest Florida patients to 21st Century for "radiation oncology," and 21st Century agreed to offer in Southwest Florida only "radiation oncology services" and to refer Southwest Florida patients to FCS for "medical oncology."[2] (Doc. 27 at ¶ 33) FCS moved to dismiss the amended complaint. (Doc. 47)

After three mediation conferences, the parties agree to a settlement. (Doc. 80-1) FCS denies wrongdoing but "decide[s] to [settle] in order to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation and to obtain releases . . . ." (Doc. 80-1 at 2–3) FCS will pay the class no more than $7,187,500. (Doc. 80-1 at ¶¶ 26–27) In return, class members who fail to opt out of the settlement will release FCS (and Harwin) from claims "relating to the subject matter" of this action, including claims under the Sherman Act, the Florida Antitrust Act, the Florida Deceptive and Unfair Trade Practices Act, the federal and Florida False Claims Acts, and "any waivable laws governing whistle-blowing or

---

[2] The amended complaint defines Southwest Florida as Manatee, Sarasota, Charlotte, Lee, and Collier Counties. (Doc. 27 at ¶ 12) The amended complaint defines "medical oncology" as "the diagnosis and treatment of cancer with medicine, including chemotherapy, hormonal therapy, biological therapy, and targeted therapy." (Doc. 27 at ¶ 3) The amended complaint defines "radiation oncology" as "the treatment of cancer with therapeutic radiation." (Doc. 27 at ¶ 3) According to the County, both medical oncology services and radiation oncology services are sub-markets of the oncology services market. (Doc. 27 at ¶ 3)

retaliation, or any other state or federal, equitable, contract[,] or tort law . . . ."
(Doc. 80 at 13; Doc. 80-1 at ¶ 20) The release excludes "individual claims arising in the ordinary course of business for any alleged medical malpractice or breach of contract related to FCS's Oncology Services." (Doc. 80-1 at ¶ 20)

The settlement agreement defines the class as:

> [A]ll persons or entities that paid for all or a portion of the cost of Oncology Services in Southwest Florida to 21st Century or FCS, or any current or former subsidiary or affiliate of 21st Century or FCS, during the period from and including January 1, 2010 until the date of final approval of this Agreement. Excluded from the Settlement Class are Defendants, the officers, directors, and employees of any Defendant, the parent companies, subsidiaries and affiliates of any Defendant, the legal representatives and heirs or assigns of any Defendant, any federal government entities and instrumentalities of the federal government, and states and their subdivisions, agencies, and instrumentalities.

(Doc. 80-1 at ¶ 8) FCS agrees to provide the proposed class counsel with a list of the insurers, patients, and entities that since 2010 have paid FCS for oncology services in Southwest Florida, and 21st Century "has agreed in principle" to provide the proposed class counsel with a list of the insurers, patients, and entities that since 2010 have paid 21st Century for oncology services in Southwest Florida. (Doc. 80-2 at ¶ 13) The proposed class counsel will mail a notice (Doc. 80-3) to each prospective class member, "publish[] [the notice] once in a suitable publication published in Southwest Florida," and post the notice on a website. (Doc. 80-1 at ¶ 16)

On an unspecified date, the proposed class representative will move for a service award and the proposed class counsel will move for an attorney's fee.

- 3 -

The parties agree to deduct both awards from the $7,187,500 settlement fund, and FCS agrees to "take no position" on either motion. (Doc. 80-1 at ¶ 37)

## DISCUSSION

Under Rule 23(e)(2), a settlement warrants preliminary approval if the settlement is "fair, reasonable, and adequate." In 2018, the Supreme Court approved an amendment to Rule 23 that enumerates the considerations to guide an evaluation of a class action settlement's fairness:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account; (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including time of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

However, the amendment does not displace considerations announced by the Eleventh Circuit. Fed. R. Civ. P 23(e)(2) advisory committee's note to 2018 amendment; *see also Grant v. Ocwen Loan Servicing, LLC*, No. 3:15-cv-1376-J-34-PDB, 2019 WL 367648, at *4–5 (M.D. Fla. Jan. 30, 2019) (Howard, J.) (reviewing both Rule 23(e)(2) and considerations under *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984)). The Eleventh Circuit allows a settlement under Rule 23(c) if:

> there was no fraud or collusion in arrive at the settlement and . . . the settlement was fair, adequate, and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possibility recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of

> opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.

