# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### FORT MYERS DIVISION

COUNTY OF MONMOUTH, NEW
JERSEY, on behalf of itself and all others
similarly situated,

              Plaintiff,

vs.

FLORIDA CANCER SPECIALISTS,
P.L.; and DR. WILLIAM N. HARWIN,

              Defendants.

Case No. 2:18-cv-201-SDM-MRM

**PLAINTIFF'S AND PROPOSED CLASS COUNSEL'S
<u>MEMORANDUM IN RESPONSE TO ORDER TO SHOW CAUSE</u>**

Plaintiff County of Monmouth, on behalf of itself and a class of similarly situated entities and individuals, submits this response to the Order to Show Cause entered by the Court on April 4, 2019.[1] Plaintiff respectfully requests that the Court enter the revised [proposed] preliminary approval order appended hereto as Exhibit 1.

1.    **The Parties Have Modified the Proposed Release to Address the Court's Concerns Regarding Its Scope**

The Court expressed concern that the release in the Settlement Agreement may be overbroad and, in particular, could release federal or Florida False Claims Act and retaliation claims that were predicated on facts not alleged in this Action. (Doc. 82 at 6-7.)

The release was limited by its terms to claims predicated on "any conduct, act or omission alleged in the Action" during the Class Period (Doc. 80-1 ¶ 20), however, and thus was not intended to immunize FCS from claims based on other, different facts (such as fraudulently billing Medicare and Medicaid for unlawfully performed or unnecessary medical procedures, *see* Doc. 82 at 7), because no such conduct is alleged in this action. In other words, any released "claims which are not in the complaint" (including False Claims Act claims and retaliation claims) would be based only "on the same factual predicate" as that underlying the claims in the settled class action. *Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig.)*, 148 F.3d 283, 326 n.82 (3d Cir. 1998); *see also In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011).[2]

---

[1] All defined terms used herein have the same meanings as in the Settlement Agreement, Doc. 80-1, and Unopposed Motion for Preliminary Approval, Doc. 80.

[2] FCS negotiated this provision because the claims in this case are based in part on allegations found in the *Dill* lawsuit, to which the Court refers to its Order. (*See* Doc. 82 at 7 n.3.) In *Dill*, the Relators specifically alleged, in support of a False Claims Act claim, the same conduct that is at the heart of the complaint in this action (including the "gentleman's agreement" among FCS, 21st Century, and their CEOs). *Compare* Doc. 27 ¶¶ 4, 16, 21, 32, 48, *with* Am. Compl. ¶¶ 121-42, *United States ex rel. Dill & Sievert v. Fla. Cancer Specialists, P.L., et al.*, No. 2:16-cv-87 (M.D. Fla.), ECF No. 12. Although the Court stated that the "'gentleman's agreement' allegation [in *Dill*] unquestionably lacks relevance to the

1

The Parties appreciate the Court's noting its concern regarding the scope of the release, as it permitted the Parties to clarify their intent, which will benefit class members. Moreover, mindful of the Court's concerns, the Parties have modified paragraph 20 by deleting the language referring to federal and Florida False Claims Act and retaliation claims, among others. The amendment to the Settlement Agreement incorporating the proposed new version of the release is appended hereto as Exhibit 2.[3]

## 2.    The Proposed Notice and Payment Process

The Court raises several issues with respect to the proposed notice and payment process. Specifically, in the moving papers, Plaintiff did not: (a) explain why a claims process is necessary here; (b) identify the proposed claims administrator and submit the proposed claim form to the Court; (c) provide sufficient details of the claims process itself; and (d) explain how class counsel intends to provide sufficient information to class members to allow them to estimate their individual likely recovery. (*See* Doc. 82 at 7-11.) Plaintiff now addresses these issues in turn.

