# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

COUNTY OF MONMOUTH, NEW JERSEY,
on behalf of itself and all others similarly
situated,

        Plaintiff,

vs.

FLORIDA CANCER SPECIALISTS, P.L.;
and DR. WILLIAM N. HARWIN,

        Defendants.

Case No. 2:18-cv-201-SDM-MRM

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND PLAN OF ALLOCATION, AND INCORPORATED <u>MEMORANDUM OF LAW</u>

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................. 1

II.    BACKGROUND .............................................................................. 3

     A.      Procedural History ................................................................. 3

     B.      The Parties Engage in Mediation ............................................ 4

     C.      The Terms and Benefits of the Settlement ............................... 5

         1.      Background ................................................................. 5

         2.      The Settlement Class .................................................... 6

         3.      Monetary Relief for the Benefit of the Settlement Class and the Plan of Allocation ............................................ 6

         4.      The Release of Claims by Class Members ..................... 9

         5.      Class Representative Incentive Award ........................... 9

         6.      Attorneys' Fees and Costs ............................................ 9

         7.      Notice to the Appropriate State and Federal Officials ................. 10

     D.      The Settlement Class Satisfies the Requirements of Rules 23(a) and 23(b)(3) ................................................................ 10

     E.      The Court-Approved Notice Program was Carried Out ............. 11

     F.      The Reaction of the Settlement Class Has Been Positive ......... 12

III.   ARGUMENT ................................................................................. 12

     A.      The Legal Standard for Final Approval .................................. 12

     B.      The Settlement Satisfies the Criteria for Final Approval ......... 14

         1.      The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations ..................................... 14

         2.      The Settlement is Fair, Adequate, and Reasonable ......... 15

             a)      Likelihood of success at trial ............................. 16

             b)      Range of possible recovery and the point on or below the range of recovery at which a settlement is fair, adequate, and reasonable ................................... 17

             c)      Complexity, expense, and duration of litigation ............... 18

             d)      Positive reaction of the class ............................. 19

             e)      Stage of the proceedings .................................. 20

IV.   CONCLUSION .............................................................................. 21

V.    LOCAL RULE 3.01(G) CERTIFICATION ........................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bastian*, 2017 U.S. Dist. LEXIS 180757 ................................................................. 19

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988) .................................................. 17, 18, 19

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) ................................................ 1, 12, 13, 14

*Busby v. JRHBW Realty, Inc.*,
513 F.3d 1314 (11th Cir. 2008) ................................................................ 10

*Canupp v. Sheldon*,
No. 2:04-cv-269-FTM-99DNF, 2009 U.S. Dist. LEXIS 113488 (M.D.
Fla. Nov. 23, 2009) .............................................................................. 12, 17

*Elkins v. Equitable Life Ins. Co. of Iowa*,
No. 96-296-CIV-T-17B, 1998 U.S. Dist. LEXIS 1557 (M.D. Fla. Jan.
28, 1998) ............................................................................................. 13, 16

*Estate of Dolby v. Butler & Hosch, P.A.*,
No. 8:03-CV-2246-T-23TGW, 2006 U.S. Dist. LEXIS 102738 (M.D.
Fla. Aug. 4, 2006), *adopted by Merryday, J.,* 2006 U.S. Dist. LEXIS
60320 (M.D. Fla. Aug. 25, 2006), *Estate of Dolby,* U.S. Dist. LEXIS
102738 .................................................................................. 1, 12, 15, 20

*Faught v. Am. Home Shield Corp.*,
668 F.3d 1233 (11th Cir. 2011) ................................................................ 13

*Figueroa v. Sharper Image Corp.*,
517 F. Supp. 2d 1292 (S.D. Fla. 2007) ..................................................... 13

*Gibbs v. Centerplate, Inc.*,
No. 8:17-cv-01287-EAK-JSS, 2018 U.S. Dist. LEXIS 222801 (M.D.
Fla. Dec. 28, 2018) 2019 U.S. Dist. LEXIS 43308 (M.D. Fla. Jan. 7,
2019) .................................................................................................. 15, 16

*Greco v. Ginn Dev. Corp.*,
635 F. App'x 628 (11th Cir. 2015) ........................................................... 15

*In re 21st Century Oncology Holdings, Inc., et al.*,
   2017-bk-22770, Doc. 915 (Bankr. S.D.N.Y. Jan. 11, 2018) ........................3

*In re Motorsports Merchandise Antitrust Litig.*,
   112 F. Supp. 2d 1329 (N.D. Ga. 2000)........................................................18

*In re U.S. Oil & Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) ......................................................1, 12, 13

*Lipuma v. Am. Express Co.*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005)..............................................18, 20

*Montoya v. PNC Bank, N.A.*,
   No. 14-20474-CIV-GOODMAN, 2016 U.S. Dist. LEXIS 50315 (S.D.
   Fla. April 13, 2016) ...................................................................................17

*Pierre-Val v. Buccaneers Ltd. Partnership*,
   No. 8:14-cv-01182-CEH-EAJ, 2015 U.S. Dist. LEXIS 187670 (M.D.
   Fla. Dec. 7, 2015) .........................................................................................1

