UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

COUNTY OF MONMOUTH, NEW
JERSEY, on behalf of itself and all others
similarly situated,

               Plaintiff,

vs.

FLORIDA CANCER SPECIALISTS,
P.L.; and DR. WILLIAM N. HARWIN,

               Defendants.

Case No. 2:18-cv-201-SDM-MRM

**PLAINTIFF'S COUNSEL'S APPLICATION FOR (1) AN
AWARD OF ATTORNEYS' FEES, (2) REIMBURSEMENT
OF EXPENSES, AND (3) CLASS REPRESENTATIVE'S
INCENTIVE AWARD; AND INCORPORATED
<u>MEMORANDUM OF LAW</u>**

INTRODUCTION ........................................................................................................1

BACKGROUND .........................................................................................................2

    I.     The Class Settlement .....................................................................................2

    II.    The Settlement Fund and Opt-Out Reduction Provision.............................3

ARGUMENT ..............................................................................................................3

    I.     THE COURT MAY AWARD ATTORNEYS' FEES AND EXPENSES
         UNDER THE COMMON FUND DOCTRINE .........................................3

        A.    Under the Percentage of the Fund Approach, the Requested Fees
             Are Fair and Reasonable....................................................................4

            1.    Time and Labor of Plaintiff's Counsel ................................6

            2.    The Novelty and Difficulty of the Questions Involved .......8

            3.    The Skill Required to Litigate this Case..............................9

            4.    The Preclusion of Other Employment ...............................11

            5.    The Customary Fee.............................................................11

            6.    Plaintiff's Counsel Took on Significant Risk in This
                Contingent Case..................................................................12

             7.    The Amount Involved and the Results Obtained...............15

            8.    The Experience, Reputation, and Ability of Plaintiff's
                 Counsel ..............................................................................16

             9.    The Undesirability of this Case .........................................17

             10.    Awards in Similar Cases ...................................................17

             11.    Other Considerations Support the Requested Fee Award .18

        B.    The Requested Expenses Are Reasonable and Should Be
             Reimbursed......................................................................................20

        C.    The Requested Class Representative Incentive Award Is
             Reasonable.......................................................................................20

CONCLUSION ............................................................................................................22

Local Rule 3.01(g) Certification.........................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alpine Pharmacy v. Chas. Pfizer & Co.*,
    481 F.2d 1045 (2d Cir. 1993) ............................................................................. 19, 20

*Atlantic Richfield Co., v. USA Petroleum Co.*,
    495 U.S. 328 (1990) .................................................................................................. 12

*Baez v. LTD Fin. Servs.*,
    No. 6:15-cv-1043-ORL-40TBS (M.D. Fla. May 3, 2019) ......................................... 22

*Bastian v. United Servs. Auto. Ass'n*,
    No. 3:13-cv-1454-J-32-MCR, 2017 U.S. Dist. LEXIS 180757 (M.D.
    Fla. Nov. 1, 2017) ............................................................................................... 14, 15

*Behrens v. Wometco Enterprises, Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988) ............................................................................. 14

*Black v. Winn-Dixie Stores, Inc.*,
    No. 3:09-cv-502-J-32JRK, 2011 U.S. Dist. LEXIS 165694 (M.D. Fla.
    June 17, 2011) .......................................................................................................... 22

*Cabot E. Broward 2 LLC v. Cabot*,
    No. 16-61218-CIV-DIMITROULEAS/SNOW, 2018 U.S. Dist. LEXIS
    192706 (S.D. Fla. Nov. 9, 2018) ...................................... 4, 5, 9, 11, 12, 15, 16, 17, 18

*Camden I Condo. Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ................................................. 3, 4, 5, 6, 15, 17, 18

*Columbus Drywall & Insulation v. Masco Corp.*,
    No. 1:04-cv-4066-JEC, 2012 U.S. Dist. LEXIS 196030 (N.D. Ga. Oct.
    26, 2012)................................................................................................................... 19

*Elkins v. Equitable Life Ins. of Iowa*,
    No. 96-296-CIV-TB-17B, 1998 U.S. Dist. LEXIS 1557 (M.D. Fla.
    Jan. 27, 1998) ................................................................................. 6, 9, 12, 15, 19

*Estate of Dolby v. Butler & Hosch, P.A.*,
    No. 8:03-CV-2246-T-23TGW, 2006 U.S. Dist. LEXIS 102738 (M.D.
    Fla. Aug. 4, 2006), *adopted by Merryday, J.,* 2006 U.S. Dist. LEXIS
    60320 (M.D. Fla. Aug. 25, 2006) ............................................................................ 15

*Gibbs v. Centerplate, Inc.*,
No. 8:17-cv-02187-EAK-JSS, 2018 U.S. Dist. LEXIS 222801 (M.D.
Fla. Dec. 28, 2018), *adopted*, 2019 U.S. Dist. LEXIS 43308 (M.D. Fla.
Jan. 7, 2019) .......................................................................5, 9, 11, 15, 16, 17, 20, 21

*Holman v. Student Loan Express, Inc.*,
778 F. Supp. 2d 1306 (M.D. Fla. 2011) ........................................................6

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 1:06-md-01775 (E.D.N.Y.)...................................................................10

*In re Auto. Parts Antitrust Litig.*,
No. 2:13-cv-00803 (E.D. Mich.) ................................................................10

*In Re Brand Name Prescription Drugs Antitrust Litig.*,
186 F.3d 781 (7th Cir. 1999) ......................................................................10

*In re Carbon Dioxide Antitrust Litig.*,
MDL No. 940, 1996 U.S. Dist. LEXIS 13418 (M.D. Fla. July 12,
1996)..............................................................................................................4

*In re Checking Account*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011).........................................................6

*In re Disposable Contact Lens Antitrust Litig.*,
No. 3:15-md-02626-HES-JRK (M.D. Fla. July 10, 2018) ..........................10

*In re Disposable Contact Lens Antitrust Litig.*,
No. 3:15-md-2626-J-20JRK, 2018 U.S. Dist. LEXIS 212329 (M.D.
Fla. Dec. 4, 2018) .......................................................................................10

