# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

COUNTY OF MONMOUTH, NEW JERSEY, on behalf of itself and all others similarly situated,

                Plaintiff,

vs.

FLORIDA CANCER SPECIALISTS, P.L.; and DR. WILLIAM N. HARWIN,

                Defendants.

Case No. 2:18-cv-201-SDM-MRM

**PLAINTIFF'S (1) REPORT ON THE ADMINISTRATION OF THE SETTLEMENT FUND; (2) UNOPPOSED APPLICATION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SETTLEMENT ADMINISTRATOR'S FEES AND COSTS; AND (3) INCORPORATED MEMORANDUM OF LAW**

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND ....................................................................................................3

III. PLAINTIFF'S REQUEST FOR ADDITIONAL ATTORNEYS' FEES IS REASONABLE AND SHOULD BE GRANTED ..................................................9

IV. PLAINTIFF'S REQUEST FOR REIMBURSEMENT OF NECESSARY EXPENSES IS REASONABLE AND SHOULD BE GRANTED ...................12

V. THE FEES AND REIMBURSEMENTS SOUGHT BY THE SETTLEMENT ADMINISTRATOR ARE REASONABLE AND NECESSARY UNDER THE CIRCUMSTANCES ...........................................13

VI. ANTICIPATED FURTHER PROCEEDINGS ....................................................15

CONCLUSION ............................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Camden I Condominium Ass'n, Inc. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ............................................................................... 10, 11

*Elkins v. Equitable Life Ins. of Iowa*,
   No. 96-296-CIV-TB-17B, 1998 U.S. Dist. LEXIS 1557 (M.D. Fla. Jan.
   27, 1998) ..................................................................................................................... 12

*Holman v. Student Loan Express, Inc.*,
   778 F. Supp. 2d 1306 (M.D. Fla. 2011) (Merryday, J.) ........................................... 11

*Martin v. Global Mktg. Research Servs.*,
   No. 6:14-cv-1290, 2016 U.S. Dist. LEXIS 164770 (M.D. Fla. Nov. 30,
   2016) ........................................................................................................................... 11

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ................................................................................ 11

**Other Authorities**

Theodore Eisenberg, et al., *Attorneys' Fees in Class Actions: 2009-2013*,
   92 N.Y.U. L. Rev. 937 (2017) .................................................................................. 11

## I. INTRODUCTION

When asked to approve the Settlement Agreement[1] in this class action, the Court recommended that the Parties consider directly distributing settlement awards to the class members rather than requiring a claims process. The Court noted that a claiming requirement should not be necessary here, where (a) the Defendants and their alleged co-conspirators possess the records necessary to distribute the Settlement Fund to class members, and (b) a direct distribution would avoid the burdens that a claims process places on individual class members. Heeding the Court, the Parties arranged for a direct, pro rata distribution of the settlement proceeds.

The Court's preference for a direct distribution was vindicated by the results. Award checks were mailed to the 99.2 percent of the class members for whom there were valid addresses. Ultimately, about 55 percent of class members participated in the settlement by cashing their checks—comparing very favorably with the single-digit participation rates typical in class action settlements.

---

[1] Unless otherwise defined, capitalized terms have the same meaning ascribed in (a) the Settlement Agreement (Doc. 80-1); (b) Plaintiff's and Proposed Class Counsel's Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class, and Incorporated Memorandum of Law (Doc. 80); (c) Plaintiff's and Proposed Class Counsel's Memorandum in Response to Order to Show Cause (Doc. 83); (d) Plaintiff's Unopposed Motion for Final Approval of Class Settlement and Plan of Allocation, and Incorporated Motion of Law (Doc. 92); and (e) Plaintiff's Counsel's Application for (1) an Award of Attorney's Fees, (2) Reimbursement of Expenses, and (3) Class Representative's Incentive Award; and Incorporated Memorandum of Law (Doc. 93).

Unanticipated complications arose, however, with several health-plan class members that provide "administrative services only" (ASO) arrangements to self-insured clients. Typically, health plans must pass on their ASO clients' respective shares of any class settlement awards. As is discussed below, reconciling the providers' data with that of the insurers so that the award monies could properly be allocated required considerable cooperation and effort among the plans, the providers, and Class Counsel.

