# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| COUNTY OF MONMOUTH, NEW JERSEY, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FLORIDA CANCER SPECIALISTS, P.L.; AND DR. WILLIAM N. HARWIN,<br><br>Defendants. | Case No. 2:18-cv-201-SDM-MRM<br><br>**SUPPLEMENTAL DECLARATION OF BRIAN PINKERTON REGARDING PAYMENTS TO THE CLASS AND SETTLEMENT ADMINISTRATION** |

### DECLARATION OF BRIAN PINKERTON

I, Brian Pinkerton, declare as follows:

1. I am a Senior Project Manager for Epiq Class Action & Claims Solutions, Inc. ("Epiq") an international settlement and claims administration firm with offices in Chicago, Dallas, Hartford, Hong Kong, Kansas City, London, Los Angeles, Miami, New York, Oklahoma City, Phoenix, Portland, Tokyo, Washington, D.C., and Wilmington, Delaware. My business address is 1201 Third Avenue, Suite 500, Seattle, Washington 98101. The following statements are based on my personal knowledge and information provided by other Epiq employees working under my supervision, and if called on to do so, I could and would testify competently about these issues.

2. As noted in my Declaration re Notice and Settlement Administration dated September 6, 2019 (the "Pinkerton Notice Declaration"), Epiq was selected by the Parties and appointed as the settlement administrator in the above captioned class action by the Court's Order dated June 5, 2019, which granted preliminary approval to the Settlement (the "Preliminary Approval") [1].

---
[1] All capitalized terms not otherwise defined in this document shall have the same meaning ascribed to them in the Settlement Agreement.

1
DECLARATION

3. I submit this supplemental declaration to update the Parties and the Court regarding the distribution of the Settlement Fund in accordance with the Court-approved Plan of Allocation and to provide information about Epiq's fees and costs for settlement administration services pursuant to the Settlement Agreement (the "Agreement") and Orders of the Court.

4. Under the terms of the Agreement, Epiq's duties as settlement administrator include, but are not limited to, disseminating direct notice of the proposed settlement to Settlement Class Members; publishing notice of the proposed settlement in two print newspapers with distribution across Southwest Florida; receiving and processing requests for exclusion from the settlement; and calculating and distributing settlement award checks to Settlement Class Members in accordance with the terms of the Agreement, the proposed Plan of Allocation, and orders of the Court.

## BACKGROUND

5. On September 9, 2019, class counsel filed an Application for (1) an Award of Attorneys' Fees, (2) Reimbursement of Expenses, and (3) Class Representative's Incentive Award ("Application for Fees") (Doc 93). In the Application for Fees, class counsel noted that Epiq had provided Robins Kaplan with an estimate of the costs to provide notice and administer the settlement and that Plaintiff would seek payment of Epiq's fees in an amount of at least $217,586.51, and possibly as much as $260,000, at a later time (Id. at fn. 6).

6. On February 21, 2020, Magistrate Judge Mac R. McCoy filed a Report and Recommendation in which he recommended, among other things, that "[t]he Court find the cost estimate of Epiq's services in providing settlement administration services reasonable and approve the potential requested amount estimated at $217,586.51, but possibly as much as $260,000.00." (Doc. 102, Conclusion 6).

7. On March 17, 2020, the Court issued an Order Adopting the Report and Recommendation; Granting Plaintiff's motion for final approval of the Settlement and amended Plan of Allocation; Granting Plaintiff counsel's motion for an attorney's fee, for the reimbursement of expenses, and for an incentive award; and directing distribution of the Settlement Fund ("Final Approval Order") (Doc. 104).

8. In the Final Approval Order, the Court noted in footnote 2:

Regarding administration expenses, the report observes that, although "counsel does not address whether the expenses Epiq incurred were reasonable or necessary," the magistrate judge considers the administration expenses to be fair and reasonable. However, because no party moves for an administration expense, the matter is aptly "tabled" until a motion appears.

## **DISTRIBUTION OF SETTLEMENT FUND**

9. The total amount deposited into the Settlement Fund by Defendants was $7,187,500.00.

10. Prior to distribution, the Settlement Fund was held in an interest-bearing account. In total, the Settlement Fund earned $49,639.61 in interest, which brought the total gross Settlement Fund amount to $7,237,139.61.

11. In accordance with the Court's Final Approval Order, on April 17, 2020, the attorney's fee award of $2,156,250.00, the expenses award of $68,939.38, and the incentive award for Monmouth County in the amount of $2,500.00 were distributed from the Settlement Fund to class counsel.

12. The Net Settlement Fund (the Settlement Fund less Attorney's fees and costs, incentive award for the named Plaintiff, and Epiq's estimated administration costs of $260,000) to be distributed to the 94,364 Settlement Class Members totaled $4,749,450.23.

