# EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| COUNTY OF MONMOUTH, NEW JERSEY, on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>FLORIDA CANCER SPECIALISTS, P.L.; and DR. WILLIAM N. HARWIN,<br><br>        Defendants. | Case No. 2:18-cv-201-SDM-MRM |

**DECLARATION OF EAMON O'KELLY IN SUPPORT OF
PLAINTIFFS' APPLICATION FOR ADDITIONAL
ATTORNEYS' FEES; REIMBURSEMENT OF EXPENSES; AND
SETTLEMENT ADMINISTRATOR'S FEES AND COSTS**

    1.    I am Of Counsel at Robins Kaplan LLP, and am Class Counsel and counsel for named plaintiff Monmouth County, New Jersey, in *County of Monmouth v. Fla. Cancer Specialists, P.L., et al.*, No. 2:18-cv-201 (M.D. Fla.). I have personal knowledge of the facts stated herein and, if called upon to do so, I could and would testify competently thereto.

    2.    I submit this declaration in support of Plaintiffs' application for: (a) additional attorneys' fees; (2) reimbursement of expenses; and (3) payment of Settlement Administrator's fees and costs, in connection with the class settlement

1

with Defendants Florida Cancer Specialists & Research Institute, LLC, f/k/a Florida Cancer Specialists, P.L., and Dr. William N. Harwin.[1]

3. In the period between (a) the fairness hearing on October 29, 2019, and (b) the mailing of settlement award checks in late May 2020, both Robins Kaplan and the settlement administrator Epiq Class Action & Claims Solutions, Inc. ("Epiq") dealt with an unexpectedly high volume of communications (emails and telephone calls) from class members. These included calls from individual class members inquiring about the expected amounts of their awards and the timing of payment, and from insurance companies asking about how the awards would be determined in the absence of a claims process.

4. Many insurance companies offer "administrative services only" (ASO) arrangements to corporate clients, whereby a company self-funds its employee health insurance program while purchasing administrative services from a health plan. After health plans began to receive settlement checks at the end of May 2020, many of them had difficulties in allocating the amounts

---

[1] Unless otherwise defined, capitalized terms have the same meaning ascribed in (a) the Settlement Agreement (Doc. 80-1); (b) Plaintiff's and Proposed Class Counsel's Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Sett Class, and Incorporated Memorandum of Law (Doc. 80); (c) Plaintiff's and Proposed Class Counsel's Memorandum in Response to Order to Show Cause (Doc. 83); (d) Plaintiff's Unopposed Motion for Final Approval of Class Settlement and Plan of Allocation, and Incorporated Motion of Law (Doc. 92); and (e) Plaintiff's Counsel's Application for (1) an Award of Attorney's Fees, (2) Reimbursement of Expenses, and (3) Class Representative's Incentive Award; and Incorporated Memorandum of Law (Doc. 93).

received, that is, determining how much should go to the health plan itself and how much to its ASO clients.

5. From the perspective of a provider like FCS or 21st Century, there is no visible distinction between a patient whose coverage is fully underwritten by her employer via an ASO and a participant in the same health plan whose coverage is underwritten by the insurance company. The health plan membership cards that patients present to the provider are the very same, regardless of who is underwriting the insurance risk.

6. Thus, if one of the providers produced data showing that it had been paid a total amount of X dollars from a hypothetical "Health Plan Y" during the class period, the settlement administrator would calculate a settlement award based on the X dollars and mail a check for that amount to Health Plan Y.

7. The distinction between a patient insured by her employer through an ASO contract and one insured by the insurance carrier matters to the health plans, however. Typically, health plans are required to pass on to their ASO clients any portion of the class action award that derived from transactions where those ASO clients were the real end-payors. Thus, when the hypothetical Health Plan Y received the check from the settlement administrator, the plan would need to determine what portion of the money belonged to it and what portion(s) should be passed on to ASO clients.

8. This turned out to be a difficult task for certain health plans, however, including those managed by Florida Blue, which (upon information and belief) is the largest health insurance company in Florida and the largest provider of ASO services in the state. Matching up transactions in the FCS and 21st Century data with Florida Blue's own payment databases proved difficult, for reasons that included: differences between the abbreviated names for specific health plans in the providers' data versus plan names in Florida Blue's records; changes in Florida Blue group numbers over the almost nine-year class period; inability to cross-reference policy number information in the 21st Century data with Florida Blue's own policies; and data entry errors and gaps in information collected at the time of service.

9. In order to help insurance companies to overcome these difficulties and allocate award monies to their rightful owners, FCS and 21st Century provided insurers with very detailed data that drilled down to the level of individual patients and individual transactions, a process that also involved considerable input by Class Counsel.

10. Such issues had been resolved for most insurers by the original "Void Date" (the date by which settlement award checks became stale), September 25, 2020, with the notable exception of Florida Blue. Despite extensive cooperation among Florida Blue itself and the parties, it took a further ten

months before Florida Blue definitively identified the beneficial owners of a substantial portion of the settlement award monies paid to its health plans.

    a. In March 2021, checks in a total amount in excess of $1 million payable to Florida Blue plans had remained uncashed, and at that time Florida Blue authorized us to send $552,848.80 of that amount to itself (for itself and its ASO clients), and to Blue Cross and Blue Shield Service Benefit Plan a/k/a Federal Employee Program ("FEP"), a health insurance program for government employees for Florida Blue provides ASO-like services.

    b. Florida Blue has now requested us to distribute the remaining $533,822.47 to: (i) itself and its ASO clients; (ii) FEP; and (iii) over 50 Blue Cross/Blue Shield plans in other states for which Florida Blue acted under the BlueCard program, a national program that enables members of one BCBS plan to obtain health care services while traveling or living in another BCBS plan's service area.

11.    Because of the length of time that the reconciliation process took, the Void Date for Florida Blue had to be extended several times, with the final extension now running to October 31, 2021.

12.    When Plaintiffs' counsel submitted our request for attorneys' fees on September 9, 2019, we did not anticipate the considerable additional work that

5

would be necessary for reconciling the settlement award checks with the health plan class members' records.

13.  Since August 31, 2019, Robins Kaplan has devoted almost 516 hours of attorneys' and paralegals' time to this matter and has accrued fees totaling $441,018.50. On reviewing these time entries, we have determined that $192,829 of this amount is attributable to work that was anticipated in our September 2019 attorneys' fee application and thus we have already been compensated for that work. The remaining $248,189.50 represents additional, unanticipated work arising out of reconciling the providers' records with the records of the health plans.

14.  The requested additional fees of $248,189.50, combined with the previous fee award of $2,156,250, amount to approximately 33 percent of the total Settlement Fund.

15.  The requested fee award, combined with the previous fee award of $2,156,250, yields a lodestar multiplier of approximately 1.50.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of July, 2021.

_____
Eamon O'Kelly
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, New York 10022
Telephone: (212) 980-7400
Fax: (212) 980-7499
Email: eokelly@robinskaplan.com

*Class Counsel and Counsel for the Plaintiff County of Monmouth, New Jersey*

7