The parties' settlement resulted from three mediation conferences with a court-appointed mediator. The case is complex, and both parties, represented by experienced counsel with a formidable knowledge of the facts and the law, express strong belief in the merits of their respective positions. The agreed $7,187,500 payment, which falls within a mid-range between the recovery estimates by the parties' consultants after the parties exchanged data, "adequate[ly]" accounts for, among other considerations, the costs, risks, and delay of continued litigation. (Doc. 80 at 11, 23)

Additionally, Rule 23(c)(2)(B) requires the "best notice that is practicable under the circumstances":

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The notice adequately describes the action, defines the class, explains the claims, states that a class member may appear through an attorney, and explains both the nature of exclusion from the class and the binding effect of a judgment if a class member fails to opt out of the settlement.

Although the settlement agreement and motion for preliminary approval appear reasonable and tailored to Rule 23, "obvious deficiencies" in both the settlement agreement and in the notice plan caution against granting preliminary approval. *O'Connor v. Washington PJ, Inc.*, No. 2:16-cv-608-FtM-99MRM, 2017 WL 6762436, at *3 (M.D. Fla. Dec. 13, 2017) (McCoy, M.J.) (collecting cases and stating that preliminary approval is an "initial evaluation" that a court should grant unless "a proposed settlement is obviously deficient").

### The Settlement Agreement Releases Claims Lacking an "Identical Factual Predicate"

A class can release a settling defendant from an unpleaded claim, but the unpleaded and released claim "must be 'based on the identical factual predicate as that underlying the claims in the settled action.'" *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 247–48 (2d Cir. 2011); *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 325 n.82 (3d Cir. 1998) ("the weight of authority holds that a federal court may release claims which are not in the complaint provided that they are based on the 'same factual predicate'"). An overly broad release of liability is a substantive defect that can warrant denying preliminary approval of a class action settlement. 4 *Newberg on Class Actions* § 13.15 (5th ed. 2014).

Under the settlement agreement, a class member who fails to opt-out of the settlement will release "any . . . federal or False Claims Act" claim against FCS. (Doc. 80-3 at ¶ 20) However, the County's complaint includes no allegation of a violation of the False Claims Act, which bears at most a tangential relation to this

action.  In 2017, two whistle-blowers, who are not parties in this action, voluntarily dismissed without prejudice two False Claims Act claims against FCS after the United States declined to intervene.³  That complaint alleged that FCS had violated the False Claims Act by seeking reimbursement from Medicare and Medicaid for two medical treatments notwithstanding that FCS unlawfully performed one treatment and unnecessarily administered the other.  By contrast, the County in this action alleges that an agreement between FCS and a competitor to divide a product market allowed both firms to charge their patients supracompetitive prices.   Far from an "identical factual predicate," the False Claims Act action and this antitrust action share only a common defendant.⁴  Also, the County's action, unlike the False Claims Act action, includes no allegation of employment retaliation, which are also released under the settlement agreement.  The settlement agreement's expansive release might render the settlement agreement unfair and unreasonable.

### The Settlement Agreement and the Notice Provide Insufficient Information about the Claims Process

The notice directs class members to file a claim in order to obtain a recovery from the settlement fund.  (Doc. 80-3 at 5–6)  But the parties fail to submit a draft

---

³ *United States ex rel. Dill*, 2:16-cv-87 (M.D. Fla. 2017) (Merryday, J.).