### A.    A Claims Process Is No Longer Necessary Because FCS and 21st Century Can Provide Data Sufficient to Allow Checks to Be Mailed to All Class Members

The Court points out that where a defendant possesses the records needed to permit an accurate and inexpensive distribution of the Settlement, a claims process should be unnecessary. (*Id.* at 8-9.) The Court directed the Parties to explain why a claims process is required here. (*Id.*)

---

False Claims Act claims" (Doc. 82 at 7 n.4), both the federal and Florida False Claims Act claims incorporate that allegation (*Dill* Am. Compl. ¶¶ 170(c), 182), as does the related kickbacks claim (*id.* ¶ 176). FCS wanted to avoid the risk and expense of having to defend against future claims predicated on that conduct, regardless of whether such claims were well founded.

[3] The definition of the class period has also been amended, so that it now will run until the date of the Court's preliminary approval order. This will facilitate a more orderly notice and opt-out process.

At the time of filing the motion for preliminary approval, the Parties believed that a claims process was unavoidable. Although alleged co-conspirator 21st Century Oncology LLC ("21st Century") had expressed its willingness to produce data from its computer systems, there were serious doubts as to whether it could provide information that was complete enough with respect to all of its payors, and for the entire class period. (Second Decl. of Eamon O'Kelly in Supp. Pl.'s and Proposed Class Counsel's Unopposed Mot. for Preliminary Approval of Class Settlement ("2d O'Kelly Decl.") ¶ 3, Ex. 3.) Likewise, FCS was unsure whether it would be able to produce from its systems complete payment data for all persons and entities that paid it for Oncology Services going back to 2010. (*Id.* ¶ 4.) Because these difficulties would have made a reliable automatic distribution difficult if not impossible here, the Parties concluded that a claims process was the most viable option. (*Id.* ¶ 5.)

In the intervening time, FCS and 21st Century have continued their efforts to produce data that are sufficiently reliable to make an automatic distribution possible. Just over a week ago, both of them stated that they are now confident that they will be able to produce sufficiently complete and accurate payment data for the class period. (*Id.* ¶ 6.) In light of this development, the Parties now intend to use an automatic payment process, with a *pro rata* distribution to class members. This is described in more detail in the revised proposed notice[4] and at 5-7, *infra*. We respectfully submit that this process satisfies the requirements set forth in applicable case law. *See Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1312 (S.D. Fla. 2015) (granting preliminary approval where there was "no requirement that class members complete a claim form, which

---

[4] The proposed form of notice has been modified to reflect the changes discussed in this memorandum. The revised form of notice and the publication notice (discussed in Section D, *infra*) are appended (as Exhibits 1A and 1B) to the revised [proposed] order, Ex. 1. Plaintiff respectfully requests that the Court approve both notices.

usually dramatically reduces the rate of class participation"); *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-cv-103-CAP, 2014 U.S. Dist. LEXIS 200716, at *11 (N.D. Ga. May 19, 2014) (granting final approval to settlement where class members were paid *pro rata* using defendant's electronic data, without any claims process); *Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1340, 1342-45 (S.D. Fla. 2011) (granting final approval to settlement where class members would receive *pro rata* distribution without requirement to file claims "or take any other affirmative step to receive relief").

### B.    The Settlement Administrator and Proposed Notices

Immediately after signing the Settlement Agreement, Plaintiff's counsel sought competitive bids from potential notice providers/claims administrators. However, that process had not been completed before the thirty-day deadline for filing the motion for preliminary approval required under the Settlement Agreement. A claims administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), was retained about a week after the preliminary approval motion was submitted. We have filed today a separate motion seeking the Court's approval of Epiq as notice and settlement administrator.

### C.    Proposed Notice and Payment Process

A summary of the proposed notice and payment process is as follows:

- By no later than 45 days following preliminary approval by the Court, Epiq will mail notice forms to all persons (excluding federal and state government entities) identified by FCS and 21st Century as having paid, in whole or in part, for Oncology Services in Southwest Florida during the class period.
  - As discussed in the Motion (Doc. 80 at 9), and at 9-10, *infra*, Epiq will also publish a notice (i) in two local newspapers in Southwest Florida (which, as set forth in section D below, cover all five Southwest Florida counties), and (ii) on a special-purpose website under the supervision of Plaintiff's counsel.

4

- By no later than 45 days after notice has been mailed, Epiq must receive notification from potential class members as to whether (i) they want to opt out of the class, and (ii) they intend to object to the Settlement.