*Poertner v. Gillette Co.*,
   618 F. App'x 624 (11th Cir. 2015)...............................................................15

*Ressler v. Jacobson*,
   822 F. Supp. 1551 (M.D. Fla. 1992) ...........................................................16

*Rutstein v. Avis Rent-A-Car Sys.*,
   211 F.3d 1228 (11th Cir. 2000) ...................................................................10

*Strube v. Amer. Equity Inv. Life Ins. Co.*,
   226 F.R.D. 688 (M.D. Fla. 2005) ................................................................16

*Wilson v. EverBank*,
   No. 14-cv-22264, 2016 U.S. Dist. LEXIS 15751 (M.D. Fla. Feb. 3,
   2016)............................................................................................................15

**Statutes**

15 U.S.C. § 1 ........................................................................................................3

15 U.S.C. § 2 ...................................................................................................3, 4

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................2, 11

Fed. R. Civ. P. 23(a) .......................................................................................... 10

Fed. R. Civ. P. 23(b)(3) ................................................................................. 6, 11

Fed. R. Civ. P. 23(e) ................................................................................ 11, 12, 14

**Other Authorities**

4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) .................................... 13

Plaintiff moves for final approval of the Settlement and Plan of Allocation to resolve all claims against Defendants Florida Cancer Specialists & Research Institute, LLC, f/k/a Florida Cancer Specialists, P.L., and Dr. William N. Harwin (together, "FCS" or "Defendants"). The settlement terms are set forth in the Settlement Agreement (Doc. 80-1), as amended by the First Amendment to Settlement Agreement (Doc. 83-4). A copy of the Plan of Allocation, revised only to add dates consistent with those in the Court's Order on Motion for Settlement (Doc. 86) ("Preliminary Approval Order" or "Order"), is annexed as Exhibit A.[1]

## I.  INTRODUCTION

The Eleventh Circuit instructs that courts determining whether to approve a settlement be guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Estate of Dolby v. Butler & Hosch, P.A.*, No. 8:03-CV-2246-T-23TGW, 2006 U.S. Dist. LEXIS 102738, at *9 (M.D. Fla. Aug. 4, 2006), *adopted by Merryday, J.,* 2006 U.S. Dist. LEXIS 60320 (M.D. Fla. Aug. 25, 2006). In particular, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits" because the inherent costs, delays, and risks of ongoing litigation might otherwise render any meaningful relief "increasingly elusive." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *see also Pierre-Val v. Buccaneers Ltd. Partnership*, No. 8:14-cv-01182-

---

[1] Unless otherwise defined, capitalized terms have the same meaning ascribed in (a) the Settlement Agreement, (b) Plaintiff's and Proposed Class Counsel's Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class, and Incorporated Memorandum of Law (Doc. 80), or (c) Plaintiff's and Proposed Class Counsel's Memorandum in Response to Order to Show Cause (Doc. 83).

CEH-EAJ, 2015 U.S. Dist. LEXIS 187670, at *9-*10 (M.D. Fla. Dec. 7, 2015). In other words, settlement of class actions is particularly appropriate because of the numerous hurdles that must be overcome before the plaintiff is even permitted the opportunity to prove liability and recover damages.

After arms-length negotiations with experienced defense counsel under the oversight of a Court-appointed mediator, Plaintiff achieved a Settlement under which FCS will pay up to seven million, one hundred eighty-seven thousand, five hundred dollars ($7,187,500) in cash, to be distributed pro rata to the members of the Settlement Class. In light of the various challenges, risks, expenses, and uncertainty that Plaintiff and the class would have otherwise faced in this complex matter, this Settlement is an excellent result.

On June 5, 2019, this Court entered an order preliminarily approving the Settlement and scheduling a fairness hearing on October 29, 2019, to determine whether the Settlement is fair, adequate, and reasonable.[2] In accordance with the Preliminary Approval Order (Doc. 86), the Settlement Administrator retained by Plaintiff's counsel timely mailed notice directly to the members of the Settlement Class, posted details of the Settlement on a dedicated website, established a dedicated, toll-free information line, and published notice of the Settlement in two local newspapers in Southwest Florida. *See* Declaration of Brian Pinkerton ("Epiq Decl."), ¶¶ 9-17, attached hereto as Exhibit B. The response has been overwhelmingly positive to date: out of the 94,621 Settlement Class members to whom

---

[2] Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court also certified the Settlement Class for the purpose of settlement, appointed Plaintiff as the Settlement Class representative, appointed Eamon O'Kelly of Robins Kaplan LLP as Class Counsel, approved the form of notice to the Settlement Class, and appointed Epiq Class Action & Claims Solutions ("Epiq") as the Settlement Administrator. *See* Preliminary Approval Order at 3-7.

notice was mailed, there have been only 41 requests for exclusion from, and one objection to, the Settlement. *See* Declaration of Eamon O'Kelly in Support of Unopposed Motion for Final Approval of Class Settlement and Plan of Allocation ("O'Kelly Decl.") ¶ 9, attached hereto as Exhibit C; Epiq Decl. ¶¶ 18-20.