*In re Insurance Brokerage Antitrust Litigation*,
618 F.3d 300 (3d Cir. 2010) .................................................................10, 13

*In re Motorsports Merchandise Antitrust Litig.*,
112 F. Supp. 2d 1329 (N.D. Ga. 2000).........................................................8

*In re Payment Card Interchange Fee & Merch. Discount Litig.*,
No. 1:05-md-1720, 2019 U.S. Dist. LEXIS 13481 (E.D.N.Y. Jan. 28,
2019)............................................................................................................10

*In re Rayonier Secs. Litig.*,
No. 3:14-cv-1395-J-32JBT, 2017 U.S. Dist. LEXIS 167510 (M.D. Fla.
2017)..........................................................................................................5, 6

*In re Terazosin Hydrochloride Antitrust Litig.*,
No. 99-MDL-1317-SEITZ/KLEIN, 2005 U.S. Dist. LEXIS 43082
(S.D. Fla. Apr. 19, 2005) ............................................................................... 16

*Martin v. Global Mktg. Research Servs.*,
No. 6:14-cv-1290, 2016 U.S. Dist. LEXIS 164770 (M.D. Fla. Nov. 30,
2016) ...................................................................................................................6

*Minn-Chem, Inc. v. Agrium. Inc.*
, 683 F.3d 845 (7th Cir. 2012) .................................................................... 10

*Montoya v. PNC Bank, N.A.*,
No. 14-20474-CIV-GOODMAN, 2016 U.S. Dist. LEXIS 50315 (S.D.
Fla. Apr. 13, 2016) ..............................................................................................6

*Morgan v. Pub. Storage*,
301 F. Supp. 3d 1237 (S.D. Fla. 2016) ....................................................... 18

*MRI Assocs. of St. Pete v. Direct Gen. Ins. Co.*,
No. 8:12-cv-2408-CEH-AEP (M.D. Fla. Dec. 12, 2015) ............................22

*Muransky v. Godiva Chocolatier, Inc.*,
922 F.3d 1175 (11th Cir. 2019) ................................................................... 21

*Pinto v. Princess Cruise Lines, Ltd.*,
513 F. Supp. 2d 1334 (S.D. Fla. 2007) ....................................................... 12

*Realcomp II, Ltd. v. FTC*,
635 F.3d 815 (6th Cir. 2011) ....................................................................... 13

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992) ...............................................5, 6, 9, 11, 16, 19, 20

*Reyes v. AT&T Mobility Servs., LLC*,
No. 10-20837-Civ-COOKE/TURNOFF, 2013 U.S. Dist. LEXIS
202820 (S.D. Fla. June 21, 2013) ................................................................ 18

*Sherman v. Corizon Health, Inc.*,
No. 2:12-cv-00635-JES-DNF, 2014 U.S. Dist. LEXIS 155738 (M.D.
Fla. Oct. 29, 2014) *adopted by*, 2014 U.S. Dist. LEXIS 155737 (M.D.
Fla. Nov. 4, 2014) ..............................................................................................22

*Speer v. Whole Foods Market Grp., Inc.*,
No. 8:14-CV-3035-RAL-TBM (M.D. Fla. Jan. 15, 2016) ...........................22

*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*,
  344 F.3d 1294 (11th Cir. 2003) ................................................................... 10

**INTRODUCTION**

Plaintiff's counsel Robins Kaplan LLP submits this memorandum in support of its application for an award of attorneys' fees. As a result of the class action Settlement,[1] Defendant Florida Cancer Specialists & Research Institute, LLC, f/k/a Florida Cancer Specialists, P.L. ("FCS") will pay up to seven million, one hundred eighty-seven thousand, five hundred dollars ($7,187,500) in cash to a Settlement Fund, to be distributed pro rata to the members of the Settlement Class. Plaintiff seeks an attorneys' fee award of 30% of the Settlement Fund, that is, $2,156,250, if the final Settlement Amount is not reduced because of opt-outs from the Settlement Class. *See* discussion at II.B, below. An award of attorneys' fees in that amount would be well within the range of fee awards in complex class actions in the 11th Circuit. It would also provide a multiplier of 1.82 on Plaintiffs' counsel's time spent from February 14, 2018 through August 31, 2019, less than the multipliers in many other antitrust cases.

Plaintiffs' counsel also requests that this Court award it reimbursement of $68,939.38 in expenses incurred between February 14, 2018, and August 31, 2019. These expenses are described in the Declaration of Eamon O'Kelly in Support of Plaintiff's Counsel's Application for (1) An Award of Attorneys' Fees, (2) Reimbursement of Expenses, and (3) Class Representative's Incentive Award ("O'Kelly Fee Decl."), attached hereto as Exhibit A.

---

[1] Unless otherwise defined, capitalized terms have the same meaning ascribed in (a) the Settlement Agreement (Doc. 80-1), (b) Plaintiff's and Proposed Class Counsel's Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class, and Incorporated Memorandum of Law (Doc. 80), or (c) Plaintiff's and Proposed Class Counsel's Memorandum in Response to Order to Show Cause (Doc. 83).

In addition, Plaintiff's counsel requests that the Court authorize a $2,500 incentive award to be paid to the Class Representative, County of Monmouth, New Jersey.

Plaintiffs' counsel believes that its application for attorneys' fees, reimbursement of expenses, and incentive award is fair and reasonable, and respectfully requests that the application be granted.

## BACKGROUND

### I.    THE CLASS SETTLEMENT

Plaintiff County of Monmouth, New Jersey, which operates an employee health plan, paid FCS and 21st Century Oncology LLC ("21st Century") for Oncology Services provided to its plan members in Southwest Florida. On March 26, 2018, Plaintiff filed an antitrust class action, on behalf of itself and other similarly situated entities, against FCS and 21st Century arising out of an alleged conspiracy to restrain competition and to monopolize relevant Oncology Services markets in Southwest Florida. (Doc. 1) 21st Century, which filed for bankruptcy protection, was subsequently dropped as a party to the lawsuit. (*See* Doc. 27) On January 25, 2019, Plaintiff entered into a Settlement Agreement with FCS, whereby FCS will pay up to $7,187,500 in cash to a Settlement Fund, to be distributed pro rata to the members of the Settlement Class, and FCS will obtain a class-wide release of claims arising out of the alleged unlawful conduct. (Doc. 80-1) On June 5, 2019, the Court entered an order granting preliminary approval to the Settlement. (Doc. 86) Plaintiff is filing a motion for final approval of the Settlement today.