These difficulties were particularly acute in the case of Blue Cross & Blue Shield of Florida, Inc. ("Florida Blue"), the largest health insurer in the state. After more than a year's effort, Florida Blue has only recently been able to fully allocate its settlement award monies among itself, its ASO clients, and other interested parties. We are currently working with the settlement administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), to distribute those funds.

Class Counsel has accrued lodestar totaling $441,018.50 since filing our request for attorneys' fees in September 2019. Of this amount, $248,189.50 represents work that had not been anticipated at that time, arising out of the distribution to insurers. For the reasons set forth in Sections III and IV below, we respectfully request that the Court approve payment of additional attorneys' fees of $248,189.50 as well as reimbursement of expenses of $3,058.03.

Finally, the Court previously approved payment of fees and costs to Epiq in a maximum amount of $260,000.00. The actual amount invoiced by Epiq for the work envisioned in the 2019 request was $278,705.74. Epiq also accrued fees and incurred expenses in a total amount of $81,923.17 for its unanticipated work in reconciling the providers' data with that of the insurers. For the reasons discussed in Section V below, we recommend that the Court approve the payment of a total of $360,628.91 to Epiq.

## II. BACKGROUND

This antitrust class action lawsuit was filed on March 26, 2018. (Doc. 1). In its amended complaint, Plaintiff County of Monmouth, New Jersey alleged that Defendants Florida Cancer Specialists & Research Institute, LLC, f/k/a Florida Cancer Specialists, P.L. and Dr. William N. Harwin conspired with 21st Century Oncology LLC and Dr. Daniel Dosoretz to restrain competition and to monopolize relevant Oncology Services markets in Southwest Florida. (Doc. 27). Following court-ordered mediation, the Parties signed a Settlement Agreement on January 25, 2019, whereby FCS paid $7,187,500 in cash to a Settlement Fund to be distributed pro rata to the members of the Settlement Class, and FCS obtained a class-wide release of claims arising out of the alleged unlawful conduct; FCS denied any wrongdoing. (Doc. 80-1).

3

On February 22, 2019, Plaintiff moved for preliminary approval of the proposed Class Settlement. (Doc. 80). On April 4, 2019, then-Chief Judge Merryday entered an Order to Show Cause, in which he deferred ruling on the motion and raised certain concerns regarding the proposed Settlement. (Doc. 82). The parties took steps to address the Court's concerns, including amending the Settlement Agreement. (*See* Doc. 83).[2]

One of the concerns that Judge Merryday raised is germane to the present proceedings. Under the original version of the Settlement Agreement, class members would have had to submit claims in order to receive payments from the Settlement Fund. (*See* Doc. 82 at 8). Judge Merryday was troubled, however, by the considerable burdens that a claims process places on individual class members and the low rates at which class members submit claims in class actions generally. (*Id.* at 9). He stated that a claiming requirement should not be necessary here because FCS and 21st Century possess the records necessary to provide a satisfactory distribution of the Settlement Fund. (*Id.* at 8).

After conferring with FCS and 21st Century, Class Counsel informed the Court that the providers were able to produce sufficiently reliable data to allow

---

[2] The Court preliminarily approved the Settlement on June 5, 2019 (Doc. 86); notice was provided to the Class in July and August 2018 (*See* Doc. 92 at 11-12); Plaintiff moved for final approval on September 9, 2019 (Doc 92); a fairness hearing was held by Magistrate Judge Mac R. McCoy on October 29, 2019; on February 21, 2020, the Magistrate Judge recommended that the Settlement be approved (Doc. 102); and the Court granted final approval on March 17, 2020 (Doc. 104).

4

for a direct distribution of the settlement proceeds, with a pro rata distribution to class members. (Doc. 83 at 5-6). Moreover, the parties agreed that to the extent some class members' pro rata shares were de minimis, there would be a minimum payment of $5.00 to each class member. (Doc. 83 at 6; Doc. 92 at 8).