13. In accordance with the amended Plan of Allocation, Epiq calculated the *pro rata* settlement payments for all Settlement Class Members who had made a net payment of $0.01 or greater to 21st Century Oncology LLC ("21st Century") and Florida Cancer Specialists & Research Institute, LLC, f/k/a Florida Cancer Specialists, P.L. ("FCS") according to the Settlement Class Data provided by 21st Century and FCS and who had not opted out. In total, there were 94,364 Settlement Class Members whose combined payments to 21st Century and FCS totaled more than $0 who did not request exclusion from the settlement.

14. Pursuant to the approved Plan of Allocation, the Settlement Award payments that calculated to less than $5 based on the amounts each Settlement Class Member had paid to 21st Century and FCS were increased to $5, so that no Settlement Class Member would receive less

than $5. There were 81,145 Settlement Class Members whose awards were increased to the $5 minimum payment.

15. The value of all of the payments to Settlement Class Members totaled $352.32 less than the Net Settlement Fund due to rounding: $4,749,097.91.

16. On May 28, 2020, Epiq mailed Settlement Award checks to all 93,620 Settlement Class Members for whom Epiq had a potentially deliverable mailing address. Prior to mailing checks, Epiq performed skip-trace address searches for the Settlement Class Members whose Class Notices had been returned as undeliverable by the United States Postal Service ("USPS"), and mailed their checks to the updated addresses when one could be located.

17. There were 743 Settlement Class Members whose Class Notice had been returned undeliverable prior to May 28, 2020 for which Epiq was not able to locate a better address. The payments to these Settlement Class Members, which totaled $26,077.36, were not mailed.

18. The settlement checks issued on May 28, 2020 were negotiable for 120 days from their issue date ("check stale date").

19. Replacement checks were issued (a) upon Settlement Class member requests, and (b) when checks were returned by USPS with a forwarding address. As of August 13, 2021, Epiq has re-issued a total of 715 checks totaling $485,023.64, including 309 checks totaling $478,466.23 issued to various health plans associated with Blue Cross and Blue Shield of Florida ("Florida Blue").

20. In addition to the 715 re-issued checks, at the request of Florida Blue and approved by class counsel, Epiq also voided 31 checks totaling $639,554.15, which had been issued to health plans administered by Florida Blue, and re-distributed a total of $552,848.80 in two payments: a wire payment of $497,385.46 to Florida Blue on March 26, 2021, and a check in the amount of $55,463.34 to Blue Cross and Blue Shield Service Benefit Plan a/k/a Federal Employee Program ("FEP") mailed on March 29, 2021. The remaining $86,705.35 from the voided Florida Blue checks remains undistributed as of August 13, 2021.

21. In addition to the above-referenced request, Florida Blue has recently asked class counsel to instruct Epiq to void another 159 checks totaling $447,117.12, which were issued to

health plans administered by Florida Blue, and re-distribute those funds, as well as the $86,705.35 remaining from the March 2021 re-distribution, as follows: (a) a wire payment in the amount of $386,406.72 to Florida Blue; (b) a check in the amount of $38,800.04 to FEP; and (c) the remaining $108,615.71 to other Blue Cross/Blue Shield health plans whose claims arising out of payments to FCS and 21st Century were administered by Florida Blue. The total amount to be distributed by Epiq under this recent request is $533,822.47.

22. By agreement of the Parties, the check stale date was extended multiple times to allow Epiq to honor additional re-issue requests. The final check stale date that was agreed to by the Parties was April 15, 2021. The check stale date has now been extended further to October 31, 2021 to accommodate the above-referenced re-issuance of checks to various health plans associated with Florida Blue.

23. As of August 13, 2021, approximately 51,000 checks were cashed. The total amount of funds successfully received by the Settlement Class, including all checks, the wire payment to Florida Blue, and the supplemental check issued to FEP, was $3,200,477.31.

24. As of August 13, 2021, checks totaling $1,522,543.24 were not negotiated and are now void. This includes the $533,822.47 now being reissued at the request of Florida Blue..

25. A small number of Settlement Class Members negotiated their settlement checks, but later returned the funds to the Settlement Fund. As of August 13, 2021, $21,066.94 has been returned to the Settlement Fund by Settlement Class Members.

26. As of August 13, 2021, the total amount in the Settlement Fund account, including unclaimed funds, and the amount held out of distribution for the payment of Epiq's administration services (but not yet paid to Epiq), is $1,790,970.17. However, this amount will be reduced by the $533,822.47 that Epiq is in the process of distributing to Florida Blue, FEP, and the other health plans.

**ADMINISTRATION COSTS**

27. In September 2019, Epiq provided class counsel with an estimate of the total amount of Epiq's fees for settlement administration, which indicated that the most Epiq expected to bill was "possibly as much as $260,000" (the "September estimate"). (*See* Doc. 93). The September

estimate was based on certain known factors, such as the size of the Class, the number of notices mailed, and the number of checks to be mailed; as well as assumptions about how long the administration would last, and the volume of calls and correspondence from Settlement Class Members.