⁴ The False Claims Act action included a count for violation of the federal anti-kickback statute, 42 U.S.C. § 1320A-7B(b). The anti-kickback count "incorporates by reference" an allegation that FCS had a "gentleman's agreement" with 21st Century. 2:16-cv-87 (Doc. 12 at ¶¶ 121, 176) That "gentleman's agreement" underlies the County's antitrust action. (Doc. 27 at ¶ 32) But the counts for violating the False Claims Act in the False Claims Act action expressly decline to incorporate the "gentleman's agreement" allegation, which unquestionably lacks relevance to the False Claims Act claims. 2:16-cv-87 (Doc. 12 at ¶ ¶ 160, 168)

claim form. 4 *Newberg on Class Actions* § 12.21 (explaining that a settlement agreement "normally" describes the claiming process and the claim form, which receive court approval as part of the notice to the class). "There is nothing inherently suspect about requiring class members to submit claims forms in order to receive payment." *Saccocio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 696 (S.D. Fla. 2014) (Moreno, J.). But a claiming requirement effectively creates an "opt in" settlement, which not only excludes from recovery a class member who fails to act but also binds that class member to the judgment. Further, a claiming requirement is often unnecessary if — as with FCS — a defendant possesses the records necessary to provide a satisfactory, inexpensive, and accurate distribution of the settlement fund. *De Leon v. Bank of America, N.A. (USA)*, No. 6:09-cv-1251-Orl-28 KRS, 2012 WL 2568142, at \*19 (M.D. Fla. Apr. 20, 2012) (Spaulding, M.J.) ("When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms"); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1351 (S.D. Fla. 2011) (King, J.) (approving a settlement that paid over 13 million settlement class members without a class member "fill[ing] out any claim form or . . . tak[ing] any action whatsoever"); 4 *Newberg on Class Actions* § 12.18 (explaining that avoiding a claiming process is "optimal where possible" and that requiring a class member to file a claim if claiming is unnecessary might be "a red flag . . . of a bad settlement"). Also, class members respond to claims at notoriously low rates. *De Leon*, 2012 WL 2568142,

at *14; *Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005) (Singal, J.); 4 *Newberg on Class Actions* § 12.17. Accordingly, a burdensome claims process can result in denial of preliminary approval. *De Leon*, 2012 WL 256142, at *19, report and recommendation adopted, 2012 WL 2543586 (M.D. Fla. July 2, 2012) (Antoon, J.); 4 *Newberg on Class Actions* § 13.15 ("courts have rejected preliminary approval when the proposed settlement contains substantive defects such as . . . unjustifiably burdensome claims procedures"); *Manual for Complex Litigation* § 21.66 (Fed. Judicial Cntr. 2004) (directing a court to consider "the fairness and reasonableness of the procedure for processing individual claims under the settlement" and warning against a settlement that "impose[s] such strict eligibility conditions or cumbersome claims procedures that many members will be unlikely to claim benefits"). The parties fail to explain the need for claim filing and fail to offer assurance that the claiming process will not unduly burden class members.

Additionally, the settlement agreement states that "The Settlement Fund shall be . . . distribute[d] to authorized claimants." (Doc. 80-3 at ¶ 35(e)) But the settlement agreement fails to explain how the parties will identify an "authorized" claim, and neither the notice nor the settlement agreement states a deadline to file a claim. Often, parties settling a class action hire a settlement administrator to oversee the claiming process. *Whitehead v. Advance Stores Co.*, No. 5:16-cv-250-Orl-37PRL, 2017 WL 2404922, at *2–3 (M.D. Fla. Jan. 9, 2017) (Dalton, J.) (appointing and confirming the responsibilities of a settlement administrator); 4 *Newberg on Class*

*Actions* §§ 12.20, 12.23; *Manual for Complex Litigation* § 21.661 ("The settlement administrator . . . may be charged with reviewing the claims and deciding whether to allow claims that are late, deficient in documentation, or questionable for other reasons"). Although the notice appears to contemplate a settlement administrator (Doc. 80-3 at 5), neither the notice nor the settlement agreement name a settlement administrator, state the settlement administrator's duties, or explain how the parties will pay a settlement administrator.