- By no later than 7 days after the deadline for opting out of the Settlement, Epiq will provide FCS with information sufficient to determine if the Exclusion Amount has been triggered. (*See* Doc. 80-1 ¶ 40.)

  o If the Exclusion Amount has been triggered, FCS must determine within 10 days whether to terminate the Settlement pursuant to ¶¶ 39-40 of the Settlement Agreement.

- Assuming the Settlement is not terminated, by no later than 30 days prior to the date of a Fairness Hearing to be scheduled by the Court, Plaintiff will move for final approval of the Settlement, an award of attorneys' fees and reimbursement of litigation and administration costs, and a class representative incentive award.

  o Plaintiff respectfully suggest that a Fairness Hearing to (a) determine the fairness, reasonableness, and adequacy of the settlement, and whether it should be finally approved by the Court; (b) evaluate Plaintiff's request for attorneys' fees and litigation expenses; (c) evaluate the request for an incentive award for the class representative; and (d) evaluate the plan of allocation for distribution of the Settlement Fund, should be scheduled for a date at least 140 days after entry of the proposed preliminary approval order, which will provide the Parties and class members sufficient time to comply with each of the deadlines set forth herein

- If the Court grants final approval to the Settlement and that decision is not appealed, then after the last date for an appeal from the final approval order Plaintiff will move the Court for an order authorizing it to mail checks to class members representing their shares of the Settlement Fund.

This process is fair, reasonable, and in line with best practices. *See De Leon v. Bank of Am., N.A.*, No. 6:09-cv-1251-Orl-28KRS, 2012 U.S. Dist. LEXIS 91124, at *59-62 (M.D. Fla. Apr. 20, 2012) (discussing *In re Checking Account*, 830 F. Supp. 2d at 1342 n.10); *see also Diakos*, 137 F. Supp. 3d at 1312; *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *11.

### D.   Allocation of the Settlement Fund

The amount of the Settlement Fund after deduction of attorneys' fees, litigation expenses, class representative's incentive award, and notice and administration costs, as approved by the

Court, shall be distributed in cash to the eligible class members. (*See* Doc. 80-1 ¶ 35.)[5] The distribution will be *pro rata*; that is, each class member's share in the Settlement Fund will be proportional to the amount he, she, or it (in the case of an institutional payor) paid to FCS or 21st Century for Oncology Services during the class period. To the extent that some individual class members' claims are for very small amounts, the Parties propose to pay a minimum of $5 to each class member.[6]

The Court stated that "a notice to class members should include enough information to allow a class member to estimate the likely individual recovery after deducting for expenses." (Doc. 82 at 10.) It is not possible at this stage, however, to estimate what any individual class member might expect to be awarded in this action, because that will depend on several factors that are not currently known, including: the total value of all payments to FCS and 21st Century by all class members during the class period;[7] whether some class members exclude themselves from the Settlement; and the amount of attorneys' fees, litigation expenses, class representative's incentive award, and notice and administration costs (all subject to approval by the Court), which will be deducted before the Net Settlement Fund is distributed to the Settlement Class.

The question of whether some potential class members opt out of the Settlement could affect the amount of distributions to remaining class members in at least two ways. The

---

[5] The Court has questioned the meaning of the term "authorized claimants" in the Settlement Agreement. (*See* Doc. 82 at 9 (quoting Doc. 80-1 ¶ 35(e).) This term originally referred to class members who did not opt out of the Settlement and who submitted valid claims to the claims administrator. Because there will not now be a claims process, the phrase simply means class members who did not opt out.

[6] In the very unlikely event that the Net Settlement Fund is insufficient to allow a minimum payment of $5 to each claimant, the amount to be paid to all claimants will be adjusted on a *pro rata* basis.

[7] The class period runs until the date of preliminary approval, and FCS and 21st Century will not produce their payment data until after that. Although, based on information provided to date, Plaintiff has a general understanding of the aggregate amount of payments received by FCS and 21st Century since the beginning of the class period, the definitive amount and the number of potential class members will not be determined until after FCS and 21st Century produce their full data files following preliminary approval.