As discussed below, this Court has a more than sufficient basis to grant final approval of the Settlement and the Plan of Allocation, as fair, adequate, and reasonable.

## II.  BACKGROUND

### A.  Procedural History

On March 26, 2018, Plaintiff filed suit against FCS, as well as 21st Century Oncology LLC and Dr. Daniel Dosoretz. (*See* Doc. 1) However, on May 25, 2017, 21st Century filed for protection under Chapter 11 of the bankruptcy law and its liability was discharged on January 11, 2018. *See* Order, *In re 21st Century Oncology Holdings, Inc., et al.*, 2017-bk-22770, Doc. 915 (Bankr. S.D.N.Y. Jan. 11, 2018). On April 10, 2018, Plaintiff filed the Antitrust Class Action Amended Complaint against the FCS parties only, and naming 21st Century as an alleged co-conspirator. (*See* Doc. 27) Both complaints alleged the same set of operative facts: FCS and 21st Century conspired to allocate the market for Oncology Services and monopolize certain submarkets within five Florida counties in violation of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1-2).

On May 24, 2018, FCS moved to dismiss the Antitrust Class Action Amended Complaint on several grounds. (*See* Doc. 47) Plaintiff filed its opposition on June 25, 2018 (*see* Doc. 57), and the motion was fully briefed on July 10, 2018. (*See* Doc. 72)

On July 3, 2018, the Court entered a stipulated Case Management and Scheduling Order. (*See* Doc. 69) Discovery was stayed while the motion to dismiss was pending "except that the parties agree[d] to exchange information relating to damages during the temporary stay, to be used solely for settlement purposes." (Doc. 42 at 2).

### B.  The Parties Engage in Mediation

On August 21, 2018, the Court ordered the parties to mediate their dispute and appointed Peter J. Grilli as mediator. (*See* Doc. 74)

One week later, the parties exchanged initial data sets to enable them to begin their respective estimates of FCS's potential damage exposure. *See* O'Kelly Decl. ISO Motion for Preliminary Approval ("O'Kelly Preliminary Approval Decl.") ¶ 8 (Doc. 80-2). Both sides engaged economic consultants to assist them in their analyses. During October and early November 2018, FCS provided substantial additional data at Plaintiff's request. *Id*.

An initial mediation session with Mr. Grilli took place on November 14, 2018, and although it did not result in settlement, the parties agreed to continue with mediation. *Id*.

In November and December 2018, FCS provided further transactional data requested by Plaintiff, and the parties continued their discussions. *Id*. ¶ 9. Plaintiff's consultants estimated the amount of damages attributable to FCS during the approximately eight-year class period as being between $12.7 and $16.4 million. *Id*. Using an alternative damage methodology (and assuming Plaintiff could prove classwide liability at trial, which FCS disputes), FCS estimated damages to be no more than $2.9 million. *Id*.

Additional mediation sessions were held on January 4 and 14, 2019, following which the parties agreed in principle to resolve the Action. *Id*. ¶¶ 10-12. On January 25,

2019, the parties executed the Settlement Agreement. *Id*. ¶ 12. The magnitude of the Settlement Fund reflects the reasonableness and fairness of the Settlement. Plaintiff's counsel negotiated a cash payment from FCS of up to $7,187,500, which represents approximately 43.8 to 56.7% of Plaintiff's estimate of the Settlement Class's damages attributable to FCS. *Id*. ¶ 10.

### C. **The Terms and Benefits of the Settlement**

#### 1. *Background*

Plaintiff believes that the claims asserted in the Antitrust Class Action Amended Complaint are meritorious and that Plaintiff would prevail if this matter proceeded to trial. However, the prospect of continued litigation poses a substantial risk to Plaintiff and the Settlement Class, and pursuing the claims would be expensive and time-consuming. FCS denies any liability and, before the Parties entered into Court-ordered mediation, had moved to dismiss the Antitrust Class Action Amended Complaint on various grounds. Although Plaintiff asserted strong arguments in opposition to the motion, the outcome could not be taken for granted.

Significantly, if the Action were permitted to proceed to discovery, Plaintiff and the class would incur substantial expenses and costs, including accrued legal fees and, given the nature of antitrust litigation, costly expert discovery. Therefore, by achieving an early settlement before there had been discovery, Plaintiff saved the class potentially large sums with respect to legal fees and discovery costs. Contested motions for class certification and summary judgment would also implicate considerable costs and risks, to say nothing of the costs associated with a jury trial and possibly post-trial appellate review.

Therefore, given the costs and uncertainty of the ultimate outcome, Plaintiff and Class Counsel concluded that a settlement with FCS according to the terms set forth in the Settlement Agreement is fair, reasonable, and adequate, and in the best interest of Plaintiff and the Settlement Class. *See* Settlement Agreement at 2.