## II.    THE SETTLEMENT FUND AND OPT-OUT REDUCTION PROVISION

On June 14, 2019, pursuant to paragraph 26 of the Settlement Agreement, FCS paid an initial amount of $3,593,750 into an interest-bearing Escrow Account in the name of the Settlement Fund at Huntington National Bank, N.A. The Agreement also provides that if the Court grants final approval to the Settlement, FCS will deposit up to an additional $3,593,750 into the Escrow Account within ten business days following entry of the Final Judgment Order. *See* Settlement Agreement ¶ 27.

The Agreement further provides that in certain circumstances, the Settlement Amount may be reduced in an amount proportionate to the total payments collected by FCS and 21st Century during the class period from eligible Settlement Class Members (if any) who chose to opt out of the Settlement. *See id.* ¶¶ 28, 40; *see also* discussion in Plaintiff's Motion for Final Approval of Class Settlement at 7, filed today. In that event, the second tranche of FCS's payment to the Settlement Fund would be reduced accordingly.

If the gross amount of the Settlement Fund were reduced, then Plaintiff's counsel's fee would be reduced also, in proportion to the amount of the reduction to the Fund. For example, if the Fund were reduced by five percent, to $6,828,125, because of opt-outs, then counsel's fee would be reduced to $2,048,438.

## ARGUMENT

## I.    THE COURT MAY AWARD ATTORNEYS' FEES AND EXPENSES UNDER THE COMMON FUND DOCTRINE

By virtue of the Settlement, Plaintiff's counsel has created substantial benefits for the Class and is therefore entitled to recover reasonable attorneys' fees. *See Camden I*

3

*Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund . . . ."). "The award in an antitrust action is determined in accord with principles applicable to all class actions. When the class action is successful, it is long settled, based for the most part on unjust enrichment principles, that the attorneys who created that class recovery are entitled to be reimbursed from the common fund for their reasonable litigation expenses, including reasonable attorneys' fees." *In re Carbon Dioxide Antitrust Litig.*, MDL No. 940, 1996 U.S. Dist. LEXIS 13418, at *2 (M.D. Fla. July 12, 1996).

Having achieved an excellent settlement with Defendants, Plaintiff's counsel respectfully submits that it is entitled to an award of attorneys' fees equal to 30% of the Settlement Fund, an amount that is well within the range of fees routinely awarded in the Eleventh Circuit. *See, e.g. Camden I*, 946 F.2d at 774-75; *Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIV-DIMITROULEAS/SNOW, 2018 U.S. Dist. LEXIS 192706, at *19 (S.D. Fla. Nov. 9, 2018) ("[T]he average percentage fee award in this Circuit is now at or above 30%, as courts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund.") (citing cases) (internal quotation marks omitted).

## A.   UNDER THE PERCENTAGE OF THE FUND APPROACH, THE REQUESTED FEES ARE FAIR AND REASONABLE

To determine whether requested attorneys' fees in a common fund case are reasonable, the Eleventh Circuit requires district courts to use the percentage method, where the court sets some percentage of the recovery as a fee. *See Camden I*, 946 F.2d at

774 ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *Gibbs v. Centerplate, Inc.*, No. 8:17-cv-02187-EAK-JSS, 2018 U.S. Dist. LEXIS 222801, at *13 (M.D. Fla. Dec. 28, 2018), *adopted*, 2019 U.S. Dist. LEXIS 43308 (M.D. Fla. Jan. 7, 2019); *In re Rayonier Secs. Litig.*, No. 3:14-cv-1395-J-32JBT, 2017 U.S. Dist. LEXIS 167510, at *5-*6 (M.D. Fla. 2017).

In determining whether the requested fee is reasonable, courts in this Circuit are required to consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the amount involved and the results obtained; (8) the experience, reputation, and ability of the attorneys; (9) the undesirability of the case; and (10) awards in similar cases. *See, e.g. Gibbs*, 2018 U.S. Dist. LEXIS 222801, at *16 (citing *Camden I*, 946 F.2d at 772 n.3); *Cabot*, 2018 U.S. Dist. LEXIS 192706, at *3-*4; *Ressler v. Jacobson*, 149 F.R.D. 651, 653 (M.D. Fla. 1992).[2] The Court is also authorized to consider additional factors that may be pertinent to the particular facts of a case. *See Camden I*, 946 F.2d at 775; *Ressler*,

---

[2] District courts may also consider the time limitations imposed by the client, as well as the nature and length of the professional relationship. *Id.* However, these factors are inapplicable to this case, so they need not be analyzed. *See, e.g. Camden I*, 946 F.2d at 775 ("The factors which will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary."); *Gibbs*, 2018 U.S. Dist. LEXIS 222801, at *17 n.1; *In re Rayonier Secs. Litig.*, 2017 U.S. Dist. LEXIS 167510, at *7 n.3; *Ressler*, 149 F.R.D. at 653 n.3.

149 F.R.D. at 656-57. All of the applicable factors strongly support granting the

requested fee.[3]

### 1.    TIME AND LABOR OF PLAINTIFF'S COUNSEL

As detailed in the O'Kelly Fee Declaration, since Plaintiff's counsel began its

initial investigation into the conduct at issue in this case on February 14, 2018, counsel

spent a total of 1741.70 hours prosecuting the lawsuit through the end of August 2019.[4]

The work performed by Plaintiff's counsel during this period is summarized

below:

- Conducted pre-complaint factual, legal and economic investigation arising out of reports of anticompetitive conduct in Oncology Services markets in Southwest Florida (O'Kelly Fee Decl. ¶ 11(a));

- Drafted and filed the initial Antitrust Class Action Complaint against FCS and alleged co-conspirator 21st Century Oncology LLC, investigated