Then-Chief Judge Merryday's preference for a direct distribution was vindicated by the outcome for individual class members. On May 28, 2020, the settlement administrator Epiq mailed award checks to all 93,620 class members for whom Epiq had received potentially deliverable mailing addresses from FCS and 21st Century (that is, 99.2 percent of the 94,364 class members).[3] Pinkerton Decl. ¶¶12, 16. That is, close to 100 percent of class members received checks, and the total value of the checks distributed was $4,749,097.91. Pinkerton Decl. ¶15. Approximately 51,000 checks were cashed, representing an effective participation rate of about 55 percent of class members. Pinkerton Decl. ¶23. This compares very favorably with the typical participation rate of between one and ten percent in class actions with a claims process. Pinkerton Decl. ¶31.

The direct distribution gave rise to unanticipated complications with some health plan class members, however. Although health plans make up only about seven percent of the class members on a per capita basis, they received about 45

---

[3] There were 743 class members for whom Epiq could not locate a valid mailing address. Pinkerton Decl. ¶17. The Declaration of Brian Pinkerton ("Pinkerton Decl.") is attached hereto as Exhibit A.

percent of the total monies distributed. Pinkerton Decl. ¶33. Many insurance companies provide ASO arrangements to corporate clients, whereby a company self-funds its employee health insurance program while purchasing administrative services from a health plan. O'Kelly Decl. ¶4.[4] After health plans began to receive settlement checks, many of them had difficulties in allocating the amounts received, that is, determining how much should go to the health plan itself and how much to its ASO clients. *Id.*

From the perspective of a provider like FCS, there is no visible distinction between a patient whose coverage is fully underwritten by her employer via an ASO and a participant in the same health plan whose coverage is underwritten by the insurance company. O'Kelly Decl. ¶5. The health plan membership cards that patients present to the provider are the very same, regardless of who is underwriting the insurance risk. *Id.* Thus, if FCS reported to Class Counsel and Epiq that it had been paid a total of X dollars from a hypothetical Health Plan Y during the class period, Epiq would calculate a settlement award based on the X dollars and mail a check for that amount to Health Plan Y. O'Kelly Decl. ¶6.

---

[4] The Declaration of Eamon O'Kelly in Support of Plaintiff's Report on the Status of the Settlement Fund Administration; Unopposed Application for Additional Attorneys' Fees, Reimbursement of Expenses, and Settlement Administrator's Fees and Costs ("O'Kelly Decl.") is attached hereto as Exhibit B.

6

The distinction between a patient insured by her employer through an ASO contract and one insured by the insurance carrier matters greatly to the health plans, however. Typically, health plans are obligated to pass on to their ASO clients any portion of the class action award that derived from transactions where those ASO clients were the real end-payers. O'Kelly Decl. ¶7. Thus, when the hypothetical Health Plan Y received the check from Epiq, it would need to determine what portion of the money was its to keep and what portion should be passed on to ASO clients. *Id*.

This turned out to be easier said than done for certain health plans, including those managed by Florida Blue, the largest health insurance company in Florida and the largest provider of ASO services in the state. O'Kelly Decl. ¶8. Matching up transactions in the FCS and 21st Century data with Florida Blue's own payment databases proved very difficult, for reasons that included: differences between the abbreviated names for specific health plans in the providers' data versus plan names in Florida Blue's records; changes in Florida Blue group numbers over the almost nine-year class period; inability to cross-reference policy number information in the 21st Century data with Florida Blue's own policies; and data entry errors and gaps in information collected at the time of service. *Id*.

In order to help Florida Blue and other insurance companies to overcome such difficulties and allocate award monies to their rightful owners, FCS and 21st Century provided insurers with detailed data that drilled down to the level of individual patients and individual transactions, a process that also involved considerable input by Class Counsel. O'Kelly Decl. ¶9.

Such issues had been resolved for most insurers by the original "Void Date" (the date by which settlement award checks became stale), September 25, 2020—except for Florida Blue. O'Kelly Decl. ¶10. Despite extensive cooperation among Florida Blue itself, the providers, and Class Counsel, it took until August 2021 for Florida Blue to identify definitively the beneficial owners of a substantial portion of the settlement award monies paid to its health plans. *Id.*

(a) In March, 2021 checks in a total amount in excess of $1 million payable to Florida Blue plans had remained uncashed, and at that time Florida Blue authorized us to send $552,848.80 out of that amount to its own bank account (for itself and its ASO clients) and to the Federal Employee Program ("FEP"). *Id.*[5]

(b) Florida Blue has now requested us to distribute the remaining $533,822.47 to: (i) itself and its ASO clients; (ii) FEP; and (iii) over 50

---

[5] Florida Blue provides ASO-like services to the Blue Cross and Blue Shield Service Benefit Plan a/k/a Federal Employee Program, a health insurance program for government employees. O'Kelly Decl. ¶10.