28. The September estimate was prepared under the assumption that the total duration of the settlement administration period from that point on would be approximately nine months (through June of 2020). With the Fairness Hearing scheduled for October 29, 2019, Epiq assumed for the sake of the estimate that final approval would be granted in late 2019, payments would be issued within about 60 days of the Court granting final approval, the check stale date of 120 days from the issue date would fall in May 2020, and the administration would be completed in June 2020.

29. The amount requested by Epiq for administrative fees and expenses from the beginning of the case through June 2020, including the cost of distributing checks to Settlement Class Members, totals $278,705.74, which is approximately $18,700 or 7.2% above the high-end of the September estimate.

30. The overages primarily related to Epiq handling communications with Settlement Class Members, which were much higher than expected. Through June 2020, Settlement Class Member calls to the interactive recorded information line and time spent speaking with live agents, which are billed per-minute, were more than double the estimated volumes. The per-minute fees for Settlement Class Member calls through June 2020 exceeded $58,000.

31. Based on my extensive experience in class action settlement administration, two factors likely contributed to the increase in Settlement Class Member inquiries and communications: 1) the lack of a claims requirement meant that more Settlement Class Members could participate in the settlement without having to decide whether it would be worth the effort of submitting a claim, and the notice they received informed them that they would receive money, which increases interest in the settlement; and 2) the length of time between the initial notice to the Class and the distribution date caused more Settlement Class Members to inquire about the status of their payment. In a typical claims-made settlement in which Class Members must submit a claim

in order to receive a benefit from the settlement, the level of participation varies based on several factors including the amount of the benefit and how much effort is required to submit a claim. In my experience, a typical claims rate would be somewhere between 1 and 10 percent for a class of this size.

32. In addition to the amount billed through June 2020, Epiq has invoiced $81,923.17 through June 2021 for work beyond what was contemplated by the September estimate.

33. The work performed after settlement payments were distributed on May 28, 2020 goes beyond the scope of the work that was contemplated at the time of the September estimate and the additional fees are reasonable. The administration has now stretched over a year beyond the timeframe used for the September estimate. Additionally, the scope of work has expanded due to the need for Epiq to work with various health plan Class Members to determine the appropriate payees for the settlement payments they received and re-allocate those payments as directed. Each month that the administration remains active there are monthly costs that accrue. More significantly, however, is the extensive amount of time that Epiq ended up having to spend communicating with the health plans and class counsel to assist the health plans with determining how each payment should be distributed amongst their clients, then updating the Class database to re-issue payments to different entities as directed by the health plan Class Members. While health plans make up only about seven percent of the Class, they account for approximately 45% of the total value of settlement payments distributed.

34. In order to assist health plan Class Members with determining the proper allocation of the settlement payments they received based on the original payments made to 21st Century and FCS during the Class Period, Epiq was asked to prepare numerous custom reports for class counsel and the health plan Class Members to match their settlement payments to the amounts paid and plan numbers from the original Class Data.

35. With the initial distribution date of May 28, 2020, the check stale date was originally scheduled to be September 25, 2020. However, the administration is still active and the check void date was extended multiple times to October 31, 2021 by agreement of the Parties in accordance with the Agreement. These extensions were granted in order to allow additional time for health plan

Class Members to research and determine the proper allocation of their settlement payments between themselves and their clients based on who made the underlying payments to 21st Century and FCS. As detailed above, Epiq is still in the process of performing additional administration work to re-allocate and re-issue payments relating to health plans administered by Florida Blue.

36. Based on the work remaining to be completed, including the re-distribution to Florida Blue, the filing of another annual tax return for the QSF, ongoing Settlement Class Member communications, and the handling of residual Settlement Funds, Epiq anticipates that it will require an additional $25,000 to close out the administration. This amount assumes that the administration will be completed by the end of October. The amount would be greater, however, if the Court were to require additional distributions to the class or otherwise extend the settlement administration.

37. To summarize, the amount of administrative fees and expenses that Epiq will be requesting includes the $278,705.74 through June 2020 and $81,923.17 invoiced from July 2020 through June 2021, which totals $360,628.91. Due to the additional time that the settlement administration has been active, the additional work required to allow health plan Class Members to determine the proper allocation of their settlement payments under the terms of the Agreement, and the considerable volume of Settlement Class Member communications, Epiq requests approval to deduct of administration fees up to $349,519.82 from the Settlement Fund.

38. Moreover, as noted in paragraph 35 above, Epiq anticipates requesting an estimated additional $25,000 for the remainder of the administration.

I declare under penalty of perjury under the laws of the United States that the foregoing is information true and correct.

Executed this 25th day of August 2021, at Kent, WA.

_____
Brian Pinkerton

8
DECLARATION