Finally, a notice to class members should include enough information to allow a class member to estimate the likely individual recovery after deducting for expenses and the attorney's fee. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 429–30 (S.D. Tex. 1999) (Jack, J.) (recognizing that a class member's recovery might ultimately depend on the number of valid claims filed but approving the notice because "the class member is notified of the formula for allocation"); *Manual for Complex Litigation* § 21.312 ("The notice should . . . explain the procedures for allocating and distributing settlement funds . . . [and] provide information that will enable class members to calculate or at least estimate their individual recoveries, including estimates of the size of the class"). The settlement agreement states only that "[t]he distribution of the Settlement Fund shall be administered pursuant to a plan of allocation prepared by Plaintiffs' Counsel and subject to the approval of the Court." (Doc. 80-1 at ¶ 34) No plan of allocation appears. A class member's decision to file a claim, opt out of

the settlement, or take no action might reasonably depend on whether the class member will recover *pro rata*, recover based on the extent to which that particular class member overpaid for oncology services, or perhaps recover by some other allocation or formula. 4 *Newberg on Class Actions* § 12.15. But the notice lacks sufficient information to permit a class member to estimate the class member's recovery.

### The "Clear Sailing Provision" Might Warrant Scrutiny

A "clear sailing provision" prohibits a defendant from opposing a class counsel's petition for an attorney's fee. "These agreements are troubling because they demonstrate that class counsel negotiated some aspect of their fee agreement with the defendant when counsel's ethical obligation is to the class, not to its own fees." 4 *Newberg on Class Actions* § 13.9. Although a "clear sailing provision" does not necessitate a finding of unfairness, a "clear sailing provision" might suggest that the settlement agreement demands closer scrutiny to ensure that the settlement is not the product of collusion, *Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV-GOODMAN, 2016 WL 1529902, at *18 (S.D. Fla. Apr. 13, 2016) (Goodman, M.J.). A "clear sailing provision" is particularly disfavored if coupled with a reversion, which returns residue in the settlement fund to the defendant. *Sylvester*, 369 F. Supp. 2d at 45–46.

The parties' settlement agreement includes a "clear sailing provision." (Doc. 80-1 at ¶ 37) The notice states that "no money will be returned to the Settling

Defendants" and expresses a "possib[ility] that any money remaining after claims are paid will be distributed to charities, governmental entities, or other beneficiaries approved by the Court." (Doc. 80-3 at 5) Additionally, a court-appointed mediator assisted in the settlement, which offers some assurance against a possibility of collusion among counsel. Nevertheless, neither the settlement agreement nor the motion confirm that result. To dispel any inference of collusion between counsel, the parties should confirm whether the settlement agreement prohibits a reversion.

### The Parties Fail to Explain Adequately the Publication Notice

In addition to mailing notice to individual class members, the parties intend to "publish[] [the notice] once in a suitable publication published in Southwest Florida." (Doc. 80-1 at ¶ 16) But no copy of the notice that the parties will publish in a newspaper appears.

Also, the parties offer a needlessly vague plan to publish notice "once in a suitable publication in Southwest Florida." The settlement class is dispersed over at least six thousand square miles. Although the five counties constituting "Southwest Florida" are contiguous, publication in Lee County's *The News-Press* is unlikely to reach a class member in Sarasota County, and publication in Collier County's *Naples Daily News* is unlikely reach a class member in Manatee County. Alternatively, "a suitable publication published in Southwest Florida" might mean a national newspaper, which might be unconducive to notifying this particular class. *Lord v. First Am. Title Ins. Co.*, 281 F.R.D. 58, 61 (D. Me. 2012) (Singal, J.) (approving

publication in specified local newspapers and rejecting publication in a national newspaper); *Dillard v. City of Foley*, 926 F. Supp. 1053, 1059 (M.D. Ala. 1995) (Thompson, J.) (approving publication of a notice "in one local paper weekly for four weeks and in another local paper weekly for three weeks").

**CONCLUSION**

"Courts are not permitted to modify settlement terms or in any manner to rewrite the agreement reached by the parties." *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1160 (11th Cir. 1985). Accordingly, a ruling on the County's motion (Doc. 80) is **DEFERRED**.[5] No later than **APRIL 26, 2019**, the County either must show cause[6] why the motion should not be denied in light of the deficiencies identified in this order or must withdraw the preliminary approval motion and file a revised settlement agreement and preliminary approval motion.

ORDERED in Tampa, Florida, on April 4, 2019.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[5] The deferral includes a ruling on the County's request for class certification for settlement purposes, for appointment as class representative, and for appointment of Eamon O'Kelly as class counsel.

[6] A show cause response to this order may not exceed **ten pages**.