Settlement Agreement provides that if potential class members whose aggregate payments to FCS and 21st Century exceed a certain threshold amount opt out, the Settlement Fund may be reduced proportionately. (Doc. 80-1 ¶ 28.) On the other hand, if class members whose total payments are less than the threshold opt out, there will no reduction in the amount of the Settlement Fund, but there will be fewer class members to share in that amount. (*See* Notice at 6, Ex. 1A.)

In addition, the revised form of notice describes the procedure for allocating and distributing the Settlement Funds and a statement that attorneys' fees will not exceed 30 percent of the Settlement Fund, litigation expenses will not exceed $100,000, and the class representative incentive award will not exceed $2,500 (all subject to the approval of the Court). Such information typically is sufficient to enable courts to approve settlement classes. *See*, *e.g.*, *McKinley v. Great W. Bank (In re Checking Account Overdraft Litig.)*, No. 1:09-M D-02036-JLK, 2013 U.S. Dist. LEXIS 190559, at *17-20 (S.D. Fla. Aug. 2, 2013) (granting final approval, where notice described manner of allocation and proposed distribution of settlement proceeds); *see also In re Checking Account*, 830 F. Supp. 2d at 1342 n.10 (granting final approval and noting that "settlement notices rarely, if ever, provide" estimated recoveries for individual class members, and that "[i]t would have been false to provide each Settlement Class Member with a particular damage figure when that figure necessarily depended on such unknowns as the number of opt-outs and the outcome of the application for attorneys' fees").

### 3. There Will Be No Reversion, and the Mediator's Declaration Confirms That There Was No Collusion

The Settlement Agreement contains a "clear sailing provision," whereby FCS agrees not to oppose class counsel's petition for an attorney's fee. (Doc. 80-1 ¶ 37.) Such provisions are commonplace in class settlement agreements and generally are the result of arm's-length

bargaining between the parties. *See Cohorst v. BRE Props., Inc.*, No. 10cv2666 JM(BGS), 2012 U.S. Dist. LEXIS 5387, at *10 (S.D. Cal. Jan. 18, 2012) (noting that class settlements "frequently" include clear sailing provisions, which are "neither unconscionable nor unfair"); *Braynen v. Nationstar Mortg., LLC*, No. 14-CV-20726-GOODMAN, 2015 U.S. Dist. LEXIS 151744, at *34 (S.D. Fla. Nov. 9, 2015) ("[A]bsent collusion, a clear-sailing provision should not bar a class settlement's approval, as courts in this Circuit have repeatedly emphasized.") (collecting Eleventh Circuit appellate and district court cases). The Court notes that a clear sailing provision may be problematic if it is coupled with a reversion—something that may suggest that a settlement is the product of collusion. (*See* Doc. 82 at 11.) The Court has asked the Parties for an assurance that the Settlement Agreement prohibits a reversion here.

There is nothing in the Settlement that would permit a reversion, and (except as expressly provided in the Settlement Agreement) no part of the Settlement Fund will be repaid to FCS. (2d O'Kelly Decl. ¶ 7.)[8] Under the Settlement, the amount of the Settlement Fund, less certain defined expenses, may be returned to FCS only in certain, very limited circumstances. (*See* Doc. 80-1 ¶¶ 39-40 (Settlement may be terminated if potential opt-out claims exceed a defined Exclusion Amount); *id.* ¶ 38 (Settlement may be rescinded if there is no Final Judgment approving the Settlement, or the Final Judgment is not affirmed on appeal).) Should any of those events occur, there would no longer be a settlement (and thus no class-wide release of claims), and of course class counsel would receive no fees. Moreover, as both the form of proposed notice submitted with our opening papers and the revised notice appended to the revised

---

[8] The Parties intend that if—after funds have been distributed to the class members and fees and costs paid—there is a residual amount in the Settlement Fund that is too small for another distribution to be economically viable, the Parties will seek the Court's approval to pay that amount to a suitable charity to be identified at that time.