### 2. *The Settlement Class*

The Settlement Class is a damages class under Rule 23(b)(3) of the Federal Rule of Civil Procedure. The Settlement Class is defined as:

> [A]ll persons or entities that paid for all or a portion of the cost of Oncology Services in Southwest Florida to 21st Century or FCS, or any current or former subsidiary or affiliate of 21st Century or FCS, or any co-conspirator, during the period from and including January 1, 2010 until the date of preliminary approval of this Agreement. Excluded from the Settlement Class are Defendants, the officers, directors and employees of any Defendant, the parent companies, subsidiaries and affiliates of any Defendant, the legal representatives and heirs or assigns of any Defendant, any federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Settlement Agreement ¶ 8, as amended.

### 3. *Monetary Relief for the Benefit of the Settlement Class and the Plan of Allocation*

The Settlement Agreement required FCS to deposit $3,593,750 into an escrow account within ten business days following Preliminary Approval. *See* Settlement Agreement ¶ 26. On June 14, 2019, FCS paid this sum into an interest-bearing Escrow Account that was opened in the name of the Settlement Fund at Huntington National Bank,

N.A ("Huntington"). *See* O'Kelly Decl. ¶¶ 4-5.[3] If the Court grants final approval to the Settlement, FCS will be required to deposit up to an additional $3,593,750 into the Escrow Account within ten business days following entry of the Final Judgment Order. *See* Settlement Agreement ¶ 27.

Within seven calendar days following the September 20, 2019, deadline for class members to exercise their right to opt out of the Settlement, Class Counsel will provide FCS with a written list of opt-outs. *Id.* ¶ 40. The parties "will ascertain the total dollar amount of payments to FCS and 21st Century for Oncology Services in Southwest Florida during the relevant class period by the Opt-Out Purchasers (the 'Exclusion Amount')." *Id.* FCS may withdraw from the Settlement if the Exclusion Amount is equal to or greater than a sum specified in a Confidential Side Letter between the parties. *Id.*[4]

If the Exclusion Amount is reached but FCS elects *not* to exercise this withdrawal option, then "the Settlement Amount shall be reduced by the same percentage as the percentage of the combined amounts of payments FCS and 21st Century collected as to all eligible Settlement Class Members for Oncology Services in Southwest Florida for dates

---

[3] As noted in Plaintiff's motion for preliminary approval, Huntington has considerable experience serving as an Escrow Agent, including for class settlements in this district. *See* Preliminary Approval Mot. at 6. Plaintiff's counsel has utilized Huntington as an escrow agent in many previous class settlements, and has been very satisfied with the bank's performance. We now request that the Court formally approve the appointment of Huntington as Escrow Agent here.

[4] If the Exclusion Amount is reached and FCS wishes to exercise its withdrawal option, it must provide written notice to Class Counsel by no later than October 11, 2019. Settlement Agreement ¶ 40. The Settlement Agreement also lays out procedures for Plaintiff to challenge FCS's entitlement to withdraw based on the Exclusion Amount and for the Court to resolve any dispute regarding the Exclusion Amount or FCS's right to withdraw. *Id.* At present, the total dollar amounts of payments attributable to opt-outs is less than the Exclusion Amount. O'Kelly Decl. ¶ 9. If the Exclusion Amount is reached, Class Counsel will notify the Court promptly.

of service from January 1, 2010 through the date of preliminary approval of the Agreement represented by that Opt Out Purchaser," unless the total amount of the reduction is *de minimis*. *Id.* ¶ 28. In that event, the second tranche of FCS's payment to the Settlement Fund would be reduced accordingly.

The amount of the Settlement Fund after deduction of any taxes, attorneys' fees and litigation expenses, class representative's incentive award, and class notice and administration costs, as approved by the Court, shall be distributed in cash to the eligible class members. *See* Settlement Agreement ¶ 35; Proposed Plan of Allocation.[5] Distribution will be made pro rata; that is, each class member's share in the Settlement Fund will be proportional to the amount he, she, or it (in the case of an institutional payor) paid to FCS or 21st Century for Oncology Services during the class period. *Id.* To the extent that some individual class members' claims are for very small amounts, the Parties propose to pay a minimum of $5 to each class member. *Id.*

In its Preliminary Approval Order, the Court denied without prejudice approval of the Plan of Allocation as premature. Order at 3. Plaintiff respectfully requests that the Court now approve the Plan of Allocation.

---

[5] Pursuant to paragraphs 30 and 35 of the Settlement Agreement, the sum of $39,069.69 has already been paid to the Settlement Administrator Epiq with respect to costs of providing notice. O'Kelly Decl. ¶ 6. Paragraph 30 provides that notice costs of up to $75,000 may be paid without seeking leave of Court, and such notice costs are not refundable to FCS in the event that FCS exercises its withdrawal option under paragraph 40. The Settlement Agreement also provides that if the Settlement is rescinded, all monies paid by FCS to the Settlement Fund "shall be returned to FCS, including interest earned thereon, except for the amount of money already paid or required to pay expenses already incurred but not yet paid for notice and administration prior to the date of rescission in accordance with paragraph 30 of this Agreement." Settlement Agreement ¶ 38.