---

[3] *Camden I* rejected the use in the Eleventh Circuit of the Third Circuit's *Lindy* lodestar method in cases involving a common fund. *See* 946 F.2d at 774. Consequently, many district courts hold that "in the Eleventh Circuit, 'the lodestar approach should not be imposed through the back door via a 'cross-check.'" *Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV-GOODMAN, 2016 U.S. Dist. LEXIS 50315, at *54 (S.D. Fla. Apr. 13, 2016) (quoting *In re Checking Account*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011)); *see also In re Rayonier Secs. Litig.*, 2017 U.S. Dist. LEXIS 167510, at *7 n.5 ("[C]onsistent with the Eleventh Circuit's discussion in *Camden I*, the Court has not tested the lodestar or relied upon it."). Even if this Court were to take the lodestar into consideration, the requested fee award results in a lodestar multiplier of no more than 1.82. (Robins Kaplan's lodestar through August 31, 2019 is $1,146,952 and Michael D. Fitzgerald's is $35,857.50. *See* O'Kelly Fee Decl. ¶¶ 8-10.) This is fair and reasonable, and consistent with the practice within the Eleventh Circuit. *See, e.g. Martin v. Global Mktg. Research Servs.*, No. 6:14-cv-1290, 2016 U.S. Dist. LEXIS 164770, at *10 n.4 (M.D. Fla. Nov. 30, 2016) (approving a lodestar multiplier of between two and three); *Holman v. Student Loan Express, Inc.*, 778 F. Supp. 2d 1306, 1314 (M.D. Fla. 2011) (Merryday, J.) (approving of multiplier of 1.77); *Elkins v. Equitable Life Ins. of Iowa*, No. 96-296-CIV-TB-17B, 1998 U.S. Dist. LEXIS 1557, at *104 (M.D. Fla. Jan. 27, 1998) (approving of a multiplier of "only 2.34"); *Ressler,* 149 F.R.D. at 653 n.4 ("[C]ourts in common fund cases regularly award multiples of 2 to 3 times lodestar in attorney's fees to reflect the quality of the work performed and the risks undertaken.").

[4] This includes 1673.40 hours spent by Robins Kaplan LLP and 68.30 hours by co-counsel Michael D. Fitzgerald. *See* O'Kelly Fee Decl. ¶¶ 8, 10.

implications of 21st Century's petition for bankruptcy protection, and filed the Antitrust Class Action Amended Complaint (*Id.* ¶ 11(b));

- Negotiated the Case Management Report, Protective Order, and ESI Protocol with FCS, and attended the initial case management conference (*Id.* ¶ 11(c));

- Submitted an opposition to Defendants' motion to dismiss (*Id.* ¶ 11(d));

- Between August and December 2018, received several rounds of pricing and collections data from FCS, and worked with economic consultants to analyze that data with a view to possible settlement (*Id.* ¶ 11(e));

- Prepared a mediation statement and participated in three mediation conferences (*Id.* ¶ 11(f));

- Negotiated the Settlement Agreement with FCS (*Id.* ¶ 11(g));

- Drafted and filed a motion for preliminary approval of settlement, and filed a response to Court's Order to Show Cause (*Id.* ¶ 11(h));

- Sought competitive bids from escrow agents, and retained Huntington National Bank; 11(i));

- Sought competitive bids from notice and settlement administrators, and retained Epiq (Id. ¶ 11(j));

- Engaged in extensive discussions with FCS and 21st Century regarding production of electronic collections data in sufficient detail to enable Epiq to run the notice and settlement distribution program (*Id.* ¶ 11(k)); and

- Drafted and filed motions for final approval of the Settlement, for approval of an incentive award for class representative County of Monmouth, New Jersey, and for an award of attorneys' fees and costs (*Id.* ¶ 11(l)).

Further work remains to be done. This includes:

- After the September 20, 2019, deadline for class members to opt out, determining whether the Exclusion Amount described in paragraph 40 of the Settlement Agreement has been triggered (*Id.* ¶ 12(a));

- If the Exclusion Amount has been triggered, discussing with FCS whether it intends to terminate the Settlement or, in the alternative, if the

Settlement Fund amount is to be reduced as provided in the Agreement (*Id.* 12(b));

- Assuming that the Settlement is not terminated, filing responses to objections to the Settlement on October 15, 2019 (*Id.* ¶ 12(c));

- Preparing for and participating in the fairness hearing (*Id.* ¶ 12(d));

- If the Court grants final approval to the Settlement and there is no appeal from the Court's decision, working with Settlement administrator to determine amounts to be paid to each class member and overseeing distribution of Settlement award (*Id.* ¶ 12(e)); and

- If there is an appeal from the Final Approval Order, responding to appeal at the Eleventh Circuit (*Id.* ¶ 12(f)).

All of this work is reasonable, and necessary for the successful prosecution of the case. There has been no unnecessary duplication of services for which Plaintiff's counsel now seeks compensation. O'Kelly Fee Decl. ¶ 16. Accordingly, this factor supports granting the requested fee.

## 2.   THE NOVELTY AND DIFFICULTY OF THE QUESTIONS INVOLVED

Antitrust conspiracies are notoriously complex and difficult to litigate. *See In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000) (stating that an "antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome."). The case presented difficult and complex legal issues, including tolling of the statute of limitations, antitrust standing, the definition of relevant product markets, and class-wide antitrust liability and damages, among others. O'Kelly Fee Decl. ¶13.

The process of analyzing FCS's pricing and collections data for purposes of a damage analysis was particularly complex and difficult here, and raised several novel

8

issues. For example, FCS treated patients with 23 different types of cancers during the Class period, each of which required different diagnostic and treatment regimes. *Id.* ¶14. In order to perform an overcharge damage analysis, it was necessary to compare the treatment regimes and costs of treatment for each type of cancer in the relevant geographic market in Southwest Florida with benchmarks derived from corresponding treatments and costs in other parts of Florida. *Id.* It was also necessary to devise an economic methodology that would account for statistical outliers among patient groups (for example, patients who received significantly less or more treatments than average for a particular cancer type, or patients whose cancer recurred and who thus required treatment over multiple years). *Id.* In light of complexities such as these, this factor weighs heavily in favor of approval of the requested fee. *See Cabot*, 2018 U.S. Dist. LEXIS 192706, at *8 (approving fee request where case "involved issues that were difficult, most notably, the calculation of damages"); *see also Elkins v. Equitable Life Ins. of Iowa*, No. 96-296-CIV-TB-17B, 1998 U.S. Dist. LEXIS 1557, at *104 (M.D. Fla. Jan. 27, 1998).