8

Blue Cross/Blue Shield plans in other states for which Florida Blue acted under the BlueCard program. *Id.*; Pinkerton Decl. ¶21.[6] Moreover, because of the length of time that the reconciliation process took, the Void Date for Florida Blue had to be extended several times, with the final extension now running to October 31, 2021. Pinkerton Decl. ¶22; O'Kelly Decl. ¶11.

## III. PLAINTIFF'S REQUEST FOR ADDITIONAL ATTORNEYS' FEES IS REASONABLE AND SHOULD BE GRANTED

In our motion for attorneys' fees submitted on September 9, 2019, we requested fees of $2,156,250 or 30% of the total Settlement Fund (Doc. 93 at 1), a request that was approved by the Court. (Doc. 104 at 3-5). In the motion, we advised the Court that: (a) Robins Kaplan's total accrued fees (lodestar) through August 31, 2019 amounted to $1,146,952 and co-counsel Michael D. Fitzgerald's lodestar was $35,857.50; (b) necessary work on the matter was ongoing; and (c) we anticipated further additional work would be required to bring this matter to a close. (Doc 93 at 6-8). We stated that the requested fees were intended to compensate us both for the lodestar accrued through August 31, 2019 and for specific, anticipated current and future work necessary to obtain final approval

---

[6] BlueCard is a national program that enables members of one BCBS plan to obtain health care services while traveling or living in another BCBS plan's service area. O'Kelly Decl. ¶10.

9

of the Settlement, to distribute the Settlement Fund to class members, and to bring the settlement administration to a conclusion. (Doc 93 at 6-8).

We did not anticipate at that time, however, the considerable additional work that would be required to help health plans, and especially Florida Blue, to reconcile their settlement awards with their own claims records. O'Kelly Decl. ¶12. Since August 31, 2019, Robins Kaplan has devoted approximately 516 hours of attorneys' and paralegals' time to this matter and has accrued fees totaling $441,018.50. O'Kelly Decl. ¶13. On reviewing these time entries, we have determined that $192,829 of this amount is attributable to work that was anticipated in our September 2019 attorneys' fee application and thus for which we have already been compensated. *Id.* The remaining $248,189.50 represents unanticipated work arising out of the distributions to insurers, and especially Florida Blue. *Id.* Therefore, we now respectfully request additional attorneys' fees of $248,189.50 to compensate Robins Kaplan for that additional work.

The requested fees of $248,189.50 combined with the previous fee award of $2,156,250 amount to approximately 33 percent of the total Settlement Fund, O'Kelly Decl. ¶14, which is well within the range of reasonableness for fees in class actions in the Eleventh Circuit. In *Camden I Condominium Ass'n, Inc. v. Dunkle*, the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case.

10

Henceforth in this [C]ircuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." 946 F.2d 768, 774 (11th Cir. 1991).

The Court has discretion in determining an appropriate fee. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Id.* "The majority of common fund fee awards fall between 20% to 30% of the fund" – though "an upper limit of 50% of the fund may be stated as a general rule." *Id*. at 774-75; *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (approving fee award where the district court determined that the benchmark should be 30% and then adjusted the fee award higher in view of the circumstances of the case); Theodore Eisenberg, et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 951 (2017) (showing, through an empirical study, that the median fee award in Eleventh Circuit is 33% and the mean is 30%). Plaintiff's counsel's fee request falls within this accepted range.[7]