[proposed] order state, "No money will be returned to the Settling Defendants after the Court finally approves the Settlement." (Doc. 80-3 at 5; Ex. 1A at 6.)[9]

Moreover, clear sailing provisions should pass muster "if there have been arms-length negotiations." 4 NEWBERG ON CLASS ACTIONS § 13.9 (5th ed. 2014); *Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV-GOODMAN, 2016 U.S. Dist. LEXIS 50315, at *59-60 (S.D. Fla. Apr. 13, 2016) (approving settlement with a clear sailing provision, where the settlement "is otherwise reasonable" and "[t]here is evidence in the record that there was no collusion among the parties"). Here, the Settlement was the product of a mediation before a court-appointed mediator, Peter J. Grilli, Esq., who has provided a declaration in which he states, among other things:

> I observed that both sides zealously and ethically advocated for resolution in their clients' interest. I saw no indication of collusion between the two sides. While a professional demeanor of civility was always maintained, in the substance of the negotiation ground was yielded reluctantly and always with the effort to obtain reciprocal treatment from the other side.

(Mediator Decl. ¶ 7, Ex. 4.)

### 4. Publication Notice

Rule 23(e) requires that, before a settlement may be finally approved, the settlement class members must be given adequate notice. Fed. R. Civ. P. 23(e). If the Court approves the Settlement here, class members will be notified in the first instance by a mass mailing, based on payor information provided by from FCS and 21st Century. (Doc. 80-1 ¶ 16; *see also* 3-4, *supra*.) The Agreement further provides that "[n]otice of the settlement shall also be published once in a suitable publication published in Southwest Florida and on a web site that is under the supervision of Plaintiffs' Counsel." (Doc. 80-1 ¶ 16.)

---

[9] Theoretically, in the extremely unlikely event that (a) class members representing over 50 percent of the total payments to FCS and 21st Century opted out, but (b) FCS nevertheless did not terminate the Settlement, then part of FCS's first tranche payment to the Settlement Fund would be paid back to it. If this occurred, it would be before the motion for final approval was filed.

The Court has requested that the Parties submit a copy of the proposed notice and identify the publication(s) in which it will be published. A copy of the publication notice is appended to the [proposed] preliminary approval order as Exhibit 1B.

The Parties have identified the *News-Press* (which covers Lee, Collier, and Charlotte Counties), and the *Sarasota Herald-Tribune* (which covers Sarasota, Manatee, and Charlotte Counties) as the most suitable local newspapers, insofar as they cover the five-county Southwest Florida geographic area between them. The *Herald-Tribune* reports that it "reaches nearly 300,000 adults in the Sarasota/Bradenton/Venice market every week, according to Scarborough Research 2016." *Herald-Tribune*, "About Us," https://www.heraldtribune.com/about-us. The *News-Press* is headquartered in Fort Myers, maintains a second office in Bonita Springs, and covers the counties of Lee, Hendry, Collier, and Charlotte. *See News-Press*, "General Questions," http://np.news-press.com/help; *Mondo Times*, "Fort Myers News-Press," http://www.mondotimes.com/1/world/us/9/504/1387. (2d O'Kelly Decl. ¶¶ 9-11.)

## CONCLUSION

For the reasons set forth in Plaintiff's opening papers (Doc. 80) and herein, Plaintiff respectfully requests that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) approve and order the opt-out and objection procedures set forth herein; (4) approve the proposed form of notice and publication notice; (5) appoint the Named Plaintiff as Class Representative; (6) appoint as Class Counsel and Settlement Class Counsel Robins Kaplan LLP; (7) stay the Action against Defendants pending Final Approval of the Settlement; (8) enter the Amended [Proposed] Order Preliminarily Approving Class Settlement and Certifying Settlement Class; and (9) schedule a Fairness Hearing on a date to be determined by the Court, but at a date at least 140 days after entry of the Preliminary Approval Order.

Dated: April 26, 2019

Respectfully submitted,

/s/ Eamon O'Kelly_____
Hollis Salzman
Kellie Lerner
Eamon O'Kelly
Nathaniel Ament-Stone
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
(212) 980-7400

Lawrence A. Farese
ROBINS KAPLAN LLP
711 Fifth Avenue South, Suite 201
Naples, FL 34102
(239) 430-7070

*Proposed Class Counsel*

11