### 4. *The Release of Claims by Class Members*

Any Settlement Class Members who do not timely opt out will release FCS from claims relating to the subject matter of the Action, including federal and Florida antitrust claims, claims under the Florida Deceptive and Unfair Trade Practices Act, and claims for unfair competition, unfair practices, and price discrimination. *See* First Amendment to Settlement Agreement (amending Settlement Agreement ¶ 20). However, the release does not extend to "individual claims arising in the ordinary course of business for any alleged medical malpractice or breach of contract related to FCS's Oncology Services." *Id.* The detailed release language is found in the First Amendment to Settlement Agreement.

In its Preliminary Approval Order, the Court approved the terms of the Release as amended, noting that the Parties had "tailor[ed] the release to the facts and circumstances of the class action complaint." Order at 2-3.

### 5. *Class Representative Incentive Award*

Counsel is filing a separate motion today seeking an incentive award to be paid to the Class Representative, County of Monmouth, New Jersey, in the amount of $2,500.

### 6. *Attorneys' Fees and Costs*

The Settlement Agreement provides that Plaintiff will apply for, and FCS will take no position on, attorneys' fees representing a reasonable percentage of the Settlement Fund, plus reimbursement of litigation expenses. *See* Settlement Agreement ¶¶ 35(c), 36, 37. Plaintiff's counsel is filing a motion today seeking an award of attorneys' fees and reimbursement of litigation costs.

### 7. *Notice to the Appropriate State and Federal Officials*

Defendants met their obligations under 28 U.S.C. § 1715, by timely sending the required notices to the appropriate state and federal officials. O'Kelly Decl. ¶ 3.

### D. <u>The Settlement Class Satisfies the Requirements of Rules 23(a) and 23(b)(3)</u>

To warrant certification of a settlement class, a plaintiff must satisfy each requirement of Fed. R. Civ. P. 23(a), and must satisfy at least one of the requirements of Rule 23(b). *Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1233 (11th Cir. 2000); *see also* Order at 4. Rule 23(a) permits class certification:

> only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In its Order preliminarily approving the Settlement Class, the Court found that Plaintiffs satisfied those requirements here:

> The County estimates (Doc. 80-2 at ¶ 15) that the class will include several thousand members, which renders the class sufficiently numerous. Because the class members will share issues of fact and law — particularly, the nature and purported illegality of the alleged anticompetitive agreement — the County establishes commonality among the settlement class members. The County's claims are typical of the settlement class members' claims because the County's claims concern the same alleged anticompetitive agreement, depend on the same legal theories, and allege the same harm and entitlement to relief. The County "fairly and adequately" protects the interests of the class because "no substantial conflict of interest" appears between the County and the proposed settlement class and because the County has retained competent counsel to represent the settlement class. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Order at 5.

The Court also found that the settlement class satisfies Rule 23(b)(3) because "common legal and factual issues predominate over settlement class members' individualized issues. Resolving those common issues in a single action is superior [to] a mass of individual claims addressing the same legal and factual issues." *Id*.

### E. The Court-Approved Notice Program was Carried Out

Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement. In preliminarily approving the Settlement, the Court found that the notice plan proposed by Class Counsel satisfied the requirements of Rule 23 and approved the revised form of notice to Settlement Class members. *Id*. at 3.

The Order required that FCS and 21st Century provide to Class Counsel by no later than June 17, 2019 information regarding health insurers, patients, and other entities that paid FCS or 21st Century for Oncology Services in Southwest Florida since January 1, 2010. *Id* at 7. The Order further required that the Administrator Epiq would mail notice, in the form approved by the Court, to all class members by no later than July 22, 2019. *Id*. Epiq mailed the notice to 94,583 class members by that date. A further 38 class members were identified after July 22, and notice was mailed to them also. *See* Epiq Decl. ¶¶ 9-10.

The Order also required that notice of the Settlement be published in two newspapers in Southwest Florida, the *Fort Myers News-Press* and the *Sarasota Herald Tribune*, by no later than August 5, 2019. Order at 7. Notice was published on Thursday, July 25, 2019, and again on Sunday, July 28, 2019. *See* Epiq Decl. ¶ 13.

Epiq also posted details of the Settlement on a dedicated website and established a dedicated, toll-free information line for Class members. *See id.* ¶¶ 14-17.