### 3. THE SKILL REQUIRED TO LITIGATE THIS CASE

This factor is intended to take into consideration the role that Plaintiff's counsel played in obtaining the results achieved in this complex case. *See Gibbs*, 2018 U.S. Dist. LEXIS 222801, at *19; *Ressler*, 149 F.R.D. at 654.

Plaintiff's counsel are highly skilled in the litigation, certification, trial, and settlement of complex class actions, particularly antitrust cases. Robins Kaplan has recovered enormous settlements and verdicts on behalf of its clients in many of the

nation's most notable antitrust actions. *See*, *e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 1:06-md-01775 (E.D.N.Y.) (lead counsel in decade-long litigation where the plaintiffs' cumulative recoveries surpassed $1.2 billion); *In re Auto. Parts Antitrust Litig.*, No. 2:13-cv-00803 (E.D. Mich.) (lead counsel, where partial settlements to date have now surpassed $1 billion); *In re Payment Card Interchange Fee & Merch. Discount Litig.*, No. 1:05-md-1720, 2019 U.S. Dist. LEXIS 13481 (E.D.N.Y. Jan. 28, 2019) (co-lead counsel on behalf of a class of over 10 million merchants, where the district court has preliminarily approved a record $6.25 billion settlement).

Eamon O'Kelly, whom the Court appointed as Class Counsel, has represented both plaintiffs and defendants in class actions for over twenty years. He represents plaintiffs in an antitrust class action pending in this District (where Robins Kaplan is co-lead counsel), in which both a settlement class and litigating class have been certified. *See* Order, ECF No. 841, *In re Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-02626-HES-JRK (M.D. Fla. July 10, 2018) (certifying settlement class); *In re Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-2626-J-20JRK, 2018 U.S. Dist. LEXIS 212329 (M.D. Fla. Dec. 4, 2018) (certifying litigation class). He has also represented defendants in numerous antitrust class actions including *Minn-Chem, Inc. v. Agrium. Inc.¸* 683 F.3d 845 (7th Cir. 2012); *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300 (3d Cir. 2010), *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 344 F.3d 1294 (11th Cir. 2003); *In Re Brand Name Prescription Drugs Antitrust Litig.*, 186 F.3d 781 (7th Cir. 1999).

The quality and experience of Robins Kaplan's attorneys, their skill in analyzing FCS's complex pricing and collections data, their willingness to press the Class's position in mediation, and Class Counsel's experience in negotiating settlements on behalf of both plaintiffs and defendants, were instrumental in bringing the settlement negotiations to a favorable conclusion here. It is also significant that Plaintiff's counsel litigated this case and achieved the settlement without the benefit or assistance of any governmental agency. Therefore, this factor also supports granting the requested fee. *See Gibbs*, 2018 U.S. Dist. LEXIS 222801, at *19; *Ressler*, 149 F.R.D. at 654.

### 4.    THE PRECLUSION OF OTHER EMPLOYMENT

This factor also favors granting the request for attorneys' fees. Here, in the time since Robins Kaplan began its initial investigation into the conduct at issue in February 2018, its attorneys and other professional staff spent a total of 1673.40 hours prosecuting the lawsuit. *See* O'Kelly Fee Decl. ¶ 8. Co-counsel Michael D. Fitzgerald spent a further 68.30 hours on the matter. *Id.* ¶ 10. Naturally, the "hours required to prosecute this action limited the amount of time and resources that Class Counsel was available to devote to other matters over the period of this litigation." *Gibbs*, 2018 U.S. Dist. LEXIS 222801, at *19-*20; *see also Cabot*, 2018 U.S. Dist. LEXIS 192706, at *10 (reasoning the time expended "precluded the principal attorneys involved from taking on other cases or pursuing other, meaningful employment.").

### 5.    THE CUSTOMARY FEE

The Court must also consider whether the requested fee is customary for this type of litigation: namely, a complex lawsuit brought on a pure contingent fee basis. In *Cabot*,

the court explained: "The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients. . . . In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." 2018 U.S. Dist. LEXIS 192706, at *10-*11(citing *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1340-41 (S.D. Fla. 2007)). In that case, the court held that "Class Counsel's request for one-third of the settlement amount is well within that range, and it is also consistent with what courts routinely award in class actions . . . ." *Id.* at *11. Similarly here, where the request is for 30% of the settlement amount, this factor weighs heavily in supporting Plaintiff's counsel's request.

### 6.   PLAINTIFF'S COUNSEL TOOK ON SIGNIFICANT RISK IN THIS CONTINGENT CASE

In the Eleventh Circuit, the risk of the litigation, especially in a contingent fee case, is a significant factor to be considered in deferring the award of appropriate fees. *See Cabot*, 2018 U.S. Dist. LEXIS 192706, at *12 (recognizing that "the undertaking of such risk *alone* can support a fee award of over 30% of the settlement fund.") (emphasis in original) (internal quotation marks omitted); *Elkins*, 1998 U.S. Dist. LEXIS 1557, at *102 ("Courts have long recognized, particularly in this Circuit, that the attorneys' contingent risk is an important factor in determining the fee award.").

Here, viewed from the perspective of the inception of the lawsuit, Plaintiff's counsel assumed very considerable risks. To prove a Sherman Act conspiracy claim, a plaintiff must establish not only that an antitrust conspiracy existed, but also that the conspiracy caused competitive injury and damages. *See, e.g., Atlantic Richfield Co., v.*

*USA Petroleum Co.*, 495 U.S. 328, 334 (1990); *Realcomp II, Ltd. v. FTC*, 635 F.3d 815, 824 (6th Cir. 2011); *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 314-15 (3d Cir. 2010). In addition, in a class action, a plaintiff has the added burden of satisfying the requirements of Rule 23, including establishing that common issues of law and fact prevail over individual ones, and of proving impact and damages on a classwide basis. Order at 4-5.