---

[7] *Camden I* rejected the use in the Eleventh Circuit of a lodestar multiplier method in cases involving a common fund. *See* 946 F.2d at 774. Even if this Court were to take the lodestar into consideration, the requested fee award combined with the previous award results in a lodestar multiplier of approximately 1.50. *See* O'Kelly Decl. ¶15. This is fair and reasonable, and consistent with the practice within the Eleventh Circuit and this district. *See, e.g. Martin v. Global Mktg. Research Servs.*, No. 6:14-cv-1290, 2016 U.S. Dist. LEXIS 164770, at *10 n.4 (M.D. Fla. Nov. 30, 2016) (approving a lodestar multiplier of between two and three); *Holman v. Student Loan Express, Inc.*, 778 F. Supp. 2d 1306, 1314 (M.D. Fla. 2011) (Merryday, J.) (approving multiplier of

11

## IV. PLAINTIFF'S REQUEST FOR REIMBURSEMENT OF NECESSARY EXPENSES IS REASONABLE AND SHOULD BE GRANTED

The notice disseminated to the Settlement Class stated that counsel would seek reimbursement for expenses of up to $100,000 incurred in prosecuting the litigation. (*See* Doc. 83-2 ¶ 10). The Court granted Plaintiff's counsel's request for reimbursement of $68,939.38 in expenses incurred through August 31, 2019, including economic experts' fees of $54,075, and found that they were reasonable and necessary in this litigation. (Doc. 102 at 27-28; Doc. 104 at 4-5). Plaintiff's counsel expressly reserved the right to request reimbursement of further necessary expenses incurred after August 31, 2019. (Doc. 93 at 20 n.6). Counsel now respectfully requests the reimbursement of expenses in a total amount of $3,058.03, as follows:

- $1,927.37 incurred by Robins Kaplan, mainly in connection with attending the October 31, 2019 fairness hearing, Mendel Decl. ¶4; and

- $1,130.66 incurred by Michael D. Fitzgerald, also in connection with the fairness hearing. Fitzgerald Decl. ¶4.[8]

These expenses are reasonable and were necessary for purposes of this lawsuit.

---

1.77); *Elkins v. Equitable Life Ins. of Iowa*, No. 96-296-CIV-TB-17B, 1998 U.S. Dist. LEXIS 1557, at *104 (M.D. Fla. Jan. 27, 1998) (approving a multiplier of "only 2.34").

[8] The Declaration of Adam C. Mendel in Support of Plaintiff's Unopposed Motion for Reimbursement of Expenses ("Mendel Decl."), and Declaration of Michael D. Fitzgerald in Support of Plaintiffs' Unopposed Motion for Reimbursement of Expenses ("Fitzgerald Decl.") are attached hereto as Exhibits C and D, respectively.

12

## V. THE FEES AND REIMBURSEMENTS SOUGHT BY THE SETTLEMENT ADMINISTRATOR ARE REASONABLE AND NECESSARY UNDER THE CIRCUMSTANCES

Before the fairness hearing, the settlement administrator Epiq provided Robins Kaplan with an itemized estimate of $217,586.51 for its remaining work in administering the settlement, but noted that the final amount might be higher, as much as $260,000. (Doc. 93 at 20 n.6); Pinkerton Decl. ¶5. In his February 21, 2020 Report and Recommendation, Magistrate Judge McCoy found the estimated cost of providing settlement administration services to be reasonable and recommended that "the potential requested amount estimated at $217,586.51.00, but possibly as much as $260,000.00 be approved." (Doc. 102 at 30). The Court approved this on March 17, 2020. (Doc. 104).

As Epiq explains in the Declaration of its Senior Project Manager Brian Pinkerton, that budget turned out to be substantially underestimated for reasons that were not foreseen at the time. Epiq's estimate was based on an assumption that the administration would be concluded in a matter of months after the fairness hearing whereas it is still continuing. Pinkerton Decl. ¶¶27-28. Epiq did not anticipate the volume of usage of the toll-free number by class members (a consequence of the extraordinarily high participation rate). Calls to the toll-free number and time spent by class members were more than double the estimated volume, and the amount invoiced for those calls alone through June 2020 was

13

over $58,000. Pinkerton Decl. ¶30. Epiq also underestimated the higher-than-usual participation rate by class members attributable to the direct distribution versus a claims process. Pinkerton Decl. ¶31. Epiq's total fees and expenses for this portion of the settlement administration were $278,705.74, about $18,700 over the maximum $260,000 approved by the Court. Pinkerton Decl. ¶29.