### F. **The Reaction of the Settlement Class Has Been Positive**

In accordance with the Preliminary Approval Order, class members who wish to opt out of the Settlement must do so by no later than September 20, 2019, and a class member who does not opt out may object to the Settlement by no later than September 30, 2019. Order at 7. As of September 6, 2019, there have been just 41 requests for exclusion from, and one objection to the Settlement. *See* O'Kelly Decl. ¶ 9; Epiq Decl. ¶¶ 18-20.[6]

### III. **ARGUMENT**

### A. **The Legal Standard for Final Approval**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of a class action settlement. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493; *see also Canupp v. Sheldon*, No. 2:04-cv-269-FTM-99DNF, 2009 U.S. Dist. LEXIS 113488, at *10 (M.D. Fla. Nov. 23, 2009). In exercising this discretion, the Eleventh Circuit instructs that district courts be guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett*, 737 F.2d at 986; *see also Estate of Dolby*, 2006 U.S. Dist. LEXIS 102738, at *9. In fact, the public policy favoring settlements is especially applicable to class actions, because the expense, delays, and risks of ongoing litigation might otherwise

---

[6] Plaintiff intends to file a supplementary notice with a final count of opt-outs and objectors as soon as feasible after the second of those deadlines, and by no later than October 15, 2019.

overwhelm any potential benefit to the class. *See, e.g., In re U.S. Oil and Gas Litig.*, 967 F.2d at 493 ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1319 (S.D. Fla. 2007) ("[T]here exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (internal quotation marks omitted); *Elkins v. Equitable Life Ins. Co. of Iowa*, No. 96-296-CIV-T-17B, 1998 U.S. Dist. LEXIS 1557, at *80 (M.D. Fla. Jan. 28, 1998) ("The federal courts have long recognized that compromises of disputed claims are favored by the courts. Particularly in class action suits, there is an overriding public interest in favor of settlement.") (citations and internal quotations marks omitted); 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) (citing cases).

The Eleventh Circuit has identified several factors to guide a district court's determination of whether a class action settlement should be approved. Once it is determined that the settlement was reached in good faith and was not the product of collusion, a district court must determine whether it is fair, adequate, and reasonable by balancing the following: (a) the likelihood of success at trial; (b) the range of possible recovery; (c) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (d) the complexity, expense, and duration of litigation; (e) the substance and amount of opposition to the settlement; and (f) the stage of proceedings at which the settlement was achieved. *See Bennett*, 737 F.2d at 986; *see also Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011)). These factors support final approval here.

**B. The Settlement Satisfies the Criteria for Final Approval**

Each of the relevant factors weighs heavily in favor of final approval of the Settlement. First, as the Court has already found, the Settlement was reached in the absence of collusion, and it is the product of good faith, informed, and arm's-length negotiations by competent counsel under the oversight of a Court-appointed mediator. Order at 3. In addition, a review of the *Bennett* factors demonstrates that the Settlement is fair, adequate, and reasonable and therefore final approval is warranted.[7]

**1. *The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations***

To determine whether a settlement is the product of good faith, informed, and arm's length negotiations, the Court must consider the evidence before it. *See Bennett*, 737 F.2d at 987 n.9 (approving of the district court's finding of good faith where "[t]here is no evidence of unethical behavior, want of skill or lack of zeal on the part of class counsel," "[t]he settlement provides significant cash and other tangible benefits to the class," and "objectors have submitted no evidence suggesting a contrary conclusion"). Here, the negotiations leading to the Settlement were conducted entirely at arm's length, before a neutral Court-appointed mediator, and it took several months of hard bargaining and multiple mediation sessions to finally reach the Settlement. *See* O'Kelly Preliminary Approval Decl. ¶¶ 8-12. The Court-appointed mediator described the process as follows:

---

[7] Effective December 2018, Rule 23(e) has been amended to codify the factors that affect whether a court should approve a class action settlement. *See, e.g.,* Advisory Committee Notes at 28 ("The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate. Courts have generated lists of factors to shed light on this concern . . . . The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

> I observed that both sides zealously and ethically advocated for resolution in their clients' interest. I saw no indication of collusion between the two sides. While a professional demeanor of civility was always maintained, in the substance of the negotiation ground was yielded reluctantly and always with the effort to obtain reciprocal treatment from the other side.

Mediator Decl. ¶ 7 (Doc. 83-6).

The Court-appointed mediator's involvement—not to mention the content of his declaration—weighs in favor of final approval. *See Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) ("self-dealing contention" is "belied" by participation of skilled mediator); *Estate of Dolby*, 2006 U.S. Dist. LEXIS 102738, at *11 (finding that use of a court-appointed mediator is persuasive evidence that the settlement was a product of arms-length negotiations and not collusion). Moreover, that Class Counsel has "considerable experience in this type of litigation" adds "great weight" towards granting final approval. *Wilson v. EverBank*, No. 14-cv-22264, 2016 U.S. Dist. LEXIS 15751, at *42 (M.D. Fla. Feb. 3, 2016); *see also Gibbs v. Centerplate, Inc.*, No. 8:17-cv-01287-EAK-JSS, 2018 U.S. Dist. LEXIS 222801, at *13 (M.D. Fla. Dec. 28, 2018) (approving settlement where it was "not the product of fraud or collusion but instead the product of the parties' arm's-length negotiations aided by formal mediation."), *adopted*, 2019 U.S. Dist. LEXIS 43308 (M.D. Fla. Jan. 7, 2019).