Thus, Plaintiff and Plaintiff's counsel would have had to overcome substantial obstacles, with no guarantee of success, if the lawsuit had to be litigated to a verdict rather than settled. FCS denies any liability and, before the Parties engaged in Court-ordered mediation, had moved to dismiss the Antitrust Class Action Amended Complaint on various grounds, including statute of limitations defenses and arguments about the sufficiency and plausibility of Plaintiff's allegations regarding the relevant market and the existence of an anticompetitive agreement. (Doc. 47) Although Plaintiff asserted strong arguments in opposition to the motion, the outcome could not be taken for granted.

If the Court denied the motion to dismiss and the action proceeded to discovery, Plaintiff and Class Counsel would face additional hurdles in winning a motion for class certification. Although Plaintiff is confident that it could establish antitrust impact and damages on a classwide basis, this is not a foregone conclusion. Pricing and billing in health care markets is exceptionally complex, and perhaps rarely more so than in oncology treatment. *See* section I.A.2, *supra*. No doubt FCS would try to use these complexities to its advantage in opposing certification of a litigating class.

FCS could also be expected to move for summary judgment, another obstacle that Plaintiff and Class Counsel would have to overcome in order to take the case to trial. Then, a jury trial in an antitrust case comes with its own set of complexities and risks, including the uncertain outcome of a "battle of the experts" before a lay jury. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (noting likely "battle of experts" at trial regarding damages would pose "great difficulty" for plaintiffs). Moreover, even if Plaintiffs prevailed at trial, litigation and the attendant uncertainties could continue for years through appeals. *See Bastian v. United Servs. Auto. Ass'n*, No. 3:13-cv-1454-J-32-MCR, 2017 U.S. Dist. LEXIS 180757, at *20-*21 (M.D. Fla. Nov. 1, 2017).

It is also important to note that Plaintiff's counsel prosecuted this class action on a contingent fee basis. If counsel had neither litigated the case to a favorable judgment nor settled with FCS, then counsel would not be compensated at all for its time and effort expended on the action (and would also be out of pocket for the full amount of its out-of-pocket expenses). Courts in the Eleventh Circuit have long emphasized the importance of generous fee awards in order to provide plaintiffs' lawyers with an incentive to prosecute contingency-fee cases. *See, e.g. Behrens*, 118 F.R.D. at 548 ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.") (citations omitted). In sum, this factor also weighs heavily in favor

of approving the fee petition. *See Cabot*, 2018 U.S. Dist. LEXIS 192706, at *12; *Elkins*, 1998 U.S. Dist. LEXIS 1557, at *102.

### 7.    THE AMOUNT INVOLVED AND THE RESULTS OBTAINED

The Eleventh Circuit explains that because the "common fund is itself the measure of success," the "monetary results achieved predominate over all other criteria." *Camden I*, 946 F.2d at 774. "Stated another way, the amount involved and results obtained is the most important factor in determining an award of attorneys' fees." *Gibbs*, 2018 U.S. Dist. LEXIS 222801, at *22 (internal quotation marks omitted).

It is important to note here the benefits of the early settlement achieved by Plaintiff's counsel, which spares the Class from the uncertainties and expense of protracted litigation. As one court in this district noted, "[i]f this case were not settled, the parties would need to complete discovery, class action-related motion practice and, if a class were certified, there would need to be a trial and then, if the plaintiffs prevailed, the defendants would appeal. All of this would require substantial expense." *Bastian*, 2017 U.S. Dist. LEXIS 180757, at *20-*21. Here, by contrast, the Settlement "is occurring early enough in the litigation that significant litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision." *Estate of Dolby v. Butler & Hosch, P.A.*, No. 8:03-CV-2246-T-23TGW, 2006 U.S. Dist. LEXIS 102738, at *16 (M.D. Fla. Aug. 4, 2006), *adopted by Merryday, J.,* 2006 U.S. Dist. LEXIS 60320 (M.D. Fla. Aug. 25, 2006).

Here, FCS will pay up to $7,187,500 in cash to a Settlement Fund, which will be distributed pro rata to the members of the Settlement Class. The cash payment represents

approximately 43.8 to 56.7% of Plaintiff's estimate of the damages attributable to FCS. O'Kelly Decl. ISO Motion for Preliminary Approval ¶ 10 (Doc. 80-2). Given the complexity and uncertainty of this complex class action, this is an excellent recovery. *See In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-MDL-1317-SEITZ/KLEIN, 2005 U.S. Dist. LEXIS 43082, at *19 (S.D. Fla. Apr. 19, 2005) (approving requested fee of one-third where recovery was between 40-60% of estimated damages); *Ressler*, 149 F.R.D. at 655 (reasoning the settlement is a "significant achievement in a case as fraught with peril as the litigation at bar. The settlement achieved in this lawsuit eliminates the potential risk of non-recovery. Instead of facing additional years of costly litigation, class members will now share in a substantial settlement fund.").

### 8. THE EXPERIENCE, REPUTATION, AND ABILITY OF PLAINTIFF'S COUNSEL

When evaluating the requested fee, district courts also consider the experience, reputation, and ability of Plaintiff's counsel, as well as that of Defendants' counsel. *See Gibbs*, 2018 U.S. Dist. LEXIS 222801, at *24; *Ressler*, 149 F.R.D. at 655. As set forth above, Plaintiff's counsel is experienced with a proven record of significant accomplishments. *See* Section I.B.3., *supra*. For their part, Defendants' counsel, from the firm of Foley & Lardner, are also highly experienced and respected. Therefore, this factor also supports the requested fee. *See Gibbs*, 2018 U.S. Dist. LEXIS 222801, at *24 (approving fee where "both Class Counsel and opposing counsel are experienced and respected lawyers with proven records of handling complex litigation, including class actions."); *Cabot*, 2018 U.S. Dist. LEXIS 192706, at *16-*17.