Epiq's 2019 budget also did not anticipate the extensive work that had to be undertaken after the settlement award checks were mailed out to health plan class members. Pinkerton Decl. ¶¶32-34. Specifically, Epiq spent considerable amounts of time working to help Florida Blue determine how to allocate settlement award payments among Florida Blue's health plans and their ASO clients, and reissuing payments as directed by Florida Blue. Pinkerton Decl. ¶33-34. Epiq's total fees and expenses in connection with this extra work are $81,923.17. Pinkerton Decl. ¶32.

Under the circumstances, Class Counsel believes that the total amount invoiced by Epiq in connection with administration work in this matter — $360,628.91 — is reasonable and necessary, and requests that the Court approve payment to Epiq of this sum.[9]

---

[9] There will be some additional administrative work required in connection with winding up the Settlement Fund and Epiq likely will seek additional fees in connection with this work. Epiq estimates that these fees will not exceed $25,000 if a second distribution to members of the class is not required. *See* Pinkerton Decl. ¶36.

## VI.   ANTICIPATED FURTHER PROCEEDINGS

The plan of allocation as originally presented to the Court stated that if a balance remains in the settlement fund after initial distributions and the Void Date has passed, and it is not economical to make a second-round distribution, Class Counsel *may* request approval from the Court to distribute the balance to "charities or other appropriate beneficiaries." (Doc. 92-1) (emphasis added). At the fairness hearing, the Court expressed concern about the apparently permissive nature of this provision, and ultimately the Settlement was approved subject to the plan of allocation being modified to *require* Court approval to distribute any remaining balance of the Settlement Fund. (Doc. 102 at 19; Doc. 104 at 3). There currently is a balance of $1,790,970.17 in the fund. Pinkerton Decl. ¶26. Class counsel anticipates that there will be a balance remaining in the Fund after all awards and other payments have finally been disbursed and that Court approval for the disposition of those monies will be sought. But until after the monies that are owed to Florida Blue and its counterparties have been distributed and all checks cashed, any such request would be premature.

## CONCLUSION

Plaintiff respectfully requests that the Court approve the payment from the Settlement Fund of attorneys' fees in the amount of $248,189.50, reimbursement

of expenses in the amount of $3,058.03, and payment of reasonable and necessary fees and costs to the settlement administrator in the amount of $360,628.91.

## LOCAL RULE 3.01(G) CERTIFICATION

Undersigned counsel certifies that he has conferred with Defendants' counsel, Michael Matthews of Foley & Lardner LLP, who informed undersigned counsel that, without adopting any statements made herein, Defendants do not oppose this motion.

Dated: August 26, 2021          Respectfully submitted,

/s/Eamon O'Kelly_____
Eamon O'Kelly (admitted pro hac vice)
Kellie Lerner (admitted pro hac vice)
Adam C. Mendel (admitted pro hac vice)
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
(212) 980-7400
eokelly@robinskaplan.com
klerner@robinskaplan.com
amendel@robinskaplan.com

Michael D. Fitzgerald
1 Industrial Way West, Building B
Eatontown, New Jersey 07724
(732) 223-2200
Mdfitz@briellelaw.com

*Counsel for Plaintiff, County of Monmouth, New Jersey*

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | |
|---|---|
| COUNTY OF MONMOUTH, NEW JERSEY, on behalf of itself and all others similarly situated,<br><br>                    Plaintiff,<br><br>vs.<br><br>FLORIDA CANCER SPECIALISTS, P.L.; and DR. WILLIAM N. HARWIN,<br><br>                    Defendants. | Case No. 2:18-cv-201-SDM-MRM |

**PROOF OF SERVICE**

I hereby certify that, on August 26, 2021, a copy of the foregoing and this proof of service were served upon all counsel of record via ECF.

Dated: August 26, 2021                    Respectfully submitted,

                                          */s/Eamon O'Kelly*_____
                                          Eamon O'Kelly (admitted pro hac vice)
                                          ROBINS KAPLAN LLP
                                          399 Park Avenue, Suite 3600
                                          New York, NY 10022
                                          (212) 980-7400
                                          eokelly@robinskaplan.com

                                          *Class Counsel and Attorney for Plaintiff*