### 2. *The Settlement is Fair, Adequate, and Reasonable*

In approving a class action settlement, "a district court . . . may rely upon the experienced judgment of counsel for the parties" and "absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." *Greco v. Ginn Dev. Corp.*, 635 F. App'x 628 (11th Cir. 2015) (internal quotation marks

omitted); *see also Elkins*, 1998 U.S. Dist. LEXIS 1557, at \*82-\*83 (internal quotation marks omitted). Plaintiff respectfully requests the Court approve the Settlement Agreement in final because each factor the Eleventh Circuit identified in *Bennett* is satisfied.

### a) Likelihood of success at trial

A district court is not obligated to make specific findings regarding the likelihood of success at trial in order to determine the fairness of a class action settlement:

> As settlements are construed upon compromise, the merits of the parties' claims and defenses are deliberately left undecided. Judicial evaluation of a proposed settlement of a class action thus involves a limited inquiry into whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement.

*Ressler v. Jacobson*, 822 F. Supp. 1551, 1552-53 (M.D. Fla. 1992); *Strube v. Amer. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005) (applying the same standard).

Here, Plaintiff is confident in the strength of its case, but also pragmatic regarding the defenses available to FCS and the risks inherent in litigation. First, the Court never ruled on the merits of FCS's motion to dismiss. FCS raised a number of grounds for dismissal, including the statute of limitations and arguments about the sufficiency and plausibility of Plaintiff's allegations regarding the relevant market and the existence of an anticompetitive agreement. (*See* Doc. 47; Doc. 72) Assuming the claims survived, Plaintiff likely would have to overcome obstacles at class certification and summary judgment just to get to trial. Although Plaintiff is confident that its case is strong, Plaintiff also recognizes the outcome of a jury trial is inherently uncertain. *See Gibbs*, 2018 U.S. Dist. LEXIS 222801, at \*13 ("Therefore, because success at trial is not certain for Plaintiff, this factor weights in favor of accepting the settlement.") (internal quotation marks omitted).

### b) Range of possible recovery and the point on or below the range of recovery at which a settlement is fair, adequate, and reasonable

The second and third *Bennett* factors are "easily combined" and analyzed in tandem. *Canupp v. Sheldon*, 2009 U.S. Dist. LEXIS 113488, at *32 (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988)). The district court must first determine the "possible range of recovery by resolving various damages issues. The court then determines where in this range of possible recovery do fair, adequate, and reasonable settlements lie." *Behrens*, 118 F.R.D. at 541. In doing so, the court must be mindful of "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Id*. at 542.

In connection with the mediation, Plaintiff's consultants estimated the amount of classwide damages attributable to FCS was between $12.7 and $16.4 million. FCS estimated its potential damage exposure to be no more than $2.9 million through an alternative methodology. *See* O'Kelly Preliminary Approval Decl. ¶ 9. Plaintiff assumed for purposes of estimating damages that it would overcome the challenges of the then-pending motion to dismiss, class certification and summary judgment, any of which could otherwise result in no recovery at all. Here, the certainty of the cash settlement of up to $7,187,500 will provide an excellent recovery for the Settlement Class given the complexity of this matter and the risks inherent in antitrust class action litigation. The cash payment also represents approximately 43.8 to 56.7% of the estimate of classwide damages attributable to FCS (*id*. ¶ 9), which is well within the range of a fair, adequate, and reasonable recovery. *See, e.g. Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV-GOODMAN, 2016 U.S. Dist. LEXIS 50315, at *40 (S.D. Fla. April 13, 2016) (collecting

cases approving class action settlements offering class members 12.5% or less of estimated damages). Therefore, this factor likewise militates in favor of granting final approval to the Settlement Agreement.

### c) Complexity, expense, and duration of litigation

When contemplating a class action settlement, a district court "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) (internal quotation marks omitted).

This Settlement is the best vehicle for the Settlement Class to receive the relief to which it is entitled in a prompt and efficient manner. Indeed, an "antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000). Without the Settlement, the parties would have to take part in an expensive and time-consuming discovery, class certification, and summary judgment process. Settling now saves Plaintiff from undertaking this long and arduous process with an uncertain outcome, especially when litigating class certification alone would require a costly, complex, and contested economic analysis by an expert after voluminous discovery. *See Behrens*, 118 F.R.D. at 542 (noting likely "battle of experts" at trial regarding damages would pose "great difficulty" for plaintiffs).

In addition, trial is not even scheduled until 2021 (Doc. 69), and even if Plaintiff prevails, litigation could continue for years through appeals. *See Bastian*, 2017 U.S. Dist. LEXIS 180757, at \*20-\*21 (approving settlement and reasoning, "[i]f this case were not settled, the parties would need to complete discovery, class action-related motion practice and, if a class were certified, there would need to be a trial and then, if the plaintiffs prevailed, the defendants would appeal. All of this would require substantial expense."). On the other hand, the Settlement provides definite and immediate benefits right now, and the "law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigations." *Behrens*, 118 F.R.D. at 543. Accordingly, this factor similarly weighs in favor of final approval of the Settlement.