## 9.   THE UNDESIRABILITY OF THIS CASE

The undesirability of this case also weighs in favor of the requested fee. The "undesirability" of a case "is best demonstrated by the degree to which the case was attractive to other law firms." *Cabot*, 2018 U.S. Dist. LEXIS 192706, at *17-*18. Here, although the possibility that FCS and 21st Century had colluded to restrain competition in Oncology Services in Southwest Florida had become public knowledge by January 2017, no law firm other than Robins Kaplan stepped up to prosecute the matter as a class action. As set forth above, this action is fraught with risk and uncertainty, and it required prosecution by competent counsel who agreed to take it on a contingent basis. *Cf. Gibbs*, 2018 U.S. Dist. LEXIS 222801, at *24 (approving requested fee and reasoning, "this class action required representation by experienced counsel who agreed to take the case on a contingent-fee basis despite facing significant legal obstacles. The prospect of engaging in and financing protracted complex litigation without obtaining a favorable recovery is not highly desirable.").

## 10.   AWARDS IN SIMILAR CASES

The requested fee represents 30% of the Settlement Fund. The requested award is fair and reasonable, given the extensive effort that was required to settle this class action lawsuit at a relatively early stage of the case, thus sparing Plaintiff and the Class from incurring much larger litigation fees and expenses. The requested fee is also in line with similar awards in this Circuit. *See Camden I*, 946 F.2d at 774-75 ("The majority of common fund fee awards fall between 20% to 30% of the fund . . . an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been

awarded."). More recently, district courts find "the average percentage fee award in this Circuit is now at or above 30%, as courts within this Circuit have routinely awarded attorneys' fees of *33 percent or more* of the gross settlement fund." *Cabot*, 2018 U.S. Dist. LEXIS 192706, at *19 (emphasis in original) (internal quotation marks omitted) (collecting cases); *see also Morgan v. Pub. Storage,* 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) ("[A] fee award of 33% . . . is consistent with attorneys' fees awards in federal class actions in this Circuit . . . ."); *Reyes v. AT&T Mobility Servs., LLC*, No. 10-20837-Civ-COOKE/TURNOFF, 2013 U.S. Dist. LEXIS 202820, at *10 (S.D. Fla. June 21, 2013) ("Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit.") (collecting cases).

### 11. OTHER CONSIDERATIONS SUPPORT THE REQUESTED FEE AWARD

The Eleventh Circuit authorizes district courts to consider additional factors to determine whether a requested fee award should be granted, such as whether there are substantial objections to the settlement, non-monetary benefits conferred upon the class, the economics involved in prosecuting a class action, and public policy considerations. *See Camden I*, 946 F.2d at 775. Each of these factors also supports the fee requested here.

First, although Plaintiff disseminated notice of the Settlement to Class members on July 22, 2019, so far, there has been just one objection to the Settlement. *See* O'Kelly Fee Decl. ¶ 15.[5] As one court in this district observed, the "fact that there are no objections to either the Settlement or to petitioners' request for attorney's fees is strong

---

[5] Objections from Settlement Class Members are due to be filed by September 30, 2019. Class Counsel will respond to objections on or before October 15, 2019, as provided in the Preliminary Approval Order.

evidence of the propriety and acceptability of that request." *Ressler*, 149 F.R.D. at 656; *see also Elkins*, 1998 U.S. Dist. LEXIS 1557, at *105 ("The lack of objections is itself important evidence that the requested fees are fair.").

Additionally, the fact that the cash proceeds of the Settlement Fund will be distributed pro rata to the Class members without a burdensome claims process likewise militates in favor of the requested attorneys' fees because it "provides the best relief possible to class members: the prompt payment of money." *Ressler*, 149 F.R.D. at 656.

Finally, public policy also favors the award of attorneys' fees requested in this case. Indeed, "public policy favors the granting of counsel fees sufficient to reward counsel for bringing [class] actions and to encourage them to bring additional such actions." *Id*. at 657. This is particularly true for antitrust class actions, without which the goal of private enforcement of the antitrust laws "cannot be fully realized if large numbers of potential claimants are not afforded an efficient and cost-effective method of vindicating their claims. The class action device is well-suited to afford the desired access." *Columbus Drywall & Insulation v. Masco Corp.*, No. 1:04-cv-4066-JEC, 2012 U.S. Dist. LEXIS 196030, at *16-*17 (N.D. Ga. Oct. 26, 2012); *see also Alpine Pharmacy v. Chas. Pfizer & Co.*, 481 F.2d 1045, 1050 (2d Cir. 1993) ("In the absence of adequate attorneys' fee awards, many antitrust class actions would not be commenced, since the claims of individual litigants, when taken separately, often hardly justify the expense of litigation.").

### B.   THE REQUESTED EXPENSES ARE REASONABLE AND SHOULD BE REIMBURSED

The notice disseminated to the Settlement Class stated that counsel would seek reimbursement for expenses of up to $100,000.00 incurred in prosecuting the litigation. *See* Doc. 83-2 ¶ 10. The total amount of expenses through August 31, 2019, $68,939.38, is modest in relation to the overall value of the Settlement. *See id.* O'Kelly Fee Decl. ¶ 17. Moreover, $54,075 of that amount represents fees paid to Plaintiff's economic consultants for their assistance with the damage analysis. *See id.* These expenses were reasonable and necessary in this litigation, and have been expended for the direct benefit of the Class. *Id.* We respectfully request that these expenses be reimbursed in full. *See Gibbs*, 2018 U.S. Dist. LEXIS 222801, at *25 (approving requested costs as "reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class"); *Ressler*, 149 F.R.D. at 657 (approving requested expenses as reasonable and necessary).[6]

### C.   THE REQUESTED CLASS REPRESENTATIVE INCENTIVE AWARD IS REASONABLE

The notice also stated that counsel would seek an incentive award of up to $2,500 to be paid to Plaintiff County of Monmouth, New Jersey, as Class Representative. The Eleventh Circuit has held that:

---

[6] Plaintiff's counsel reserves the right to seek reimbursement of further expenses incurred after August 31, 2019 (for example, travel costs associated with the fairness hearing). In addition, Plaintiff will seek at a later time payment of Epiq's fees for settlement administration. Epiq has provided Robins Kaplan with an estimate of $251,862 for all of its work on this matter plus $4,794.20 for publication costs. Pursuant to Paragraph 35 of the Settlement Agreement, $39,069.69 has already been paid to Epiq for providing notice to the Class. The remaining $217,586.51 is only an estimate, and it is possible that the final amount to be paid to Epiq may be higher, possibly as much as $260,000.