### d) Positive reaction of the class

"A low percentage of objections demonstrates the reasonableness of a settlement." *Bastian*, 2017 U.S. Dist. LEXIS 180757, at \*21. Here, the Preliminary Approval Order sets a deadline for Settlement Class Members to object to the Settlement and Plan of Allocation (or to exclude themselves from the Settlement Class) of September 30, 2019. As of September 6, 2019, out of a class numbering almost 95,000 persons and entities, Class Counsel has received just one objection to, and only 41 requests for exclusion from, the Settlement. *See* Epiq Decl. ¶¶ 18-20. This minimal resistance to the Settlement establishes its reasonableness, and warrants an order of final approval.[8]

---

[8] Plaintiff will respond to objections by no later than October 15, 2019, as provided in the Court's Preliminary Approval Order. The gravamen of the only objection received so far is that the Settlement does not compensate the objecting class member for alleged medical malpractice by FCS. But the Settlement is not intended to address medical malpractice claims, and such claims are expressly excluded from the class-wide release. *See* Settlement Agreement ¶ 20.

### e) Stage of the proceedings

A court must consider the stage of proceedings where settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.

Although discovery was stayed, the parties did "exchange information relating to damages during the temporary stay, to be used solely for settlement purposes." Joint Case Management Report at 2. In particular, the parties exchanged a considerable quantity of data over a period of several months and each side retained economic consultants to produce preliminary damage estimates. *See* O'Kelly Preliminary Approval Decl. ¶¶ 8-9. Because of this data exchange, the economic analyses, and Plaintiff's counsel's own experience litigating and settling complex antitrust cases, Plaintiff's counsel was exceptionally well-positioned to evaluate the value of the class damage claims and prospects for success. *Id*. ¶ 16. By settling now, the Settlement Class will be spared the burden and expense of discovery and likely contested class certification, summary judgment, and *Daubert* motions, as well as a complex jury trial. *See Estate of Dolby,* U.S. Dist. LEXIS 102738, at *16 ("The proposed settlement is occurring early enough in the litigation that significant litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision."). This factor similarly justifies final approval of the Settlement.

IV.    **CONCLUSION**

For these reasons, Plaintiff respectfully requests that the Court grant final approval
of the Settlement and the Plan of Allocation. Plaintiff also requests that the Court formally
approve the appointment of Huntington National Bank as Escrow Agent.

V.    **Local Rule 3.01(g) Certification**

Undersigned counsel certifies that he has conferred with Defendants' counsel,
Michael Matthews of Foley & Lardner LLP, who informed undersigned counsel that,
without adopting any statements made herein, Defendants do not oppose this motion.

Dated: September 9, 2019

                                       Respectfully submitted,

                                       /s/ Lawrence A Farese
                                       Lawrence A. Farese
                                       Florida Bar No: 252808
                                       ROBINS KAPLAN LLP
                                       711 Fifth Avenue South, Suite 201
                                       Naples, FL 34102
                                       (239) 430-7070

                                       Hollis Salzman
                                       Florida Bar No. 947751
                                       Kellie Lerner
                                       Admitted *Pro Hac Vice*
                                       ROBINS KAPLAN LLP
                                       399 Park Avenue, Suite 3600
                                       New York, NY 10022
                                       (212) 980-7400

                                       *Counsel for Plaintiff*
                                       *County of Monmouth, New Jersey*

Eamon O'Kelly
Admitted *Pro Hac Vice*
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
(212) 980-7400

*Class Counsel and Counsel for Plaintiff*
*County of Monmouth, New Jersey*

Michael D. Fitzgerald
1 Industrial Way West, Building B
Eatontown, New Jersey 07724
(732) 223-2200
Mdfitz@briellelaw.com

*Counsel for Plaintiff*
*County of Monmouth, New Jersey*

COUNTY OF MONMOUTH, NEW
JERSEY, on behalf of itself and all others
similarly situated,

             Plaintiff,

vs.

FLORIDA CANCER SPECIALISTS,
P.L.; and DR. WILLIAM N. HARWIN,

             Defendants.

Case No. 2:18-cv-201-SDM-MRM

**PROOF OF SERVICE**

     I hereby certify that, on September 9, 2019, a copy of the foregoing motion and this

proof of service were served upon all counsel of record via ECF.

Dated: September 9, 2019

Respectfully submitted,

By: /s/ Lawrence A. Farese_____

Lawrence A. Farese
Florida Bar No: 252808
ROBINS KAPLAN LLP
711 Fifth Avenue South, Suite 201
Naples FL 34102
Tel: (239) 430-7070
Email: lfarese@robinskaplan.com

Eamon O'Kelly
Admitted *Pro Hac Vice*
Hollis Salzman
Florida Bar No. 947751
Kellie Lerner
Admitted *Pro Hac Vice*
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Tel: (212) 980-7400
Email: eokelly@robinskaplan.com
hsalzman@robinskaplan.com
klerner@robinskaplan.com

Michael D. Fitzgerald
1 Industrial Way West, Building B
Eatontown, New Jersey 07724
(732) 223-2200 Telephone
(732) 223-7299 Facsimile
Mdfitz@briellelaw.com

***Attorneys for Plaintiff***