> incentive awards may be given to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, to recognize their willingness to act as a private attorney general, and to induce an individual to become a named plaintiff. Although these considerations will certainly weigh differently in different cases, together they help illuminate the fact that class representatives have typically done something the absent class members have not—stepped forward and worked on behalf of the class. All of these justifications are legitimate, and district courts may exercise their discretion to determine whether they favor an incentive award in any given case.

*Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1197 (11th Cir. 2019) (internal citations, quotation marks, and alterations omitted). Here, the Court should authorize an incentive award in recognition of the Class Representative's efforts in pursuing this litigation.

On behalf of all Class Members, the Class Representative has spent time and effort in pursuit of the litigation and provided valuable assistance to Class Counsel. Namely, the Class Representative: (i) assisted in the initial investigation prior to the filing of the Complaint; (ii) reviewed the Complaint and other documents prior to filing; (iii) provided records of Plaintiff's payments to Defendants to assist with the damages analysis; (iv) considered whether the Settlement negotiated by Class Counsel was fair and reasonable; and (v) generally monitored the conduct of the litigation. *See* O'Kelly Fee Decl. ¶ 20. An incentive award of $2,500 is appropriate here. *See Gibbs*, 2018 U.S. Dist. LEXIS 222801, at *26-*27 (approving $5,000 incentive award where class representative "participated in reviewing documents, participated in discovery, and remained engaged throughout the course of the litigation").

The proposed incentive award is also reasonably proportionate to the amount of the settlement fund, and well within the range of incentive awards granted by courts in the Middle District of Florida. Notably, the total incentive award requested here ($2,500) is less than .04% of the Settlement Amount ($7,187,500), and thus is not disproportionate. *See, e.g., Baez v. LTD Fin. Servs.*, No. 6:15-cv-1043-ORL-40TBS (M.D. Fla. May 3, 2019) (Doc. 198) (approving $2,500 incentive award for class representative); *Speer v. Whole Foods Market Grp., Inc.*, No. 8:14-CV-3035-RAL-TBM (M.D. Fla. Jan. 15, 2016) (Doc. 68) (same); *MRI Assocs. of St. Pete v. Direct Gen. Ins. Co.*, No. 8:12-cv-2408-CEH-AEP (M.D. Fla. Dec. 12, 2015) (Doc. 84) (same); *Sherman v. Corizon Health, Inc.*, No. 2:12-cv-00635-JES-DNF, 2014 U.S. Dist. LEXIS 155738 (M.D. Fla. Oct. 29, 2014) (same), *adopted by*, 2014 U.S. Dist. LEXIS 155737 (M.D. Fla. Nov. 4, 2014); *Black v. Winn-Dixie Stores, Inc.*, No. 3:09-cv-502-J-32JRK, 2011 U.S. Dist. LEXIS 165694 (M.D. Fla. June 17, 2011) (same).

## CONCLUSION

For the reasons set forth herein, the requested attorneys' fees and expenses are fair and reasonable, and satisfy the applicable Eleventh Circuit standard, and an incentive award to the Class Representative would also be appropriate. Class counsel respectfully requests the Court to grant this motion and award (1) an attorneys' fee of 30% of the Settlement Fund (up to $2,156,250), (2) reimbursement of $$68,939.38 in litigation expenses, and (3) an incentive award of $2,500 to the named Plaintiff.

## LOCAL RULE 3.01(G) CERTIFICATION

Undersigned counsel certifies that he has conferred with Defendants' counsel,

Michael Matthews of Foley & Lardner LLP, who informed undersigned counsel that,

without adopting any statements made herein, Defendants do not oppose this motion.

Dated: September 9, 2019

Respectfully submitted,

/s/ Lawrence A Farese
Lawrence A. Farese
Florida Bar No: 252808
ROBINS KAPLAN LLP
711 Fifth Avenue South, Suite 201
Naples, FL 34102
(239) 430-7070
lfarese@robinskaplan.com

Eamon O'Kelly
Admitted *Pro Hac Vice*
Hollis Salzman
Florida Bar No. 947751
Kellie Lerner
Admitted *Pro Hac Vice*
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
(212) 980-7070
eokelly@robinskaplan.com
hsalzman@robinskaplan.com
klerner@robinskaplan.com

Michael D. Fitzgerald
1 Industrial Way West, Building B
Eatontown, New Jersey 07724
(732) 223-2200
Mdfitz@briellelaw.com

*Counsel for Plaintiff*

23

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | |
|---|---|
| COUNTY OF MONMOUTH, NEW JERSEY, on behalf of itself and all others similarly situated,<br><br>              Plaintiff,<br><br>vs.<br><br>FLORIDA CANCER SPECIALISTS, P.L.; and DR. WILLIAM N. HARWIN,<br><br>              Defendants. | Case No. 2:18-cv-201-SDM-MRM |

**PROOF OF SERVICE**

I hereby certify that, on September 9, 2019, a copy of the foregoing motion and this proof of service were served upon all counsel of record via ECF.

Dated: September 9, 2019           Respectfully submitted,

By:/s/ Lawrence A. Farese_____

Lawrence A. Farese
Florida Bar No: 252808
ROBINS KAPLAN LLP
711 Fifth Avenue South, Suite 201
Naples FL 34102
Tel: (239) 430-7070
Email: lfarese@robinskaplan.com

Eamon O'Kelly
Admitted *Pro Hac Vice*
Hollis Salzman
Florida Bar No. 947751
Kellie Lerner
Admitted *Pro Hac Vice*
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Tel: (212) 980-7400
Email: eokelly@robinskaplan.com
         hsalzman@robinskaplan.com
         klerner@robinskaplan.com

Michael D. Fitzgerald
1 Industrial Way West, Building B
Eatontown, New Jersey 07724
(732) 223-2200 Telephone
(732) 223-7299 Facsimile
Mdfitz@briellelaw.com

***Attorneys for Plaintiff***